# BECA
## Brevard Electronic Court Application

---

Case Number: 05-2023-CA-018273-XXXX-XX

Date Filed: 03/05/2023

Status Date: 03/05/2023

Jurisdiction: CENTRAL

Case Type: BT

Case Status: ORIGINAL PENDING

Judge: MICHELLE NABERHAUS

Charging Agency: NONE

### Participants

| Type | Name | DL Number | Race | Gender | DOB | Address 1 | Address 2 | City State Zip |
|------|------|-----------|------|--------|-----|-----------|-----------|----------------|
| DEFENDANT (1) | UPSOLVE INC | | | | | 205 HUDSON ST FL 7 | | NEW YORK, NY 10013-1836 |
| DEFENDANT (2) | PAVULURI ROHAN | | | | | 29 7TH AVE S APT 4B | | NEW YORK, NY 10014-3938 |
| DEFENDANT (3) | PRESIDENT FELLOWS HARVARD COLLEGE | | | | | 1350 MASSACHUSETTS AVE SUITE 980 | | CAMBRIDGE, MA 02138-3800 |
| ATTORNEY FOR: D3 | PETERS MARK S | | | | | 5450 VILLAGE DR | | VIERA, FL 32955 |
| DEFENDANT (4) | YALE UNIVERSITY | | | | | 2 WHITNEY AVE FL 6 | | NEW HAVEN, CT 06510-1220 |
| ATTORNEY FOR: D4 | MILLS ELISA C | | | | | 2001 US HIGHWAY 1 | | VERO BEACH, FL 32960-5493 |
| ATTORNEY FOR: D4 | MURPHY LEWIS WILSON JR | | | | | 2001 US HIGHWAY 1 | | VERO BEACH, FL 32960-5493 |
| DEFENDANT (5) | Y COMBINATOR MANAGEMENT LLC | | | | | 1201 HAYS ST | | TALLAHASSEE, FL 32301-2699 |
| ATTORNEY FOR: D5 | MORGAN JACK C III | | | | | 2222 2ND ST | | FORT MYERS, FL 33901-3026 |
| DEFENDANT (6) | SCHMIDT ERIC EMERSON | | | | | W SAN MARINO DR | | MIAMI BEACH, FL 33139-1134 |
| PLAINTIFF (1) | DOE JOHN 1 | | | | | NO ADDRESS INFORMATION AVAILABLE | | |
| ATTORNEY FOR: P1 | BERES CHRISTOPHER | | | | | 1600 SARNO RD STE 1 | | MELBOURNE, FL 32935-4990 |
| PLAINTIFF (2) | DOE JOHN 2 | | | | | NO ADDRESS INFORMATION AVAILABLE | | |
| ATTORNEY FOR: P2 | BERES CHRISTOPHER | | | | | 1600 SARNO RD STE 1 | | MELBOURNE, FL 32935-4990 |

### Register of Actions

| Event Date | Document Number | Description | Page Count | Amount |
|------------|-----------------|-------------|------------|--------|
| 03/05/2023 | 1 | COVER SHEET | 3 | |
| 03/05/2023 | 2 | COMPLAINT WITH DEMAND FOR JURY TRIAL | 62 | |
| 03/05/2023 | | PROPOSED SUMMONS TO BE ISSUED | 1 | |
| 03/05/2023 | | PROPOSED SUMMONS TO BE ISSUED | 1 | |
| 03/05/2023 | | PROPOSED SUMMONS TO BE ISSUED | 1 | |
| 03/05/2023 | | PROPOSED SUMMONS TO BE ISSUED | 1 | |
| 03/05/2023 | | PROPOSED SUMMONS TO BE ISSUED | 1 | |
| 03/05/2023 | | PROPOSED SUMMONS TO BE ISSUED | 1 | |
| 03/05/2023 | 3 | ADMINISTRATIVE ORDER 21-24 PROPOSED CASE MANAGEMENT PLAN | 3 | |
| 03/05/2023 | 4 | ADMINISTRATIVE ORDER 21-24 PROPOSED CASE MANAGEMENT ORDER | 4 | |

**EXHIBIT "1"**

| 03/05/2023 | | ASM: CIRCUIT CIVIL FILING FEE | 2 | 401.00 |
|---|---|---|---|---|
| 03/05/2023 | | ASM: ISSUE CIRCUIT SUMMONS | 2 | 60.00 |
| 03/05/2023 | | ORIGINAL FILING UPDATED | 2 | |
| 03/06/2023 | 5 | SUMMONS ISSUED VIA E-MAIL TO ATTORNEY | 1 | |
| 03/06/2023 | 6 | SUMMONS ISSUED VIA E-MAIL TO ATTORNEY | 1 | |
| 03/06/2023 | 7 | SUMMONS ISSUED VIA E-MAIL TO ATTORNEY | 1 | |
| 03/06/2023 | 8 | SUMMONS ISSUED VIA E-MAIL TO ATTORNEY | 1 | |
| 03/06/2023 | 9 | SUMMONS ISSUED VIA E-MAIL TO ATTORNEY | 1 | |
| 03/06/2023 | 10 | SUMMONS ISSUED VIA E-MAIL TO ATTORNEY | 1 | |
| 03/11/2023 | 11 | RETURN OR PROOF OF SERVICE | 1 | |
| 03/14/2023 | 12 | RETURN OR PROOF OF SERVICE | 1 | |
| 03/21/2023 | 13 | NOTICE OF APPEARANCE AND DESIGNATION OF E-MAIL ADDRESS | 2 | |
| 04/03/2023 | 14 | MOTION TO DISMISS | 8 | |
| 04/05/2023 | 15 | MOTION TO EXTEND TIME | 2 | |
| | | FAXED COPY | | |
| 04/10/2023 | 17 | MOTION FOR DEFAULT BY CLERK | 1 | |
| 04/10/2023 | 18 | MOTION FOR DEFAULT BY CLERK | 1 | |
| 04/17/2023 | 16 | RETURN OR PROOF OF SERVICE | 1 | |
| 04/17/2023 | 20 | MOTION FOR DEFAULT BY CLERK | 1 | |
| 04/17/2023 | 21 | AFFIDAVIT IN OPPOSITION | 3 | |
| | | TO MOTION FOR EXTENSION OF TIME | | |
| 04/17/2023 | 22 | AFFIDAVIT IN OPPOSITION | 2 | |
| | | TO MOTION FOR EXTENSION OF TIME | | |
| 04/20/2023 | 23 | NOTICE OF OPPOSITION | 8 | |
| | | TO MOTION TO DISMISS | | |
| 04/24/2023 | 24 | MOTION TO DISMISS | 3 | |
| 04/24/2023 | 25 | NOTICE OF APPEARANCE AND DESIGNATION OF E-MAIL ADDRESS | 2 | |
| 04/25/2023 | 19 | CLERKS CERTIFICATE OF DEFAULT NOT ENTERED | 2 | |
| 05/02/2023 | 29 | NOTICE OF APPEARANCE AND DESIGNATION OF E-MAIL ADDRESS | 1 | |
| 05/03/2023 | 30 | MOTION TO STRIKE | 6 | |
| 05/03/2023 | 31 | MOTION FOR DEFAULT BY CLERK | 1 | |
| 05/03/2023 | 32 | MOTION FOR DEFAULT BY COURT | 2 | |
| 05/03/2023 | 33 | MOTION FOR DEFAULT BY CLERK | 1 | |
| 05/03/2023 | 34 | MOTION FOR DEFAULT BY COURT | 2 | |
| 05/05/2023 | 35 | MOTION TO DISMISS | 8 | |
| 05/05/2023 | 36 | NOTICE TO WITHDRAW MOTION | 2 | |
| 05/09/2023 | 26 | NOTICE OF HEARING | 2 | |
| 05/09/2023 | 39 | NOTICE OF OPPOSITION | 7 | |
| 05/09/2023 | 40 | NOTICE OF FILING RETURN OF SERVICE | 3 | |
| 05/11/2023 | 27 | NOTICE OF HEARING | 2 | |
| 05/11/2023 | 28 | AMENDED NOTICE OF HEARING | 2 | |
| 05/16/2023 | 37 | CLERKS CERTIFICATE OF DEFAULT NOT ENTERED | 2 | |
| 05/16/2023 | 38 | CLERKS CERTIFICATE OF DEFAULT NOT ENTERED | 2 | |
| 07/07/2023 | | CAL:HEARING | 2 | |
| | | CALENDAR POSTING ON 05-09-2023 | | |
| | | **Total Number of Document Pages** | **173** | |

## Complaints

| Complaint Date | Cause of Action | Disposition Date | Disposition Description |
|---|---|---|---|
| 03/05/2023 | BUSINESS TORT | | |

## Financials

| Name | Receivable | Amount Assessed | Amount Waived | Amount Paid | Due Date | Balance |
|---|---|---|---|---|---|---|
| DOE JOHN 1 | CIR CIV FILING FEE | $401.00 | $0.00 | $401.00 | | $0.00 |
| DOE JOHN 1 | ISSUE CIR SUMMONS | $60.00 | $0.00 | $60.00 | | $0.00 |
| **TOTALS:** | | **$461.00** | **$0.00** | **$461.00** | | **$0.00** |

| | | | | | |
|---|---|---|---|---|---|
| **TOTAL AMOUNT ELIGIBLE FOR A CIVIL LIEN:** | | | | | **$0.00** |

**Payments**

| Receipt | Party | Memo | Event Description | Receipt Date | Amount | Payment Type | Received From |
|---|---|---|---|---|---|---|---|
| S241516 | P 1 | EFILING # 168052697 | PMT: CIRCUIT CIVIL FILING FEE | 03/07/2023 | $401.00 | REGULAR CASH | BERES CHRISTOPHER |
| S241516 | P 1 | EFILING # 168052697 | PMT: ISSUE CIRCUIT SUMMONS | 03/07/2023 | $60.00 | REGULAR CASH | BERES CHRISTOPHER |

**Court Schedule**

| Court Date | Court Time | Event Description | Court Room Description | Judge Name | User |
|---|---|---|---|---|---|
| 07/07/2023 | 10:30 AM | CAL:HEARING | MOORE JUSTICE CENTER | MICHELLE NABERHAUS | ajg90 |

## IN THE CIRCUIT COURT, EIGHTEENTH JUDICIAL CIRCUIT,
## BREVARD COUNTY, FLORIDA

**DIVISION: CIVIL**            **CASE NUMBER: 05-    -    -    -XXXX-XX**

**PLAINTIFF**
JOHN DOE NO. 1 and JOHN DOE NO. 2

**DEFENDANT**
UPSOLVE, INC., ET AL.

## CIVIL COVER SHEET

**AMOUNT OF CLAIM**
Please indicate the estimated amount of the claim, rounded to the nearest dollar.
$3,000,000.00 _____

**TYPE OF CASE**        (If the case fits more than one type of case, select the most definitive category.)  If the most descriptive label is a subcategory (is indented under a broader category), place an X on both the main category and subcategory boxes.

**CIRCUIT CIVIL**
- ☐ Condominium
- ☐ Contracts and indebtedness
- ☐ Eminent domain
- ☐ Auto negligence
- ☑ Negligence – other
  - ☐ Business governance
  - ☑ Business torts
  - ☐ Environmental/Toxic tort
  - ☐ Third party indemnification
  - ☐ Construction defect
  - ☐ Mass tort
  - ☐ Negligent security
  - ☐ Nursing home negligence
  - ☐ Premises liability – commercial
  - ☐ Premises liability – residential
- ☐ Products liability
- ☐ Real property/Mortgage foreclosure
  - ☐ Commercial foreclosure
  - ☐ Homestead residential foreclosure
  - ☐ Non-homestead residential foreclosure
  - ☐ Other real property actions

Law 122 / Rev. 01-01-2020                                        1

**CIVIL COVER SHEET**

**CASE NUMBER: 05-      -      -XXXX-XX**

- ☐ Professional malpractice
  - ☐ Malpractice – business
  - ☐ Malpractice – medical
  - ☐ Malpractice – other professional
- ☐ Other
  - ☐ Antitrust/Trade regulations
  - ☐ Business transactions
  - ☐ Constitutional challenge – statute or ordinance
  - ☐ Constitutional challenge – proposed amendment
  - ☐ Corporate trusts
  - ☐ Discrimination – employment or other
  - ☐ Insurance claims
  - ☐ Intellectual property
  - ☐ Libel/Slander
  - ☐ Shareholder derivative action
  - ☐ Securities litigation
  - ☐ Trade secrets
  - ☐ Trust litigation

**COUNTY CIVIL**
- ☐ Civil
- ☐ Replevins
- ☐ Evictions
- ☐ Other civil (non-monetary)

**REMEDIES SOUGHT**
- ☐ Monetary;
- ☐ Nonmonetary declaratory or injunctive relief;
- ☐ Punitive

**NUMBER OF CAUSES OF ACTION [ 14 ]**
(Specify) tortious int, negligence, malpractice, fraud, misrepresentation,breach ofcontract
breach of cov gf-fd, UE, false ad, FDUTPA, conspiracy, antitrust, injunction, decl relief

**IS THIS CASE A CLASS ACTION LAWSUIT?**
- ☐ Yes
- ☑ No

**HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
- ☑ No
- ☐ Yes - If "Yes", list all related cases by name, case number, and court.

_____

_____

Law 122 / Rev. 01-01-2020                                                               2

**CIVIL COVER SHEET**

                          **CASE NUMBER: 05-        -       -      -XXXX-XX**

**IS JURY TRIAL DEMANDED IN COMPLAINT?**

☑ Yes
☐ No

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature _____   Fla. Bar # 588261 _____
                    Attorney or party                          (Bar # if attorney)

CHRISTOPHER T. BERES _____   March 5, 2023 _____
(type or print name)                                       Date

Law 122 / Rev. 01-01-2020                                                          3

IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL DISTRICT, IN
AND FOR BREVARD COUNTY,
FLORIDA

JOHN DOE NO. 1 and JOHN DOE NO. 2,

                Plaintiffs,

v.                                    CASE NO.

UPSOLVE, INC.,                    DIVISION:
ROHAN PAVULURI,
PRESIDENT AND FELLOWS OF HARVARD
 COLLEGE,
YALE UNIVERSITY,               <u>JURY TRIAL DEMANDED</u>
Y COMBINATOR MANAGEMENT, LCC,
and
ERIC EMERSON SCHMIDT,

                Defendants.
_____/

<u>COMPLAINT / PETITION FOR INJUNCTIVE RELIEF</u>

      Plaintiffs, John Doe No. 1 ("John Doe No. 1") and John Doe No. 2 ("John Doe No. 2"

and together with John Doe No. 1, the "John Does"), by and through the undersigned counsel,

hereby sue defendants Upsolve, Inc. ("Upsolve"), Rohan Pavuluri ("Pavuluri"), the President and

Fellows of Harvard College ("Harvard"), Yale University ("Yale"), Y Combinator Management,

LLC ("YC"),  and Eric Emerson Schmidt ("Schmidt"), and further allege as follows:

<u>NATURE OF THE ACTION</u>

      1.      This is an action for tortious interference, negligence, legal malpractice, common

law fraud, negligent misrepresentation, breach of contract, breach of the covenant of good faith

and fair dealing, unjust enrichment, misleading advertising, violations of the Florida Deceptive

and Unfair Trade Practices Act, Chapter 501, Part II, Fla. Stat. (2009) ("FDUTPA"), civil

conspiracy, antitrust, declaratory relief, and injunction in connection with defendants' handling

1

of John Doe No. 2's bankruptcy petition and case from 2021-2023.  Defendants are engaged in activities of unfairly, deceptively, and fraudulently marketing and promoting bankruptcy and their products and services in Florida and represent a serious threat to the public.

<u>JURISDICTION AND VENUE</u>

2.      This action seeks damages in excess of $30,000, exclusive of interest and costs.

3.      This court has jurisdiction pursuant to the provisions of Chapter 501, Part II, Fla. Sta.

4.      The acts or practices alleged herein occurred in the conduct of "trade or commerce" as defined in § 501.203(8), Fla. Stat.

5.      The violations herein affect more than one judicial circuit of the State of Florida.

6.      Venue is proper in this court as the statutory violations alleged herein occurred within Brevard County, and affect more than one judicial circuit of the State of Florida.

7.      Brevard County is the appropriate venue for this action inasmuch as the causes of action alleged herein accrued in Brevard County, Florida.

8.      Defendants are subject to personal jurisdiction in this Court under Fla. Stat. §§ 48.193(1)(a), 48.193(1)(b), and 48.193(2) because they (i) operate, conduct, engage in, or carry on businesses or business ventures within the State of Florida; (2) have committed tortious acts within the State of Florida as alleged herein; and/or (iii) engage in substantial and not isolated activity within the State of Florida.

9.      All other conditions precedent to this action have been performed, excused, satisfied, or waived.

<u>PARTIES</u>

10.      Plaintiff John Doe No. 1 is a citizen of Florida residing in Brevard County.

11.     Plaintiff John Doe No. 2 is a United States citizen domiciled in the Republic of the Philippines.

12.     Defendant Upsolve is an Internal Revenue Code 501(c)(3) non-profit corporation incorporated in New York and having its principal place of business at 205 Hudson Street, 7th Floor, New York, New York 10013.  Its Florida offices are located at 122 E Colonial Drive # 200, Orlando, Florida 32801.  Upsolve also offers its service through its internet site throughout the nation and internationally, including the State of Florida.  Upsolve, directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the State of Florida.

13.     Defendant Pavuluri is an individual who is a resident and citizen of New York. He is or was the CEO of Upsolve but after John Does' complaints the company appears to be playing musical chairs with its management team.  He is not an attorney and, together with the other co-defendants, is fighting to repeal or amend Florida's unauthorized practice of law ("UPL") statute.  Pavuluri's Illinois family is no stranger to wrongdoing involving government grants and outside "funding" vehicles.[1] (Exhibit 1)

14.     Defendant Harvard is a non-profit corporation organized and existing under the laws of Massachusetts that maintains its principal place of business at Massachusetts Hall, Cambridge, Massachusetts 02138.   Upsolve is a Harvard incubator company under the doctrine of *respondeat superior*.

---

[1] "The $3 Million Research Breakdown," ProPublica, Apr. 26, 2018 (Mani Pavuluri).
https://www.propublica.org/article/university-of-illinois-chicago-mani-pavuluri-3-million-research-breakdown
Jodi S. Cohen, "Illinois Regulators Are Investigating a Psychiatrist Whose Research With Children Was Marred by Misconduct," ProPublica, Dec. 12, 2018 ("But federal health officials late last year demanded that UIC return $3.1 million they had awarded her.  Officials determined there had been 'serious and continuing noncompliance' by Pavuluri....").  Mani Pavuluri is Rohan Pavuluri's mother.
https://www.propublica.org/article/uic-mani-pavuluri-research-misconduct-illinois-department-of-financial-and-professional-regulation-subpoenas

15.     Defendant Yale,[2] also known as The President and Fellows of Yale College, is a private university that maintains its principal place of business at 2 Whitney Avenue, 6th Floor, New Haven, Connecticut 06510.

16.     Defendant YC[3] is a Delaware limited liability company with its principal place of business in California.  It is registered with the Florida Division of Corporations with a registered agent at Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301-2525.

17.     Defendant Schmidt is an individual who resides at 314 West San Marino Drive, Miami Beach, Florida 33139.  He does business in Florida and is the owner of 314 W San Marino, LLC, a Florida limited liability company.  He is a property developer in South Florida and owns a majority interest in a South Beach office building "The Fifth Miami Beach".

<u>FACTUAL ALLEGATIONS</u>

18.     Upsolve is a pseudo legal services corporation illegally promoting and doing bankruptcy cases for individuals around the country, including and especially in Florida. Upsolve is a major participant in the Florida bankruptcy market.   (Exhibit 2)

19.     The reason why Congress passed chapter 7 was to give debtors an opportunity for a "fresh start".  11 U.S.C. 7.  However, as a result of Upsolve's fraud and other tortious and criminal acts, John Doe No. 2 is far worse off than he would otherwise have been.

---

[2] "Yale Law School has invested in Upsolve on May 1, 2016."
https://www.crunchbase.com/organization/yale-law-school/school_financials

[3] Daniel Crichton, "YC-backed Upsolve is automating bankruptcy for everyone," Tech Crunch, Jan. 16, 2019 ("I asked about whether incumbent lawyers are threatened by Upsolve.  *Pavuluri said that most lawyers don't want to handle these cases in the first place, because they are not profitable and generally need to be handled pro bono.  He said that for simple Chapter 7 cases, you (almost certainly) don't need a lawyer,* and 'we challenge legal exceptionalism in that sense.' …. In addition to Y Combinator, Upsolve has been funded by Harvard University, the Robin Hood Foundation, Schmidt Futures (Eric Schmidt), Fast Forward and Breyer Labs."). (emphasis added)
https://techcrunch.com/2019/01/16/upsolve-bankruptcy/

4

20.     Upsolve claims that it represents debtors "for free" and prepares and files their bankruptcy filings for them and is "with them every step of the way."  (Exhibit 3)  Its website and marketing materials have the logos of Harvard, Yale, and other of its partners which caused plaintiffs to trust Upsolve.  Harvard has put the university's name behind Pavuluri from the time that he was a student there to promote unnecessary and excessive bankruptcy filings with a target of getting "20 million Americans to file"[4] with Upsolve.[5]  This is 10% of the U.S. population over the age of 18.  This was never the intent of Congress; bankruptcy is supposed to be a last choice, not an aspirational goal in life.  In fact, Pavuluri appropriated the business idea and forms from a project he was assigned to as an intern at Harvard Law School which is intellectual property theft.[6]

21.     John Doe No. 1 is a Florida lawyer based in Brevard County.  He is a member of the Florida Bar.  Plaintiffs received Upsolve's fraudulent and tortious solicitations in Brevard County.  Prior to viewing Upsolve's www.youtube.com videos and other false and misleading advertising, John Doe No. 1 opposed John Doe No. 2's bankruptcy filing and was of the opinion that even if he were to file he should do so in Florida.  The youtube quotes included:  "And the whole process was really easy.  Upsolve was there very step of the way, answering my questions,

---

[4] Molly Fosco, "Why 20 Million Americans Should File For Bankruptcy," ozy.com, Nov. 29, 2018 (quoting Pavuluri).
https://www.ozy.com/news-and-politics/why-20-million-americans-should-file-for-bankruptcy/90717/

[5] Nicholas S. Brown, "How To Change the World and Have Harvard Pay For It," Harvard Crimson, Apr. 17, 2021 ("Today, Harvard's initial investment in Upsolve has seen a massive return with $350 million of debt relieved for low-income Americans and recognition of Harvard's critical role in Upsolve's founding covered in numerous major news outlets.").
https://www.thecrimson.com/column/be-the-change/article/2021/4/17/brown-change-the-world-and-have-harvard-pay-for-it/

[6] "5 Questions with Gov 2.0 Grant Winner Rohan Pavuluri," Institute of Politics Newsletter (2023) ("The Financial Distress Research Project (FDRP) at Harvard Law School, a team I'm involved with on campus, has produced innovative legal self-help packets to rigorously test whether self-help works. At Upsolve.org, we aim to scale this academic research.").
https://iop.harvard.edu/iop-now/5-questions-gov-20-grant-winner-rohan-pavuluri

5

they emailed me back sometimes in minutes." "They were a life saver. I didn't have to pay anything. Nothing." "I feel free." "An entirely new life." (Exhibit 4) Intent on attacking the Florida Bar as part of its "revolution", defendants tortiously interfered in John Doe No. 1's attorney-client relationship and professional business. Pavuluri is not a member of the Florida Bar and views every client as a photo op and money raising opportunity for himself despite the fact that bankruptcy is subject to attorney rules on client confidences. Unlike this charlatan, most debtors do not want to advertise the fact that they filed for bankruptcy to the whole world.

22.     John Doe No. 2 is an Upsolve client who was irreparably damaged by Upsolve's misrepresentation of bankruptcy and of its services. John Doe No. 2 is 60 years old. He had an excellent credit history for over 40 years. He should never have filed for chapter 7 and would not have were it not for Upsolve's and the other defendants' UPL in Florida.

23.     In March 2020, at the height of the COVID-19 pandemic, John Doe No. 2 was fired from his document review job at Hire Counsel, a job agency located in Florida,[7] for making a public health and safety complaint. He was unable to find a job during the pandemic and encountered temporary short-term financial difficulties.

24.     Defendants induced plaintiffs to repose their trust and confidence in them and that they represented John Doe No. 2's best interests.

25.     On December 23, 2020, due to Upsolve, John Doe No. 2 was misled into filing a chapter 7 petition with it.

26.     As a result of Upsolve's shambolic products and services, two years later John Doe No. 2 is still stuck in chapter 7. For such a serious life issue as bankruptcy, Upsolve had a

---

[7] Hire Counsel is located at 777 Brickell Avenue, Miami, Florida 33131.

duty to disclose that the debtor would not be able to dismiss the petition once it was filed. Upsolve committed post-petition torts against John Doe No. 2.

27.    Once Upsolve had accepted John Doe No. 2's bankruptcy case, Upsolve had a duty to act competently, not to act negligently, and to disclose the negatives and risks of bankruptcy.  But it only repeated its fairy tale about bankruptcy.  This is because it makes money based on the number of cases it files and the amount of debt it claims to have wiped out[8] especially in Florida according to its "heat map" of its cases.  Upsolve now claims on its debt clock to have wiped out over $550 million in debt.  Pavuluri is not a lawyer and should not be recommending it to debtors and doing legal marketing in Florida and other states.   (Exhibit 5)

28.    Upsolve is also negligent in its error-ridden software and training materials.  It had John Doe No. 2 file in Brooklyn, New York, where it was based at the time and knows the judges, and was against Florida.  (Exhibit 6)  It did not inform him that as a U.S. citizen domiciled in the Philippines who does not reside in the United States he was not eligible to file for bankruptcy.  11 U.S.C. § 109.  (Exhibit 7)  It negligently handled qualification for bankruptcy.

29.    Upsolve also did not inform plaintiffs that chapter 7 cases were dragging on in Brooklyn for "too long" as they were later told after filing.  It did not inform them as to which jurisdictions were debtor-friendly, certainly not Brooklyn.

30.    Upsolve did not warn plaintiffs, as the judge in John Doe No. 2's chapter 7 case expressed, that the courts prefer hearing arguments from and are more persuaded by actual bankruptcy counsel, who appear regularly before it, as opposed to pro se debtors.

---

[8] Kevin Roose, "The Good Tech Awards," N.Y. Times, Dec. 21, 2018 ("*To Upsolve, for helping people go bankrupt. …   In 2018, it helped users in 47 states discharge a total of more than $13 million in debt, according to Rohan Pavuluri, the company's chief executive*."). (emphasis added)
https://www.nytimes.com/2018/12/21/technology/year-in-technology-2018.html

31.     Also, Upsolve did not explain to plaintiffs that bankruptcy was adversarial, that Hire Counsel could use it to harass him, that it would hurt his bar applications, that his bank accounts would be closed and he would not be able to open a new one, that he would incur high legal fees, that any inheritance and lawsuits were not exempt property, that mistakes on the forms were not a problem,[9] that his assets would be devalued, that there would be costs for the trustee and his six lawyers, and that he would have to appeal every order.

32.     Upsolve dropped John Doe No. 2's case as soon as the petition was filed and refused to help him.[10] It abandoned plaintiffs in their hour of need.

33.     Upsolve is a con and a scam.  It is a business venture masquerading as a 501(c)(3) charitable organization.  Upsolve is an alter ego of Pavuluri and just his tax-free funding vehicle.

34.     While advertising to consumers in Florida that if they use it they do not need to hire a local lawyer such as John Doe No. 1, the big con is that it is actually an *attorney referral service*.  (Exhibit 9)   Upsolve did not disclose to plaintiffs the fact that it makes $500,000 per year in attorney referral fees which it misleadingly shows on its balance sheet as "program services". (Exhibit 10)  This is very serious consumer fraud.  It is "Upsolve's upsell".

35.     Far from being a "charity", the CEO of Upsolve, Pavuluri, has created a multi-million dollar "fintech" "venture" as he refers to it with billionaire "investors" from Florida, Silicon Valley, and elsewhere.  While painting himself in the media as a Mother Theresa to rake in tens of thousands of dollars in award money *for himself,* Pavuluri takes home hundreds of thousands of dollars in salary and lives in a $12,000 per month apartment in the pricey Tribeca section of Manhattan.  He relentlessly promotes himself to "build his personal brand" and

---

[9] See Exhibit 8.

[10] While enclosing a letter to the bankruptcy court that Upsolve was doing the case for him to impress and earn goodwill from the courts.

8

collects financial awards for *himself*. (Exhibit 11)  He and Jonathan Petts constantly compare "fintech" Upsolve to "TurboTax for bankruptcy"[11].  The model for Upsolve, TurboTax, Inc., is a *for-profit* part of the $111 billion market capitalization Intuit, Inc.[12]  This shows their clear business goals.

36.     Upsolve is a corporation which is worth millions of dollars.  According to its own website, it has "raised" over $7 million:  "To date, we've raised over $7 million."[13]  It has net assets of over $2 million.  Pavuluri claims that "you the American people own Upsolve."[14]  This is of course a total lie and part of his whole fraud.  For example, IKEA is owned by a foundation and worth $17.4 billion.

37.     Upsolve is not a member of the Florida Bar and is engaged in UPL.  Far from denying that it is, Pavuluri publishes newspaper articles and lobbying all over the country calling for the repeal of UPL statutes including Florida's.[15]  § 454.23, Fla. Stat. (1991). (Exhibit 12)

---

[11] "Fintech company Upsolve aims to be the TurboTax of bankruptcy," Bankrate.com, Aug. 21, 2018. https://www.bankrate.com/personal-finance/fintech-company-upsolve-turbotax-of-bankruptcy/

[12] Similar to Upsolve's false advertising and consumer fraud, TurboTax was prosecuted by New York Attorney General Letitia James for deceiving lower income Americans into paying for free tax services.

[13] https://upsolve.org/careers/breyer-labs-social-impact-fellow/

[14] "How is Upsolve free?" written by Rohan Pavuluri Apr. 9, 2022 ("Transparency is one of our nonprofit's core values.....Third, we receive funding from private independent attorneys who provide free evaluations to people on our website who ask for them.....To be a more effective, sustainable, and impactful nonprofit, we believe it's important to generate earned revenue... about 30 percent came from program service revenue.... How does Upsolve spend money?  Our number one expense is salaries.  Running a technology nonprofit is expensive, as it requires a specialized set of skills that we need to hire for..... Who Owns Upsolve? We're a nonprofit. This means that the American people own Upsolve. You own Upsolve just as much as I do. Best, Rohan".) (emphasis added). https://upsolve.org/learn/transparency/

[15] Victor Li, "Taking on unauthorized practice of law regulations to expand access to the courts," ABA Journal, June 15, 2022. https://www.abajournal.com/legalrebels/article/rebels-podcast-episode-077 Sara Merken, "Nonprofit sues N.Y. AG over practice rules in bid to provide free legal advice," Reuters, Jan. 26, 2022. https://www.reuters.com/legal/legalindustry/nonprofit-sues-ny-ag-over-practice-rules-bid-provide-free-legal-advice-2022-01-25/ Rohan Pavuluri et al., "Offering legal advice must not be illegal," N.Y. Daily News, May 12, 2022.

38.     Upsolve is or was represented by its business partner Weil, Gotshal & Manges LLP[16] ("Weil Gotshal"), the largest bankruptcy law firm in the United States, to undermine the Florida Bar and challenge Florida's UPL statute.[17]  (Exhibit 13)

39.     In fact, in New York, faced with potential prosecution from the Honorable Attorney General Letitia A. James, Upsolve, represented by Weil Gotshal, filed a lawsuit in federal court enjoining her from prosecuting it for UPL.

40.     Thus, while advertising to potential clients all over Florida that if they use Upsolve they do not need an attorney, Upsolve and Pavuluri use Weil Gotshal for themselves.  It is "one rule for me and another for thee."  They would never in a million years go into court pro se.

41.     As a result of defendants' illegal acts, plaintiffs were irreparably damaged in their personal and professional lives and face the imminent threat of irreparable harm if defendants' activities are not declared to be UPL and enjoined in Florida.

42.     Upsolve, which claims to represent thousands of debtors in Florida, is a grave threat to consumers and the public in Florida and all of the defendants should be the subject of a criminal referral.

COUNT I
TORTIOUS INTEREFERENCE

---

https://www.nydailynews.com/opinion/ny-oped-offering-legal-advice-must-not-be-illegal-20220512-ewzr3dxxwnem7ddj226twbjutu-story.html
"6.12.20: Does UPL Promote Racial Injustice? Plus the Week's Top News," Apple Podcasts.
https://podcasts.apple.com/us/podcast/6-12-20-does-upl-promote-racial-injustice-plus-weeks/id1505615678?i=1000477785113

[16] Weil Gotshal is a limited liability partnership and is located at 1395 Brickell Avenue Suite 1200, Miami, Florida 33131.

[17] "Fighting the legacy of White supremacy extends beyond law enforcement reform. A less discussed, yet still pernicious, set of policies that must change are the rules lawyers use to regulate their own profession," @RPavuluri Twitter Feed, Jun 8, 2022.
https://twitter.com/RPavuluri/status/1269973779205275649

10

43.     Plaintiffs repeat and reallege every allegation in paragraphs 1-42 inclusive as if fully set forth herein.

44.     This Court has personal jurisdiction over the Florida defendants, and over the non-Florida defendants under the Florida long-arm statute § 48.193(1)(b).

45.     John Doe No. 1, a Brevard County-based attorney, had a contractual business relationship with John Doe No. 2, his client.

46.     Defendants knew or should have known about this relationship.

47.     Defendants unjustly interfered with or otherwise disrupted this business relationship when they marketed, solicited, and entered into an agreement with John Doe No. 2 that he should file for bankruptcy *without an attorney* through Upsolve "for free" which has been continuing through the present.

48.     This is part of defendants' strategy to benefit themselves at the expense of the Florida Bar.

49.     As a result of defendants' tortious interference, John Doe No. 1's business was damaged and he lost a valuable client and contract.

50.     WHEREFORE, John Doe No. 1 demands judgment against defendants in a sum in excess of $1,000,000 and costs of suit.

<u>COUNT II</u>
<u>NEGLIGENCE</u>

51.     Plaintiffs repeat and reallege every allegation in paragraphs 1-42 inclusive as if fully set forth herein.

52.     Plaintiffs hereby sue defendants for negligence and professional negligence.

11

53.     On and after December 23, 2020, plaintiffs were solicited by and used the bankruptcy services of Upsolve.

54.     At all material times, defendants purported to specialize in and have a high level of experience in the field of bankruptcy which would make Upsolve well-suited to perform the services for which they were engaged.

55.     As the provider of legal advice to John Doe No. 2, defendants owed the highest duties to him to perform the legal services for which they were engaged with such skill, prudence, care, and diligence commonly possessed by lawyers in the legal community in representing his legal interests.   Further, defendants owed a duty to John Doe No. 2 to perform their services within the standards of knowledge possessed by attorneys trained in bankruptcy law during the pendency of the case.

56.     In this regard, defendants owed a duty to John Doe No. 2, among other things, to do all of the following:

a)     To assure that qualified and experienced attorneys were assigned to handle the proceedings on behalf of John Doe No. 2.

b)     To perform and arrange to be performed the due diligence and work needed in connection with evaluating and advising as to John Doe No. 2's bankruptcy, including whether it was not recommended for him to file.

c)     To present other alternatives to chapter 7 to plaintiffs such as FloridaDebtRelief.org.  (Exhibit 14)

d)      To exercise due care to insure adequate research and documentation were performed.

12

e)      To follow up and assist plaintiffs with the bankruptcy case after it was filed in accordance with their advertising that it would "be there every step of the way" for its client.

57.     Defendants provided egregious service to John Doe No. 2.[18]

58.     Defendants' acts and/or omissions of duty were the proximate cause of plaintiffs' damages.

59.     As a direct and proximate result of one or more of the aforesaid careless and/or negligent acts and/or omissions of defendants, John Doe No. 1 has sustained damages in the form of lost legal fees and expenses and damage to his business. John Doe No 2 has sustained irreparable damage. He has suffered great pain and anguish, both in mind and in body, and will in the future continue to suffer. Plaintiffs further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to be healed and cured of such injuries.

60.     WHEREFORE, plaintiffs demand judgment against defendants in a sum in excess of $2,000,000 and costs of suit.

<u>COUNT III</u>
<u>LEGAL MALPRACTICE</u>

61.     Plaintiffs repeat and reallege every allegation in paragraphs 1-42 inclusive as if fully set forth herein.

---

[18] It has been judicially determined that Upsolve does not provide correct legal advice regarding domicile and exemptions as the plaintiffs are complaining about here. *See In re Peterson*, No. 19-24045, 95-96 (Bankr. D. Md. Jun. 1, 2022) ("A further complication in Upsolve's process arises from a substantive standpoint. In most cases, the place of residence does equate to domicile, the latter being the decisive factor to determine the appropriate exemption scheme to utilize under § 522(b)(3)(A), as the user likely has the requisite intent to so remain... Thus, Upsolve's methodology excludes other possible living scenarios that could conflict with the domicile assessment. For example, one could physically reside in Maryland for employment or temporary military duty station assignment purposes but have no intent to remain there on a permanent basis. Such possibilities soundly demonstrate that the analysis required to determine the proper exemption laws for a debtor consists of more than just a time calculation related to their address. *Rather, this critical decision requires acumen possessed only by those with the proper legal training and experience. The Court is constrained to conceive of a more apt example of legal advice than determining the exemption statutes applicable to an individual debtor's circumstances.*") (emphasis added)

62.     Upsolve entered into an attorney-client relationship with John Doe No. 2 and undertook to provide legal services to him.  It had a fiduciary duty to him.

63.     By entering into an attorney-client relationship with John Doe No. 2, Upsolve impliedly represented to plaintiffs that it: (a) possessed the requisite degree of learning, skill and ability necessary to handle the chapter 7 case on John Doe No. 2's behalf; (b) would act in John Doe No. 2's best interests and exercise its best judgment in the bankruptcy; and (c) would exercise reasonable care and diligence in the use of skill and application of knowledge to complete the bankruptcy.

64.     Upsolve owed a duty of reasonable care to John Doe No. 2 to provide competent legal services to John Doe No. 2 with a degree of learning, skill, and ability that similarly situated attorneys would exercise.  That duty included obligations to honestly and effectively communicate with its client as often as appropriate under the circumstances; to provide its client with accurate assessments and analyses of the case; and to provide its client with reasonably accurate estimates of the costs of pursuing various steps.

65.     Instead, over a period of over two years, plaintiffs have been put through fruitless and unnecessary bankruptcy litigation that was characterized by grossly negligent advice, unfulfilled promises of what could be achieved through the bankruptcy, failure to keep John Doe No. 2 apprised of developments in the case, and dishonest and abusive practices causing substantial financial losses to plaintiffs.  An attorney who properly worried that Upsolve is "a scam" opined that "most bankruptcy cases" contain so-called "red flag" issues that require an attorney.  (Exhibit 15)

66.     At all times during the period of Upsolve's representation of John Doe No. 2, a contractual, fiduciary relationship existed between the parties.  Defendants Upsolve and Pavuluri

14

were obligated by their fiduciary relationship to deal justly, fairly, and honestly with John Doe

No. 2, to be loyal to him, and to place his interests before their own.  Instead, they had a conflict

of interest to encourage unnecessary and excessive bankruptcy filings[19] and made secret

kickbacks from their attorney referral scheme.  (Exhibit 16) ("If you're looking for an affordable

bankruptcy attorney, look no further!")

67.     As a direct and proximate result of defendants' failures as alleged herein,

plaintiffs suffered damages.

68.     WHEREFORE, plaintiffs respectfully request that this Court enter judgment

against defendants for damages and costs equal to the approximately $40,000 paid by John Doe

No. 2 to substitute counsel, plus interest thereon.

COUNT IV
COMMON LAW FRAUD

69.     Plaintiffs repeat and reallege every allegation in paragraphs 1-42 inclusive as if

fully set forth herein.

70.     Using cunning, deception, and artifice, defendants made numerous material

misrepresentations and omissions of material fact to plaintiffs with knowledge that the

representations and omissions were false or with reckless disregard of the truth, intending that

plaintiffs rely on the representations and omissions in an effort to induce them to file for

bankruptcy and to use Upsolve.  (Exhibit 17)  Defendants made false statements to plaintiffs and

omitted to state material facts necessary to make their statements not misleading.

71.     The representations were made for the purpose of inducing plaintiffs to accept and

use Upsolve's incompetent products and services.

---

[19] See Exhibit 9 *supra*:  "Our most important metric for success is the number of people we help file for bankruptcy."

15

72. Plaintiffs' reasonable and justifiable reliance on defendants' misrepresentations and omissions directly and proximately caused them to suffer substantial damages in an amount to be established at trial.

73. Defendants' actions were willful, wanton, and malicious and evinced a total disregard for plaintiffs' rights.

74. WHEREFORE, plaintiffs demand judgment in their favor and against the defendants for compensatory damages, pre-judgment and post-judgment interest, and costs.

COUNT V
NEGLIGENT MISREPRESENTATION (pled in the alternative)

75. Plaintiffs repeat and reallege every allegation in paragraphs 1-42 inclusive as if fully set forth herein.

76. Defendants were in a unique and superior position relative to plaintiffs as persons with special knowledge of bankruptcy. Accordingly, defendants owed a duty to plaintiffs not to make false misrepresentations and omissions.

77. As alleged herein, defendants negligently made numerous false material misrepresentations and omissions of material fact to plaintiffs, intending that plaintiffs rely on the representations and omissions in an effort to induce them to file for bankruptcy using Upsolve. They deliberately painted a rosy scenario to increase filings.

78. Defendants knew or, with the exercise of reasonable care, should have known their misrepresentations and omissions of material fact were false and that they were being relied upon by plaintiffs.

79. Plaintiffs detrimentally changed their position due to defendants' statements and representations.

80.    Plaintiffs reasonably and justifiably relied on defendants' material misrepresentations and omissions to their detriment, and agreed to do the bankruptcy and with Upsolve.  Plaintiffs would not have filed for bankruptcy had they known that Upsolve's material misrepresentations and omissions were false.

81.    Defendants' conduct and plaintiffs' reasonable and justifiable reliance on defendants' misrepresentations and omissions directly and proximately caused them to suffer substantial damages in an amount to be established at trial.

82.    WHEREFORE, plaintiffs demand judgment in their favor and against defendants for compensatory damages, pre-judgment and post-judgment interest, and costs.

COUNT VI
BREACH OF CONTRACT

83.    Plaintiffs repeat and reallege every allegation in paragraphs 1-42 inclusive as if fully set forth herein.

84.    Upsolve had a contractual relationship with plaintiff John Doe No. 2.   Upsolve made an offer to do John Doe No. 2's bankruptcy case for him.  John Doe No. 2 accepted Upsolve's offer.  John Doe No. 2 paid for Upsolve's credit counseling courses.

85.    Upsolve expressly represented and warranted that it would represent John Doe No. 2 from beginning to end of his bankruptcy case.

86.    Upsolve breached its contract with John Doe No. 2.

87.    WHEREFORE, plaintiffs demand judgment in their favor and against the defendants for compensatory damages, pre-judgment and post-judgment interest, and costs.

COUNT VII
BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

17

88.     Plaintiffs repeat and reallege every allegation in paragraphs 1-42 inclusive as if fully set forth herein.

89.     Every contract has in it an inherent duty of good faith and fair dealing.

90.     Defendants breached their duty of good faith and fair dealing inherent in the contract by irresponsibly promoting bankruptcy filings without an attorney.

91.     *But the truth is that the main source of revenue for Upsolve which has come out in lawsuits in Maryland and New York is attorney referral fees.*

92.     As a direct and proximate cause of defendants' breach of contract, plaintiffs have incurred and will incur economic damages.

93.     WHEREFORE, plaintiffs demand judgment in their favor and against the defendants for compensatory damages, pre-judgment and post-judgment interest, and costs.

COUNT VIII
UNJUST ENRICHMENT

94.     Plaintiffs repeat and reallege every allegation in paragraphs 1-42 inclusive as if fully set forth herein.

95.     For the reasons set forth above, defendants have profited unjustly from having John Doe No. 2 contract to use its services.

96.     It would be unfair for defendants to retain the profits they have unjustly earned at the expense of plaintiffs.

97.     WHEREFORE, accordingly, plaintiffs seek an order establishing defendants as a constructive trustee of the moneys that served to unjustly enrich defendants, including interest during the period in which defendants have retained such funds, and requiring defendants to disgorge such funds to plaintiffs in a manner to be determined by the Court.

COUNT IX

18

MISLEADING ADVERTISING

98.    Plaintiffs repeat and reallege every allegation in paragraphs 1-42 inclusive as if fully set forth herein.

99.    Plaintiffs brings this Count 9 pursuant to § 817.41, Fla. Stat.

100.    Upsolve's advertising claims that it is "impossible" for individuals to understand the "23 forms" and to file themselves.[20] *This is a lie* because one million people were doing so every year long before Upsolve was even started.

101.    Upsolve's software rushes debtors through a deceptively simple auto-fill program that does not disclose the risks of this life-affecting decision.  In other words, *Upsolve deliberately "dumbs down" the bankruptcy process* and its implications to encourage people to file, its "key metric" for its success and way of raising money.  It would be better for debtors to know what bankruptcy really involves, even if it is complicated, for precisely the reason that they might decide not to file.  Plaintiffs would certainly not have filed and regret doing so.

102.    Upsolve and Pavuluri constantly and fraudulently market themselves as a legal aid organization.  However, true Legal Aid employs *lawyers* admitted in Florida who are *experienced* with bankruptcy.

103.    Defendants made or disseminated or caused to be made or disseminated misleading advertisements before the general public of the State of Florida, or any portion thereof.

104.    Defendants made or disseminated or caused to be made or disseminated these misleading advertisements for the purpose of obtaining money or property under false pretenses.

---

[20] "Bankruptcy is a powerful tool for fighting predatory bills. This app helps you do it for free," Fast Company, Oct. 9, 2018 ("*But it's really impossible for people to file for bankruptcy on their own*."). (emphasis added) https://www.fastcompany.com/90248370/bankruptcy-is-a-powerful-tool-for-fighting-predatory-bills-this-app-helps-you-do-it-for-free

19

105.    Plaintiffs reasonably relied on defendants' misleading advertisements.

106.    Plaintiffs suffered injury and damage due to defendants' misleading advertisements.

107.    WHEREFORE, plaintiffs demand judgment against defendants for all injuries, damages, attorney's fees, costs, and interest available under controlling law.

<u>COUNT X</u>
<u>VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, §</u>
<u>501.201, ET. SEQ.</u>

108.    Plaintiffs repeat and reallege every allegation in paragraphs 1-42 inclusive as if fully set forth herein.

109.    This is an action for violation of § 501.201, et. seq., Fla. Stat. ("FDUTPA").

110.    The purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat.

111.    At all material times, plaintiffs were consumers as defined under FDUTPA.  § 501.203(7), Fla. Stat.

112.    Defendants' conduct falls within the definition of "trade or commerce" as defined by FDUTPA.  At all material times, defendants engaged in trade or commerce by soliciting, offering, and selling bankruptcy products and services to consumers, including plaintiffs.

113.    Defendants' unfair and deceptive conduct as alleged herein constitutes unconscionable acts or practices, and/or unfair methods of competition and was likely to deceive and/or mislead consumers such as plaintiffs acting reasonably in the same circumstances, to the consumer's detriment.  The acts described herein are immoral, unethical, oppressive,

20

unscrupulous, or substantially injurious to consumers, such as plaintiffs, and constitute violations of FDUTPA.

114.    Plaintiffs have been aggrieved by defendants' violations of FDUTPA.  As a result, defendants' violations of FDUTPA, plaintiffs have suffered, and will continue to suffer, actual and substantial damages resulting from the violations of FDUTPA, which damages could not reasonably have been avoided.

115.    Pursuant to § 501.211(2), Fla. Stat., plaintiffs are entitled to their actual damages, plus attorneys' fees and court costs.

116.    WHEREFORE, plaintiffs demand judgment in their favor and against defendants in an amount to be determined at trial, plus attorneys' fees, costs, and interest.

## COUNT XI
## CIVIL CONSPIRACY

117.    Plaintiffs repeat and reallege every allegation in paragraphs 1-42 inclusive as if fully set forth herein.

118.    New Media Ventures, the Robin Hood Foundation, the William and Flora Hewlett Foundation, James W. Breyer, Breyer Labs, Jack Patrick Dorsey, Christopher Sacca, and Weil Gotshal are unnamed co-conspirators in this action.

119.    An agreement existed among defendants to permit an unlawful act, i.e. being a fake charity, UPL, overly promoting bankruptcy to "20 million Americans" i.e. 10% of the eligible public, and misleading advertising in Florida.

120.    In fact, defendants are operating Upsolve as an illegal enterprise in Florida.

121.    WHEREFORE, as a direct and proximate cause of defendants' conspiratorial acts, plaintiffs have incurred economic damages and are entitled to recover economic damages.

## COUNT XII

21

<u>ANTITRUST</u>

122.    Plaintiffs repeat and reallege every allegation in paragraphs 1-42 inclusive as if fully set forth herein.

123.    Defendants are violating Florida's antitrust laws.  § 542.15, et seq., Fla. Stat. Upsolve and Weil Gotshal, the largest bankruptcy firm in the United States, are conspiring to undermine the Florida Bar, especially bankruptcy lawyers and smaller practitioners, to give themselves a grossly unfair advantage in and a virtual monopoly over the bankruptcy market. This is also evidenced by their tortious acts in relation to John Doe No. 1, a member of the Florida Bar.

124.    WHEREFORE, plaintiffs seek an injunction against defendants from engaging in anticompetitive behavior in Florida and attorneys' fees.

<u>COUNT XIII</u>
<u>DECLARATORY RELIEF</u>

125.    Plaintiffs repeat and reallege every allegation in paragraphs 1-42 inclusive as if fully set forth herein.

126.    There is an actual controversy between plaintiffs and defendants as to 1) whether defendants are engaged in UPL in Florida and 2) whether Upsolve is a bona fide charity or a tax-advantaged fintech business venture.

127.    It constitutes UPL for a non-lawyer to prepare bankruptcy forms for another. *The Florida Bar v. Catarcio,* 709 So. 2d 96 (Fla. 1998).  This includes the petition and any necessary schedules.   Non-lawyers cannot offer legal advice or help select the forms.  *In re: Calzadilla*, 151 B.R. 622 (Bankr. S. D. Fla. 1993).   It also constitutes UPL for a non-lawyer to represent someone in bankruptcy court. *The Florida Bar v. Kaufman*, 452 So. 2d 526 (Fla. 1984).

22

128.    Upsolve admits to UPL and is challenging UPL statutes around the country.[21] This is why it preemptively sued the highly respected N.Y. Attorney General Letitia James before she prosecuted them first.  *On the Upsolve.org website, defendants themselves refer to Upsolve's "illegal legal advice".*[22]

129.    WHEREFORE, accordingly, plaintiffs seek a declaration that 1) Upsolve is engaged in UPL in Florida and 2) that Upsolve is an illegal charity.

COUNT XIV
INJUNCTION

130.    Plaintiffs repeat and reallege every allegation in paragraphs 1-42 inclusive as if fully set forth herein.

131.    This is an action for preliminary and permanent injunctive relief against defendants and all others acting on their behalf.

132.    Defendants are engaged in UPL in Florida.

133.    As a result of defendants' actions, plaintiffs have suffered mental anguish, pain and suffering, consequential and incidental damages, and other harms.

134.    Plaintiffs have been irreparably harmed by defendants' UPL.  The Florida public faces an imminent threat of irreparable harm if defendants' UPL and malpractice are allowed to continue in Florida.

135.    Plaintiffs have a substantial likelihood of success on the merits of this action.

136.    This Court has the equitable power to provide relief from the conduct described.

---

[21] Jan Hill, "Tech Nonprofit Sues for Right to Provide Free Bankruptcy Advice Without a Law Degree: Upsolve CEO Says U.S. Legal System Is 'Civil Rights Injustice'," Pacer Monitor, Mar 18, 2022. https://www.pacermonitor.com/articles/2022/03/18/tech-nonprofit-sues-for-right-to-provide-free-bankruptcy-advice-without-a-law-degree-upsolve-ceo-says-u-s-legal-system-is-civil-rights-injustice/

[22] "Illegal legal advice: Kudos to Upsolve for fighting to provide debt-collection advice," N.Y. Daily News, May 28, 2022. https://upsolve.org/press/

137.    Plaintiffs have no remedy at law.

138.    The threatened harm to plaintiffs outweighs any threatened harm that an injunction may cause to defendants.  They are openly flouting Florida law.

139.    The entry of injunctive relief will not pose any harm to the public. Instead, it would promote the confidence that the public has in the Courts to act swiftly to provide relief in the face of unlawful and harmful conduct, such as the acts detailed here.

140.    WHEREFORE, plaintiffs respectfully request that the Court enter temporary and permanent injunctive relief against defendants from offering bankruptcy products and services in the State, through its Florida office, over the worldwide web, or otherwise.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for relief in this Complaint as follows:

1)    With respect to John Doe No. 1's tortuous interference claim, monetary damages in excess of $1,000,000 plus costs of suit;

2)    Monetary damages in excess of $2,000,000, including but not limited to any compensatory, incidental, or consequential damages commensurate with proof at trial for the acts complained of herein;

3)    Punitive damages in accordance with proof and in amount consistent with applicable precedent;

4)    For the imposition of an asset freeze and constructive trust over all moneys unlawfully obtained through defendants' unfair, unlawful, fraudulent, and deceptive acts and practices which, if allowed to be retained, would unjustly enrich defendants and/or would be dissipated beyond the jurisdiction of this Court;

24

5)   For a declaration that defendants 1) are engaged in UPL in Florida and 2) are not a true charity.

6)   For an injunction prohibiting defendants from engaging in UPL in Florida and in interfering with the bankruptcy practices of members of the Florida Bar;

7)   For an award of attorneys' fees;

8)   For an award of costs;

9)   For pre- and post-judgment interest on any amounts awarded; and

10)   All other relief the Court finds just and appropriate.

## RESERVATION OF RIGHT TO CLAIM PUNITIVE DAMAGES

Plaintiffs reserve their rights to claim punitive damages until such time as they may make a proper showing to the Court as to its right to such damages per Fla. Stat. § 768.72.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial in this action for all the claims so triable.

Dated:      March 5, 2023              Respectfully submitted,
            Melbourne, Florida

                                       Christopher T. Beres
                                       Florida Bar Number: 588261
                                       *Attorney for plaintiffs John Does*
                                       1600 Sarno Road Ste. 1
                                       Melbourne, FL 32935
                                       (321) 339-9301
                                       christopherberes8@gmail.com

25



Lincoln Agnew, special to ProPublica Illinois

**THE $3 MILLION RESEARCH BREAKDOWN**

# The $3 Million Research Breakdown

How a star psychiatrist at the University of Illinois at Chicago violated protocols and put children at risk.

by Jodi S. Cohen, April 26, 2018, 3 a.m. CDT

*This story was co-published with The Chronicle of Higher Education.*

For nearly two decades, the University of Illinois at Chicago has touted child psychiatrist Mani Pavuluri as one of its stars: She founded a renowned clinic to treat children with bipolar disorder and secured millions of dollars in coveted federal funding to help unlock the mysteries of the disease.

Parents from around the country brought their children to see her. She helped boost the university as a leader in the field of child psychiatry.

But as Pavuluri's reputation grew, she put some of these particularly vulnerable children at serious risk in one of her clinical trials. She violated research rules by testing the powerful drug lithium on children younger than 13 although she was told not to, failed to properly alert parents of the study's risks and falsified data to cover up the misconduct, records show.

2/1/66 17:05 Case 6:23-cv-00975-RBD-RMN Document 1-1 Filed 05/26/23 Page 33 of 155 PageID 40
upsolve florida - Google Search
Exhibit 2

Google | upsolve florida | ✕  🎤  📷  🔍 | ⚙ ⠿ Ⓐ

🔍 All  📰 News  🖼 Images  ▷ Videos  🛒 Shopping  ⋮ More          Tools

About 180,000 results (0.40 seconds)

https://upsolve.org › fl  ⋮

### How To File Bankruptcy for Free in Florida - Upsolve

23 Mar 2022 — Collect Your **Florida** Bankruptcy Documents · Take Credit Counseling ·
Complete the Bankruptcy Forms · Get Your Filing Fee · Print Your Bankruptcy ...
              Rating: 5 · 1,661 reviews · Free · Finance
How To File Bankruptcy for... · Florida Bankruptcy Forms · Florida Districts & Filing...

https://upsolve.org  ⋮

### Upsolve

**Upsolve** is a movement to fight for a legal & financial system we can all access · 1.
Questionnaire · 2. Credit Course · 3. Generate Forms · 4. File Bankruptcy.

## People also ask  ⋮

Is Upsolve a legitimate company?

Does Chapter 7 wipe out all debt?

                                                            Feedback

https://www.justia.com › ... › Florida › Osceola County  ⋮

### Osceola County Bankruptcy Legal Aid & Pro Bono Services

**Upsolve** 122 E Colonial Dr # 200. Orlando, **FL** 32801. Bankruptcy ; Volunteer Involvement
Project, Affordable Legal Services PO Box 24688, Lakeland, **FL** 33802

https://navigator.aafp.org › upsolve-inc--new-york-ny--...  ⋮

### Self-Service Bankruptcy - Upsolve Inc serving Valparaiso, FL

Self-Service Bankruptcy by **Upsolve** Inc serving Valparaiso, **FL**. Cost: Free. This program
covers residents of All US states and territories.

https://uploads-ssl.webflow.com › ...  PDF  ⋮

### Case: Upsolve & Rev. John Udo-Okon v. New York (Filed Jan ...

25 Jan 2022 — The American Justice Movement is an **Upsolve** project. ... **Florida** Bar, 575 U.S.
433, 444 (2015) (upholding a restriction against strict ...
160 pages
You've visited this page 2 times. Last visit: 4/12/22

https://www.clsmf.org › bankruptcy  ⋮

### bankruptcy without a lawyer - Community Legal Services

2 Sept 2021 — Some Common **Florida** Exemptions. Homestead – this is the house that you
own and ... **Upsolve**.org. If you are ready to file for bankruptcy but ...

https://www.lsc.gov › i-am-grantee › technology › legal...  ⋮

### For Legal Aid Organizations, Upsolve Offers a Way to Do ...

Dubbed as a "TurboTax for bankruptcy," **Upsolve** is an up-and-comer in the burgeoning legal ...
Community Legal Services of Mid-**Florida**, Bay Area Legal Aid, ...

https://thefloridabarfoundation.org › free-bankruptcy-a...  ⋮

### Free bankruptcy assistance | The Florida Bar Foundation

31 Jan 2018 — **Upsolve** is a legal services nonprofit that provides free bankruptcy assistance to
individuals across the country. In 2018, **Upsolve** helped ...



**Public Benefits**

MENU

*powered by probono.net*

Welcome to the Public Benefits practice area, a resource of FLAdvocate to help lawyers and advocates better serve low-income applicants and recipients of public assistance in Florida. This area is password protected. Membership is for legal aid attorneys with all others allowed through express permission of the practice area leader.

JOIN US

Find a Practice Area in FL

Calendar          Library          Listservs

## Upsolve-- New Tool To File For Bankruptcy

There's a new website called Upsolve that helps people file for Chapter 7 bankruptcy at no cost. We are not affiliated with them and bankruptcy is a complicated process. Although we did not create it and cannot endorse it or guarantee results it could be a useful tool for you to check out.

### There is a fascinating tool with county level data created by the Self-Represented Litigation Network (SRLN), that you can find here.

Share this with the others at your organization who might find it useful and let me know ways that you use it by emailing me at alison@floridajusticetechnologycenter.org.

### *Hot* Topics

- New Food Stamp Benefit Levels!
- ABAWDS
- Exclusion of Federal Tax Refunds and Credits as Income and Assets
- Food Stamp Compromise
- SSA/SSI Fleeing Felons
- Social Security and SSI Fraud Issues
- 2016 SSI-Related Financial Standards

### Law & Policy

- TANF
- Food Stamps
- SSI
- Reemployment Assistance
- WIC
- LIHEAP
- Veterans Assistance

### Links

- TANF/Food Stamp On-line Application
- DCF Community Partners
- CareerSource
- UC Application

**SENIORS...**
**YOU MAY BE ELIGIBLE FOR FOOD ASSISTANCE!**

**YOU CAN APPLY FOR "SNAP"**
**(ALSO KNOWN AS FOOD STAMPS)**
**Your house, car and savings**
**do not count against you**
Seniors get extra credit toward SNAP for some health costs:
- Health expenses over $35 per month
- Premiums for Medicare, Part D and other insurance
- Medicines and doctors and hospital co-payments
- Health costs you pay out of your own pocket

How To Apply (It's FREE!)

Go to: http://myflorida.com/accessflorida/
If you don't have internet at home, your Public Library can help you find SNAP application information.
Avoid services that charge to help you apply -
Applying for SNAP is FREE!

**Visit a local DCF Service Center or Access Community Partner**
**Call 311, 211, United Way or County Human Services Office**
**If your benefits are denied, delayed or stopped:**
Call the Florida Senior Legal Helpline for Free Advice
1-888-895-7873

  



Florida Chapter 7 Bankruptcy Exemptions (2019)
461 views · 3 years ago

Upsolve

Florida Bankruptcy Exemptions Explained What are the Florida Bankruptcy Exemptions? The Florida bankruptcy exemptions
help ...

Hi this is Jonathan from the bankruptcy non profit Upsolve.

If you're filing for bankruptcy in Florida, it's important to know about the exemptions that you can use to protect your property.  Florida has a really generous homestead exemption for property owners, but some of its  personal property exemptions are less than in other states.  Read the article below to learn more.

461 views  Jan 22, 2019  Chapter 7 Bankruptcy Basics
Full article: https://upsolve.org/learn/florida-cha...

Florida Bankruptcy Exemptions Explained

What are the Florida Bankruptcy Exemptions?
The Florida bankruptcy exemptions help you keep certain property when you file. Unlike some other states,
Florida requires you to use the state exemptions. You don't have the option to claim the federal bankruptcy
exemptions.

How Do Exemptions Work?
When you file for Chapter 7 bankruptcy, one of the biggest questions is whether or not you will be able to keep
your property.

That depends on which property exemptions you can use on your bankruptcy forms. They are called exemptions
because they "exempt" -- or "excuse" -- certain property from being taken. In most cases, exemptions protect
most day-to-day items that you own, unless you have expensive property like a house or a car.

Certain exemptions protect entire categories of property like retirements accounts, regardless of value. Other
exemptions only protect specific property like a vehicle up to a certain value.

Every state has its own set of property exemptions. And some states also allow you choose between their
exemptions and a set of federal bankruptcy exemptions. When they do, they will generally let you to choose the
system that is the best fit for you.

Although some states allow you to use the federal bankruptcy exemptions, others do not. Florida does not
recognize the federal exemptions.

This means that you don't have the option to use the federal bankruptcy exemptions. You can only use the

Exhibit 3



Free Education, Community, and Support

**Bankruptcy is a big decision. We're here at every step**

✓ Receive articles and videos created by experienced bankruptcy attorneys for every step of the bankruptcy process. Watch our "341 meeting" prep video!

✓ Get real time court updates via text message after you file.

✓ Join the Facebook group of Upsolve users and get customer support.

Take Upsolve Screener ›

https://www.youtube.com/watch?v=aLr-xJGWX40





Upsolve Bankruptcy Reviews from REAL Users [Now $400M+ in Debt Relieved]

"$2300 it would cost to hire a lawyer"



Upsolve Bankruptcy Reviews from REAL Users [Now $400M+ in Debt Relieved]



Upsolve Bankruptcy Reviews from REAL Users [Now $400M+ in Debt Relieved]

"And the whole process was really easy.  Upsolve was there very step of the way, answering my questions, they emailed me back sometimes in minutes."

"They were a life saver.  I didn't have to pay anything.  Nothing."

"I feel free."

"An entirely new life."







# What's Life After Bankruptcy Like? How Long Is Chapter 7 Bankruptcy on Your Credit Report?

Most people who file Chapter 7 bankruptcy feel a sense of relief that all of their credit card and medical debt, along with other dischargeable debt, is totally gone. Many people see their credit scores improve if they had credit scores in the sub-600 range.

The bankruptcy process often creates a new sense of confidence, where people feel more comfortable with their financial affairs than when they began. Part of the reason is the two required personal finance courses. Chapter 7 bankruptcy also forces you to reflect on your financial situation.

People who file Chapter 7 bankruptcy usually get more serious about budgeting, saving, and rebuilding their credit, using tools like credit builder loans and secured credit cards.

Chapter 7 bankruptcy stays on your credit report for 10 years, but many people who file see their credit improve and are able to get approved for a mortgage within a few years if they make good financial decisions post-bankruptcy.

1. Learning Center

# Should I be Embarrassed About Filing for Bankruptcy?

**Upsolve is a nonprofit tool that helps you file bankruptcy for free.** Think TurboTax for bankruptcy. Get free education, customer support, and community. Featured in Forbes 4x and funded by institutions like Harvard University so we'll never ask you for a credit card. Explore our free tool

## In a Nutshell

Should I be embarrassed by a Chapter 7 bankruptcy filing? We'll let you know how you should think about your discharge of your debts.



**Written by Kristin Turner, Harvard Law Grad.** Legally reviewed by Attorney Andrea Wimmer

Updated December 1, 2020

## Table of Contents

- Common Causes
- Famous People Who have Filed
- Managing Your Bankruptcy-Related Emotions

- Instead -- Reframe Your Thinking
- Bankruptcy Myths
  - Myth: Bankruptcy is a long process.
  - Myth: Bankruptcy is bad for your credit.
  - Myth: Bankruptcy can negatively affect my job.
  - Myth: Bankruptcy will hurt my earnings.
  - Myth: Bankruptcy means I've failed.
  - Myth: Nobody will want to rent or lend to me after bankruptcy.
- Beyond Debt: Ways Bankruptcy Can Help Improve Your Situation
  - Stops Debt Collector Calls
  - Erases Most Debts
  - Most Filers Retain All Their Property
  - Stops Utility Shut Off
  - Recover Your Driver's License
- Let's Summarize…

Bankruptcy is a way of getting relief when you find yourself overwhelmed by debt. Unfortunately, in addition to being overwhelmed, many feel anxious and embarrassed about admitting that they need the type of debt relief bankruptcy provides.

There is no reason to feel embarrassed about filing bankruptcy!

Bankruptcy is an important safety net that exists for a reason. And it's available for anyone who truly needs the relief. The bankruptcy system is designed to provide a fresh start to those who need it most. As the number of successful and well-respected figures in American history who filed bankruptcy themselves have shown, it's a beginning, not an ending. More on that below.

# Common Causes

Bankruptcy is something that can happen to anybody for reasons beyond their control. Anything from a sudden repair to an emergency surgery can put a dent in your bank account and a burden on your paycheck. Financial shocks like job loss, medical bills, divorce, or small business failure often lead to bankruptcy.

https://www.youtube.com/watch?v=GLkpEHCwYqI&t=116s



**Everything You Will Need to Know: 341 Creditors Meeting**

 Upsolve
701 subscribers

 Subscribe

👍 139   👎   ➤ Share   ⬇ Download   •••

"Hi I am Rohan Pavuluri. I am the co-founder of Upsolve. Today I'll be playing a debtor.

Hi I am Tina Tran the managing attorney at Upsolve. Today I will be playing the bankruptcy trustee.

Pavuluri: Now we are going to walk you through what a typical 341 meeting is like. I know it can be a little bit anxiety-inducing, but hopefully we'll calm your nerves a little bit......

Pavuluri: Wait until you hear the full question from the trustee before giving your answer. Even if you know what the answer is going to be....

Tran: Are there any errors or omissions that you are aware of.

Pavuluri: No there are not.

**Pavuliri then answers "no" to every question regarding assets.**

Pavuluri: That wasn't bad at all. What happens now?

Tran: Well I can't give you legal advice. But most filers receive their discharge within 2 to 3 months of today's meeting. What that means is that is the end of your case. At that point all the debt you have

that is eligible to be relieved will have been relieved and you will not be responsible for that debt going forward.

Pavuluri:  Upsolve is a legal aid non-profit that helps families **across the country** that have hit hard times get back on their feet.

We hope you file for bankruptcy for free.

We'd love to help you out."

Upsolve has since helped relieve low-income families of more than $80 million of debt; received numerous honors, including *The New York Times*'s Good Tech Award; and been backed by the likes of former Google CEO Eric Schmidt. But in 2016, it was just a budding response to an idea Pavuluri had as a sophomore, while working at the Harvard Access to Justice Lab for Green professor of public law James Greiner. Even though rights are supposed to be equally accessible to all Americans, Pavuluri realized, low-income families who can't afford a lawyer to sort through the legal complications of accessing rights "are priced out."

Debt relief was a major example. He and others at the lab saw bankruptcy, despite the associated stigma, as one feasible way for low-income people to cope with huge debt resulting from medical expenses, unemployment, or predatory loans. Its effects are huge—the average Upsolve user's net worth improves by $40,000—and bankruptcy law is federal, so it works nationwide. "The richest corporations have armies of lawyers and bankers helping them restructure their debt and file for bankruptcy," Pavuluri explains, "while the lowest-income families can't even access this tool."

He spent his sophomore summer exploring the concept of an online web application that could help low-income families through the bankruptcy process for free. The initial research took place at the U.S. Bankruptcy Court in Brooklyn, because the Robin Hood Foundation—an anti-poverty nonprofit based in New York City—had offered him a free desk and mentorship. During his time at the courthouse, one of the judges introduced him to Jonathan Petts, a bankruptcy attorney, and the two started working together immediately, eventually building a software prototype and founding Upsolve.

Back in Cambridge, he admits, "I definitely concentrated in Upsolve more than statistics": he took 10 independent studies to be able to work full-time on the project. Harvard also provided "our first $200,000 to $300,000," through sources that included a top prize in the President's Innovation Challenge. "I think a lot of people should treat Harvard not just as a school, but as an incubator," he says, "a platform to launch their own organizations, or projects that solve serious social problems."

Upsolve's software is remarkably simple, he explains. Users answer a series of questions about what they earn, spend, own, and owe; Upsolve uses that data to fill out their bankruptcy forms and its in-house lawyers review the forms, which are then returned to the users to file with a local court. Pavuluri says the real challenge arose from design considerations: how to de-stigmatize bankruptcy to potential users, and effectively question people in emotional and financial distress. These considerations—as well as

Learning Center

# What do I list as my address if I lived overseas 3 years ago?

1 minute read • Upsolve is a nonprofit tool that helps you file bankruptcy for free. Think TurboTax for bankruptcy. Get free education, customer support, and community. Featured in Forbes 4x and funded by institutions like Harvard University so we'll never ask you for a credit card. Explore our free tool.

**In a Nutshell**

Questions about your addresses on your bankruptcy forms are used to determine one of two things: 1. Which state you are eligible to file bankruptcy in and 2. Which state's exemptions you can use to protect your assets.

 Written by Kristin Turner, Harvard Law Grad.
Updated July 22, 2020

**Upsolve's nonprofit tool helps you file bankruptcy for free**

 Get Started

⏱ 2,049 people online filing

Questions about your addresses on your bankruptcy forms are used to determine one of two things:

1. Which state you are eligible to file bankruptcy in and

2. Which state's exemptions you can use to protect your assets.

If you have lived in a state for at least 91 of the last 180 days, you will be eligible to file in that state. In this case, your overseas residency was more than one year ago, so you would not have to worry about it affecting where you can file.

Exemptions are a bit trickier. Typically you may use the exemptions of the state in which you lived for the majority of the time between 24-30 months ago. If you lived overseas during that time, you will need to use the exemptions of:

1. The state in which the majority of your assets were located during that time frame.

2. If you did not have assets in the US at that time, then you will use the exemptions for the state in which you lived for the majority of the six month period following your return to the US.

↑ Back to top                                          Share Article [↗]

# Can I Amend My Bankruptcy Forms After I File?

<u>5 minute read</u> • **Upsolve is a nonprofit tool that helps you file bankruptcy for free.** Think TurboTax for bankruptcy. Get free education, customer support, and community. Featured in Forbes 4x and funded by institutions like Harvard University so we'll never ask you for a credit card. <u>Explore our free tool</u>

## In a Nutshell

If you make a mistake or accidentally leave information out of your bankruptcy forms, you can almost always amend them after you file. The trustee in your bankruptcy case may also ask you to file an amendment after meeting with you in your 341 meeting. Be sure to fill out the amended forms carefully with the correct information and follow any local court rules to submit the amended forms. Most amended forms don't require a filing fee.



**Written by <u>Attorney Jenni Klock Morel</u>.**

Updated July 2, 2022

## Table of Contents

- <u>What Are the Reasons To File an Amendment?</u>
  - <u>What Are My Bankruptcy Forms?</u>
  - <u>Amending a Mistake, Omission, or Change in Circumstance</u>



Total debt relieved by Upsolve users: $543,210,470

**Mary: How do you measure success and what is your favorite success story?**

Our most important metric for success is the number of people we help file for bankruptcy. Since we started building our software a few months ago, we've helped 30 low-income New Yorkers get a fresh start. It's hard to overstate the impact we've made on their lives. It erases constant anxiety and gives them a new sense of what's possible. Our users have already gone on to get new jobs. As the Supreme Court stated, bankruptcy gives hard-pressed Americans "a new opportunity in life and a clear field for future effort."

Our favorite success story comes from a woman named Linda. She was in a car accident last year and fell into $30,000 of medical debt. Linda had to take some time off from work and began missing credit card payments, which made her fall further into debt. Linda came to us because she couldn't afford a lawyer and couldn't get help from legal aid. We filed her bankruptcy within a week, wiping her slate clean, and now she's working again.

**Mary: Startups are an adventure; what's your favorite startup story?**

Raising money for a nonprofit is hard, and only now do we realize how crazy you need to be to raise money for a nonprofit that's also a tech startup. That's why there are barely any tech nonprofits around.

In our effort to raise money and revise restrictive policy around legal tech, we took a bus down to Washington, DC, this summer and visited about 10 congressional offices on Capitol Hill. We found some great allies, but we were humbled by conversations with a few Congressional staffers who thought government should stop funding legal aid altogether. It reminded us that

 **PROPUBLICA**      ✉ SIGN UP                    Donate

# Nonprofit Explorer
Research Tax-Exempt Organizations

---

# UPSOLVE INC

BROOKLYN, NY 11201-6274 │ TAX-EXEMPT SINCE JAN. 2018

**EIN:** 82-1736267

**Classification** (NTEE)
Public Interest Law, Litigation (Crime, Legal-Related)

**Nonprofit Tax Code Designation: 501(c)(3)**
Defined as: Organizations for any of the following purposes: religious, educational, charitable, scientific, literary, testing for public safety, fostering national or international amateur sports competition (as long as it doesn't provide athletic facilities or equipment), or the prevention of cruelty to children or animals.

**Donations to this organization are tax deductible.**

**More Resources:** ⤢ GuideStar

**Get notifications:** Sign up for updates about our data.

---

# Tax Filings by Year

The IRS Form 990 is an annual information return that most organizations claiming federal tax-exempt status must file yearly. Read the IRS instructions for 990 forms.

If this organization has filed an amended return, it may not be reflected in the data below. Duplicated download links may be due to resubmissions or amendments to an organization's original return.

---

FISCAL YEAR
ENDING DEC.
## 2020

The IRS has provided extracted financial data for this filing, but has not yet released the source documents.

### Total Revenue        **$1,557,545**

| | |
|---|---|
| **Total Functional Expenses** | $1,215,676 |
| **Net income** | **$341,869** |

| Notable sources of revenue | | Percent of total revenue | |
|---|---|---|---|
| Contributions | $1,036,525 | 66.5% | |
| Program services | $509,505 | 32.7% | |
| Investment income | $11,515 | 0.7% | |
| Bond proceeds | $0 | | |
| Royalties | $0 | | |
| Rental property income | $0 | | |

## Total Revenue    $1,557,545

**Total Functional Expenses**    $1,215,676
**Net income**    $341,869
Net fundraising    $0
Sales of assets    $0
Net inventory sales    $0
Other revenue    $0

**Notable expenses**    **Percent of total expenses**
Executive compensation    $174,038    14.3%
Professional fundraising fees    $0
Other salaries and wages    $455,676    37.5%

**Other**
Total Assets    $2,042,597
Total Liabilities    $117,040
Net Assets    $1,925,557

**Help Keep Nonprofit Explorer Free!**

If you have used our data or site in your research or reporting, add credit and a link to Nonprofit Explorer in your story or publication and let us know.

FISCAL YEAR
ENDING DEC.
# 2019

PDF

990

Full Text

990 (FILED ON
OCT. 2, 2020)

Full Filing

Schedules ▾

Raw XML

990

## Total Revenue    $2,087,296

**Total Functional Expenses**    $887,594
**Net income**    $1,199,702

**Notable sources of revenue**    **Percent of total revenue**
Contributions    $1,683,435    80.7%
Program services    $390,140    18.7%
Investment income    $13,721    0.7%
Bond proceeds    $0
Royalties    $0
Rental property income    $0
Net fundraising    $0
Sales of assets    $0
Net inventory sales    $0
Other revenue    $0

**Notable expenses**    **Percent of total expenses**
Executive compensation    $176,011    19.8%
Professional fundraising fees    $0
Other salaries and wages    $241,725    27.2%

**Other**
Total Assets    $1,635,081
Total Liabilities    $51,393
Net Assets    $1,583,688

**Key Employees and Officers**    **Compensation**

# Upsolve's Rohan Pavuluri Named 2022 Recipient of IAALS' Alli Gerkman Legal Visionary Award

**Kelsey Montague**

Associate Director of Marketing and Public Relations

**Zachary Willis**

Associate Director of Communications

**March 8, 2022**



IAALS, the Institute for the Advancement of the American Legal System, announced today that it is awarding Rohan Pavuluri, CEO and co-founder of Upsolve, the second annual Alli Gerkman Legal Visionary Award. The award is designed to encourage and showcase innovators, risk takers, visionaries, and emerging leaders who bring a different perspective and a reform-minded approach to the improvement of our legal system, and who are early in their legal careers.

Upsolve started by providing the first "TurboTax" for bankruptcy, which helps people navigate and complete the bankruptcy process without having a lawyer. As of February, Upsolve has helped users in the United States relieve more than $450 million in debt. In a new initiative to expand on his mission to make the legal system more accessible, Pavuluri recently brought suit in New York, arguing that the state's prohibition on non-lawyers providing legal advice is unconstitutional and violates the First Amendment. Upsolve's long-term vision is to use education, technology, and advocacy to help families access the legal system, so they can achieve economic mobility.

"IAALS is thrilled to present Rohan with this award, recognizing his efforts to shake up the status quo and push the boundaries of our justice system," said David Yellen, CEO of

IAALS. "Through his work, Rohan has not only shone a bright light on where our system fails the public, he has brought solutions and momentum for reform."

"I'm very honored to receive this award," said Pavuluri. "IAALS and I share a commitment to advancing people-focused innovations throughout our legal system. I'm proud of what Upsolve has achieved, and excited to continue working with our friends in this fight who are committed to increasing access to justice, civil rights, and human rights."

300th Anniversary University Professor and former dean of Harvard Law School Martha Minow, who nominated Pavuluri, said, "From his time at Harvard College to now, Rohan has committed himself to deploying digital technology to address needs of marginalized communities. He exemplifies vision and service, and despite having never attended law school, Rohan is making an enormous difference in the lives of people who really need legal help."

In a letter of support for Pavuluri's nomination, President Emeritus of the Legal Services Corporation Jim Sandman said, "I know no one who offers more promise for improving access to justice in the United States than Rohan Pavuluri. He is young—25—but he has already had a significant impact on the justice system. Rohan is an innovator, advocate, and change agent in improving the civil justice system so it better serves the public."

IAALS looks forward to partnering and collaborating with Pavuluri during the coming year to elevate his important work and further our common vision of increasing access to justice for everyone.

The annual Alli Gerkman Legal Visionary Award seeks nominees who envision a better justice system and who have worked to make it a reality—those who are rethinking law, reimagining the legal system, rebuilding trust with the public, or reframing the future of the legal profession.

Pavuluri will be presented with the award at IAALS' Rebuilding Justice Award Dinner on April 28, 2022. The award was created in honor of Alli Gerkman—a leader at IAALS and in national legal education and legal profession reform—who transformed the way our nation thinks about legal education and the role lawyers play in our society. A true visionary, Gerkman helped open the door to a fundamental reframing of how lawyers enter the profession of law and how the profession itself is regulated. After she passed away from cancer in 2019, IAALS created the award to honor her—and those visionaries who follow in her footsteps, like Pavuluri.

R-20-0034 Petition to Restlye and Amend Supreme Court Rule 31:

https://www.azcourts.gov/Rules-Forum/aft/1118/afpg/5
Dave Byers Executive Director, Administrative Office of Courts ...

2019, **Upsolve** has relieved over $5.3 million in debt for Arizona residents, making **Upsolve** one of the largest nonprofits for bankruptcy in Arizona. I co-founded **Upsolve** during my time at the Harvard Law School Access to Justice Lab. **Upsolve** has raised nearly $3 million in funding from organiza...

Updated: 1 day ago  Source: Pages

Rohan Pavuluri New Member Posts:1 New Member -- 30 Mar 2020 09:50 AM Rohan Pavuluri Upsolve, CEO 1180 6th Ave. New York NY 10036 Phone: (646) 653-0918 I am writing to support the elimination of ER 5.4 and the introduction of a new category of nonlawyer legal-service provider, the limited license legal practitioner ("LLLP"). These measures would allow for Arizona to responsibly introduce new kinds of free and low-cost assistance for low-income and working-class families who cannot afford lawyers. My name is Rohan Pavuluri, and I'm the CEO of Upsolve, a nonprofit that helps low-income families who cannot afford lawyers file bankruptcy for free, using an online document assembly tool. Over the last four years, Upsolve has become the largest bankruptcy-related nonprofit in the United States, relieving nearly $200 million in debt for thousands of low-income families. Since January 1, 2019, Upsolve has relieved over $5.3 million in debt for Arizona residents, making Upsolve one of the largest nonprofits for bankruptcy in Arizona. I co-founded Upsolve during my time at the Harvard Law School Access to Justice Lab. Upsolve has raised nearly $3 million in funding from organizations that include the Legal Services Corporation, Hewlett Foundation, and Public Welfare Foundation. Along with my day job, I hold volunteer positions on the legal innovation committee of the American Academy of Arts and Sciences and the Emerging Leaders Council of the Legal Services Corporation. There are not enough free or affordable lawyers in America to meet the demands of poor and working-class families who require civil legal assistance. And there never will be, given just how much the demand for free and low-cost lawyers exceeds the supply. It is not a political reality that we'll ever have enough funds to support a free legal aid lawyer for everyone who needs one. The current state of regulations means that poor and working-class families, by and large, cannot get meaningful assistance to solve their legal problems from any person or company that is not a lawyer. These regulations may seem reasonable, but they are, in reality, one of the greatest civil rights injustices of our day. They limit the supply of help available. They ensure that countless poor and working-class families cannot access their basic legal rights. They guarantee that Arizona residents do not have equal protection under the law. The Supreme Court of Arizona is in a unique position to do something similar to those who first spoke up against Separate but Equal, a policy that at the time appeared reasonable to many in power, just as today's policies against non-lawyer assistance seem reasonable. The truth of Separate but Equal is that it ensured unequal access to democracy for black people. The truth of today's regulation on the practice of the law is that it ensures unequal access to democracy for poor and working-class people. Think about having to go see a doctor for every small ache or pain rather than being able to go buy Advil yourself. In the law, we must encourage people to use more affordable limited license legal practitioners when they have a problem where limited license legal practitioners will do. Telling a poor person to go find a lawyer they obviously can't afford is out-of-touch, unjust, and just doesn't make sense. We must not let perfect be the enemy of good. Consumer protection is important. All the other concerns on this forum are reasonable. That is

the purpose of thoughtful regulations proposed by the Petitioner. Nobody is suggesting we immediately open the floodgates to unregulated interventions with regards to Alternative Business Structures and Limited License Legal Practitioners. Indeed, lawyers will always be at the center of these interventions. The legal fees that poor people must pay today to preserve their life, liberty, and property resemble the poll taxes that used to stop people from voting. One of the only ways to get rid of these modern-day poll taxes is to allow new kinds of regulated non-lawyer assistance, working side-by-side with lawyers, to provide meaningful legal assistance at lower costs or for free. At Upsolve, I have spent the last four years of my life dedicated to providing a technology solution to low-income families trapped in debt who need access to our bankruptcy system. Our free internet application uses technology to gather and input user's information into the standard Chapter 7 bankruptcy forms. We do not provide legal advice or representation. 98 percent of the people who file for bankruptcy using our document assembly tool are able to obtain a discharge. This is about the same rate of success for attorney-represented debtors, and it's far above people who file for bankruptcy on their own without any kind of assistance. My lived experience, combined with the data we've collected, has taught me that for certain areas of the law non-attorney assistance can provide access to justice at scale for poor people who can't afford lawyers, achieving similar outcomes in the routine, simpler, more non-adversarial parts of poverty law, which is where Alternative Business Structures and LLLPs would shine. While Upsolve is a non-lawyer document assembly tool that is able to operate in the existing regulatory framework, there are numerous forms of effective, safe non-lawyer assistance that cannot exist in Arizona. The latitude the Arizona provides to its estate agents serves as a powerful precedent for what's possible and what the public wants. I have no doubt that if these measures were a ballot initiative in Arizona, they would pass in a landslide. Lawyers will always be at the center of our justice system. I personally love our lawyers! But the promise of equal justice under the law is too big for lawyers alone. The only way we'll ever have equal justice is if we allow other professionals, nonprofits, and private companies to take on the challenge, led by lawyers, and to do it in a responsible, accountable, and safe way. That's the purpose of Alternative Business Structures and Limited License Legal Practitioners. Best, Rohan Pavuluri Upsolve, CEO

1/20/23, 1:46 AM
Case 6:23-cv-00975-RBD-RMN Document 1-1 Filed 05/26/23 Page 57 of 155 PageID 64
Unauthorized Practice Of Law Rules Promote Racial Injustice - Law360



**Portfolio Media. Inc.** | 111 West 19th Street, 5th floor | New York, NY 10011 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

# 'Unauthorized Practice Of Law' Rules Promote Racial Injustice

By **Rohan Pavuluri** (June 7, 2020, 8:02 PM EDT)

This past week, black Americans and those who stand with them have openly voiced their anger against racism, hate and systemic oppression. Addressing the recent protests, former President Barack Obama wrote, "The point of protest is to raise public awareness, to put a spotlight on injustice ... But eventually, aspirations have to be translated into specific laws and institutional practices."[1]



Rohan Pavuluri

Some have begun to channel the outrage against racism into policy proposals like citizen-led police oversight. But fighting the legacy of white supremacy extends beyond law enforcement reform. A less discussed, yet still pernicious, set of policies that must change are the rules lawyers use to regulate their own profession.

Known as unauthorized practice of law, or UPL, rules, every state in America has policies that grant lawyers a monopoly on providing legal advice, prohibiting professionals who are not lawyers from providing meaningful legal assistance. These policies promote racial inequity and guarantee that black Americans don't have equal opportunities and equal rights under the law.

First, consider which group of people disproportionately has access to three years and $100,000-plus of graduate school education. Due to today's racial wealth gap, created by centuries of white supremacy and black oppression dating back to slavery, the net worth of a typical white family is nearly 10 times[2] higher than that of a black family. It should come as no surprise that only 5% of lawyers are black.[3]

Countless legal problems do not and should not require someone to pay more than $100,000 in fees to learn how to provide competent assistance. By essentially requiring people to go to law school to provide legal assistance, UPL rules guarantee that only a fraction of black people who could competently provide legal assistance are actually allowed to provide such help.

Second, consider which group of people disproportionately cannot afford the legal help they need. UPL rules guarantee that black people don't have equal access to our justice system by limiting the supply of helpers available, which drives up the cost of legal assistance.

It's not hard to imagine a system that exists, similar to nurse practitioners in medicine, where we train professionals to provide the same outcomes as lawyers in specific areas of poverty law. The process could include training modules for specific parts of poverty law that are routine and straightforward, followed by a test for each one.

We could start by training social workers, paralegals and law librarians who are already familiar with the law and serve lower-income communities. Areas of the law that present opportunity include uncontested divorce, consumer bankruptcy, immigration, social security disability, and consumer debt collection.

Opponents of UPL reform claim that we'll compromise consumer protection if we allow nonlawyers to provide assistance. This line of defense lacks nuance.

To reform UPL doesn't mean choosing between regulation and no regulation of the legal industry. It's

Filing 168052690
06-02-2020 CR0042fGMXRXX-XX

a choice between maintaining a status quo where black people are disproportionately excluded from both providing and receiving assistance and a system where we re-regulate the legal industry to make it more inclusive, increasing the supply of vetted, qualified helpers available. The false dichotomy of an all-or-nothing dialogue around UPL reform has failed black Americans who need access to affordable legal assistance.

Opponents also object on the grounds that allowing a new class of professionals to help low-income families access the justice system will create two tiers of justice, one for people who can afford a lawyer and one for those who can't. This view fails to appreciate that it's simply impossible to have a lawyer for every single person in America who needs one.

We need more lawyers to do pro bono work and more public funding for legal aid. We need more black lawyers too. But anyone who thinks the sole solution to the access to justice problem in America is more lawyers doesn't understand the scope of the problem.[4]

I applaud the efforts of regulatory bodies in Utah, California, Arizona and Illinois that have all launched honest initiatives to revise their rules, so that vetted professionals who aren't lawyers can provide meaningful legal assistance to people who can't afford an attorney.

The Utah Supreme Court recently enacted an Office of Legal Services Innovation to oversee a "regulatory sandbox," allowing vetted professionals who aren't lawyers to provide legal services.[5] The State Bar of California Board of Trustees recently created a task force that will explore similar reforms.[6] The Arizona Supreme Court is considering the creation of a limited license legal practitioner, or LLLP.[7] And a joint committee of the Chicago Bar Association and Bar Foundation task force will be making recommendations to the Illinois Supreme Court later this year.[8]

We must call on all state supreme courts and bar associations to follow their lead. And we must all have a more open discussion around how UPL rules and race in America intersect.

We can protect consumers and make 10 times the number of helpers available. Today's UPL rules across America are a civil rights injustice. It's not hard to see why black Americans rightfully feel like they live under a different legal system when they must overwhelmingly rely on white lawyers who they can't afford to access their basic civil legal rights. Every state supreme court and bar association has the duty to reform their UPL rules if they care about racial justice.

---

*Rohan Pavuluri is the CEO of Upsolve, a member of the Legal Services Corp.'s Emerging Leaders Council, and a committee member of the American Academy of Arts and Sciences' Making Justice Accessible project.*

**"Perspectives" is a regular feature written by guest authors from the access to justice field. To pitch article ideas, email expertanalysis@law360.com.**

*The opinions expressed are those of the author(s) and do not necessarily reflect the views of the firm, its clients or Portfolio Media Inc., or any of its or their respective affiliates. This article is for general information purposes and is not intended to be and should not be taken as legal advice.*

[1] https://medium.com/@BarackObama/how-to-make-this-moment-the-turning-point-for-real-change-9fa209806067

[2] https://www.brookings.edu/blog/up-front/2020/02/27/examining-the-black-white-wealth-gap/

[3] https://www.americanbar.org/content/dam/aba/images/news/2019/08/ProfileOfProfession-total-hi.pdf

[4] https://www.lsc.gov/media-center/publications/2017-justice-gap-report

[5] https://sandbox.utcourts.gov/

[6] https://news.bloomberglaw.com/us-law-week/california-bar-trustees-move-toward-new-...

regulatory-sandbox

[7] https://www.azcourts.gov/Rules-Forum/aft/1118

[8] https://chicagobarfoundation.org/advocacy/issues/sustainable-practice-innovation/

All Content © 2003-2023, Portfolio Media, Inc.

Exhibit 13





**How Upsolve Started With Weil**

 Upsolve
690 subscribers


👍 1    👎    ↗ Share    ⬇ Download    ⋯



**Upsolve Chairman Jonathan Betts stated:**

"So at the start of this journey two years ago, I reached out to my mentor Judge Cecilia Morris. And she said you have to talk to Weil. They can help you with the pro bono legal work that you are going to need to get this off the ground and they can also help you with fundraising. And so I reached out to Gary Holtzer. And Gary immediately connected me to Joe Smolinsky. Joe was a world class lawyer. But an even better human being. He was warm, caring. He would light up a room and make everyone feel welcome and warm. And Joe just immediately understood our mission of democratizing bankruptcy for folks who needed a fresh start but couldn't afford to pay a lawyer. And Joe was a tireless advocate for us and we wouldn't be where we are today without his help and the help of his associates Gabby and Matt. Upsolve wouldn't be where it is without Gabby and Matt. And we want to thank you for that. We also want to thank everyone here for coming out tonight and supporting us. We are able to help people get a fresh start for about $150 per person. And so together our hope is we're going to change a lot of people's lives forever tonight. Thanks so much. "

# Update for Florida Residents



**Help is now available for Florida residents dealing with unmanageable bills.**

**Without help**, many people are struggling to find their way back to financial stability.

**Last month, we heard from more than 13,000 Florida residents.** Many were scared and not sure who to trust. They knew they had to do something, but couldn't find an option they felt good about.

**Many of them** have gone from paying bills on time and having plenty in savings to thinking about filing bankruptcy. Most didn't know about the programs they qualified for.

**Financial hardship programs help people restore finances** without filing bankruptcy.

**Florida residents** can <u>find out here</u> if their bills qualify for help without filing bankruptcy.



11/14/22, 12:38 AM    Case 6:23-cv-00975-RBD-RMN    Document 1-1    Filed 05/26/23    Page 64 of 155 PageID 71
Upsolve - A Good Option? - Julie Kreutzer Law

Exhibit 13

# UPSOLVE – A GOOD OPTION?

*By Julie Kreutzer  Posted October 29, 2020  In Debt, Helpful Articles*

By: Julie Kreutzer, Esq.

Up till now, if a debtor couldn't afford counsel for a Chapter 7, they had two options: 1) filling out all the forms on their own, then deal with creditors and the hearing on their own with no assistance, or 2) scheduling with an attorney like me at their hourly rate to get some input as to whether their forms were correct and how to do the 341 hearing and deal with creditors. Now there's Upsolve, which helps debtors do the forms through their software. This allows attorneys like me, who are willing to consult with clients (not all attorneys do this), to affordably assist clients.

Is Upsolve Legit?

I was wary of Upsolve at first, since I thought it was a possible scam, but it was put together by a student from Harvard who created a Nonprofit to help the kind of debtor who struggled and often failed to do their own bankruptcy. I just consulted with a client who wanted me to review and comment on the forms Upsolve software generated and give him advice afterwards on a variety of issues. I felt Upsolve did an excellent job and am quite impressed. Here are my thoughts:

Advantages:

- Cost! There is a quantum difference between paying an attorney like me somewhere around $350.00 to consult after using Upsolve vs. $1-2,000 or more for full representation (depending on the amount of time needed and varying attorney rates.)
- The client and the attorney don't need to go back and forth on the information needed for the forms, which is time consuming and can be aggravating for both parties.
- The software populates the forms consistently though if you answer a question incorrectly, you still need to go in and correct the forms since they need to have consistent information. It also provides key warnings and advice on how to do certain tasks.
- For complex cases, there's an option to get a free evaluation by a private attorney.

DISADVANTAGES

- There's a reason why the bankruptcy court warns debtors that without an attorney, their case kicked can be kicked out of Court with prejudice or get a debtor in legal trouble. It's easier and reassuring to have an

Case 6:23-cv-00975-RBD-RMN   Document 1-1   Filed 05/26/23   Page 65 of 155 PageID 72

attorney working with you than wading through the forms alone even with this software. It's easy to make mistakes that are dangerous.   Also, the 341 hearing is intimidating for many debtors as well as another landmine for a case. Many debtors have specific questions as to how to deal with creditors and about the Bankruptcy process that Upsolve can't really cope with since it's not designed to advise each debtor on their questions and concerns.

- The free Evaluation offered by Upsolve is very helpful but only goes so far. Most cases have what I call "Red Flag issues"; which are items I think a Trustee is going to want to know more about that are or could be trouble.  I can see them when I look at the documents and warn the client about how to deal with them.  Be assured the Trustee will make notes as to a filing and at the 341 hearing will want to know more so it's crucial to deal with these issues.  When I identify issues like this, I work with my client to resolve them or be ready to discuss with the Trustee and occasionally, it means it's a really bad idea to file at all, but it's better to know that and pursue other options rather than discover it at a 341 hearing when it's too late.

OVERALL

Upsolve opens up a new world for debtors who can't afford to retain an attorney, though I recommend having an experienced attorney review the forms to make sure they are accurate, advise on red flag issues and coach the client on issues like how to deal with a 341 hearing.





Home Society

# Surviving Bankruptcy: An Interview with Upsolve

by **Christopher Wu**

September 27, 2018

in **Society**, **Tech**



**Share on Facebook** **Share on Twitter**

1. Learning Center
2. Debts

# How Can I Find a Free Bankruptcy Lawyer in New York City?

**3 minute read • Upsolve is a nonprofit tool that helps you file bankruptcy for free.** Think TurboTax for bankruptcy. Get free education, customer support, and community. Featured in Forbes 4x and funded by institutions like Harvard University so we'll never ask you for a credit card. Explore our free tool

## In a Nutshell

If you're looking for an affordable bankruptcy lawyer, look no further. Upsolve is a nonprofit that helps low-income Americans get the fresh start they need through Chapter 7 bankruptcy. We'll also help you look at other resources for affordable bankruptcy lawyers.



**Written by Kristin Turner, Harvard Law Grad.**

Updated November 11, 2020

## Table of Contents

- Legal Aid Nonprofits Serving People across New York City
- If You're in a Union
- Contacting Legal Aid in New York City
- Getting Help from Legal Aid in New York City
- The New York City Bankruptcy Courts

Exhibit 17

https://www.youtube.com/watch?v=4FCf9FC_1nI





How to File Bankruptcy for Free with Upsolve

"If all goes well, you'll get a letter in the mail 2-3 months later that your debt is officially discharged."

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL DISTRICT, IN
AND FOR BREVARD COUNTY, FLORIDA

JOHN DOE NO. 1 and JOHN DOE NO. 2,

        Plaintiffs,

v.                                      CASE NO. 05-2023-CA-018273-XXXX-XX

UPSOLVE, INC.,                                DIVISION:
ROHAN PAVULURI,
PRESIDENT AND FELLOWS OF HARVARD COLLEGE,
YALE UNIVERSITY,
Y COMBINATOR MANAGEMENT, LCC,
and
ERIC EMERSON SCHMIDT,

        Defendants.
_____/

## CIVIL ACTION SUMMONS

THE STATE OF FLORIDA:

TO EACH SHERIFF OF THE STATE:

       **YOU ARE HEREBY COMMANDED** to serve this Summons and a copy of the Complaint and in this lawsuit upon the below-named Defendant:

Upsolve, Inc.
205 Hudson Street 7th Fl.
New York, New York 10013

## IMPORTANT

       The Defendant is required to serve written defenses to the Complaint on Christopher T. Beres, Esquire, whose address is 1600 Sarno Road Ste 1, Melbourne, Florida 32935, within twenty (20) days after service of this summons on that Defendant, exclusive of the day of service, and file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the complaint.

**PLAINTIFF'S ATTORNEY**
Christopher T. Beres, Esq.
(Florida Bar No. 588261)
christopherberes8@gmail.com
1600 Sarno Road Ste. 1
Melbourne, Florida 32935
Telephone: (321) 339-9301

                       Dated on this **6** day of March 2023.
                       Clerk of Circuit Court
                       Rachel M Sadoff
                       By:
                       Deputy Clerk

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL DISTRICT, IN
AND FOR BREVARD COUNTY, FLORIDA

JOHN DOE NO. 1 and JOHN DOE NO. 2,

                Plaintiffs,

v.

                                   CASE NO. 05-2023-CA-018273-XXXX-XX

UPSOLVE, INC.,                               DIVISION:
ROHAN PAVULURI,
PRESIDENT AND FELLOWS OF HARVARD COLLEGE,
YALE UNIVERSITY,
Y COMBINATOR MANAGEMENT, LCC,
and
ERIC EMERSON SCHMIDT,

                Defendants.
_____/

CIVIL ACTION SUMMONS

THE STATE OF FLORIDA:

TO EACH SHERIFF OF THE STATE:

        **YOU ARE HEREBY COMMANDED** to serve this Summons and a copy of the Complaint and in this lawsuit upon the below-named Defendant:

                        Rohan Pavuluri
                  29 Seventh Avenue S. Apt. 4B
                  New York, New York 10014

IMPORTANT

        The Defendant is required to serve written defenses to the Complaint on Christopher T. Beres, Esquire, whose address is 1600 Sarno Road Ste 1, Melbourne, Florida 32935, within twenty (20) days after service of this summons on that Defendant, exclusive of the day of service, and file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter.  If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the complaint.

**PLAINTIFF'S ATTORNEY**
Christopher T. Beres, Esq.
(Florida Bar No. 588261)
christopherberes8@gmail.com
1600 Sarno Road Ste. 1
Melbourne, Florida 32935
Telephone: (321) 339-9301

                        Dated on this **6** day of March 2023.
                        Clerk of Circuit Court
                        Rachel M Sadoff
                        By:
                        Deputy Clerk

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL DISTRICT, IN
AND FOR BREVARD COUNTY, FLORIDA

JOHN DOE NO. 1 and JOHN DOE NO. 2,

                 Plaintiffs,

v.                                           CASE NO.  05-2023-CA-018273-XXXX-XX

UPSOLVE, INC.,                             DIVISION:
ROHAN PAVULURI,
PRESIDENT AND FELLOWS OF HARVARD COLLEGE,
YALE UNIVERSITY,
Y COMBINATOR MANAGEMENT, LCC,
and
ERIC EMERSON SCHMIDT,

                 Defendants.

_____/

CIVIL ACTION SUMMONS

THE STATE OF FLORIDA:

TO EACH SHERIFF OF THE STATE:

       **YOU ARE HEREBY COMMANDED** to serve this Summons and a copy of the Complaint and in this
lawsuit upon the below-named Defendant:

Harvard Office of the General Counsel
Smith Campus Center, Suite 980, 1350 Massachusetts Avenue
Cambridge, Massachusetts 02138-3834

IMPORTANT

      The Defendant is required to serve written defenses to the Complaint on Christopher T. Beres, Esquire,
whose address is 1600 Sarno Road Ste 1, Melbourne, Florida 32935, within twenty (20) days after service of this
summons on that Defendant, exclusive of the day of service, and file the original of the defenses with the Clerk of
this Court either before service on Plaintiff's attorney or immediately thereafter.  If a Defendant fails to do so, a
default will be entered against that Defendant for the relief demanded in the complaint.

**PLAINTIFF'S ATTORNEY**
Christopher T. Beres, Esq.
(Florida Bar No. 588261)
christopherberes8@gmail.com
1600 Sarno Road Ste. 1
Melbourne, Florida 32935
Telephone: (321) 339-9301

                              Dated on this  6 day of March 2023.
                              Clerk of Circuit Court
                              Rachel M Sadoff,
                              By
                              Deputy Clerk

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL DISTRICT, IN
AND FOR BREVARD COUNTY, FLORIDA

JOHN DOE NO. 1 and JOHN DOE NO. 2,

                Plaintiffs,

v.                                        CASE NO. **05-2023-CA-018273-XXXX-XX**

UPSOLVE, INC.,                          DIVISION:
ROHAN PAVULURI,
PRESIDENT AND FELLOWS OF HARVARD COLLEGE,
YALE UNIVERSITY,
Y COMBINATOR MANAGEMENT, LCC,
and
ERIC EMERSON SCHMIDT,

                Defendants.
_____/

CIVIL ACTION SUMMONS

THE STATE OF FLORIDA:

TO EACH SHERIFF OF THE STATE:

        **YOU ARE HEREBY COMMANDED** to serve this Summons and a copy of the Complaint and in this
lawsuit upon the below-named Defendant:

                      Yale University
                      2 Whitney Ave 6th Floor
              New Haven, Connecticut 06510

IMPORTANT

        The Defendant is required to serve written defenses to the Complaint on Christopher T. Beres, Esquire,
whose address is 1600 Sarno Road Ste 1, Melbourne, Florida 32935, within twenty (20) days after service of this
summons on that Defendant, exclusive of the day of service, and file the original of the defenses with the Clerk of
this Court either before service on Plaintiff's attorney or immediately thereafter.  If a Defendant fails to do so, a
default will be entered against that Defendant for the relief demanded in the complaint.

**PLAINTIFF'S ATTORNEY**
Christopher T. Beres, Esq.
(Florida Bar No. 588261)
christopherberes8@gmail.com
1600 Sarno Road Ste. 1
Melbourne, Florida 32935
Telephone: (321) 339-9301

                      Dated on this **6** day of March 2023.
                      Clerk of Circuit Court
                      Rachel M Sadoff
                      By:
                      Deputy Clerk

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL DISTRICT, IN
AND FOR BREVARD COUNTY, FLORIDA

JOHN DOE NO. 1 and JOHN DOE NO. 2,

        Plaintiffs,

v.                                         CASE NO.  05-2023-CA-018273-XXXX-XX

UPSOLVE, INC.,                           DIVISION:
ROHAN PAVULURI,
PRESIDENT AND FELLOWS OF HARVARD COLLEGE,
YALE UNIVERSITY,
Y COMBINATOR MANAGEMENT, LCC,
and
ERIC EMERSON SCHMIDT,

        Defendants.

_____/

CIVIL ACTION SUMMONS

THE STATE OF FLORIDA:

TO EACH SHERIFF OF THE STATE:

        **YOU ARE HEREBY COMMANDED** to serve this Summons and a copy of the Complaint and in this
lawsuit upon the below-named Defendant:

        Y Combinator Management, LLC Attn:  Corporation Service Company
                    1201 Hays Street
            Tallahassee, Florida 32301-2525

IMPORTANT

        The Defendant is required to serve written defenses to the Complaint on Christopher T. Beres, Esquire,
whose address is 1600 Sarno Road Ste 1, Melbourne, Florida 32935, within twenty (20) days after service of this
summons on that Defendant, exclusive of the day of service, and file the original of the defenses with the Clerk of
this Court either before service on Plaintiff's attorney or immediately thereafter.  If a Defendant fails to do so, a
default will be entered against that Defendant for the relief demanded in the complaint.

**PLAINTIFF'S ATTORNEY**
Christopher T. Beres, Esq.
(Florida Bar No. 588261)
christopherberes8@gmail.com
1600 Sarno Road Ste. 1
Melbourne, Florida 32935
Telephone: (321) 339-9301

                           Dated on this  6 day of March 2023.
                           Clerk of Circuit Court
                           Rachel M Sadoff
                           By:
                           Deputy Clerk

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL DISTRICT, IN
AND FOR BREVARD COUNTY, FLORIDA

JOHN DOE NO. 1 and JOHN DOE NO. 2,

Plaintiffs,

v.                                                    CASE NO. 05-2023-CA-018273-XXXX-XX

UPSOLVE, INC.,                                        DIVISION:
ROHAN PAVULURI,
PRESIDENT AND FELLOWS OF HARVARD COLLEGE,
YALE UNIVERSITY,
Y COMBINATOR MANAGEMENT, LCC,
and
ERIC EMERSON SCHMIDT,

Defendants.
_____/

CIVIL ACTION SUMMONS

THE STATE OF FLORIDA:

TO EACH SHERIFF OF THE STATE:

**YOU ARE HEREBY COMMANDED** to serve this Summons and a copy of the Complaint and in this
lawsuit upon the below-named Defendant:

Eric Emerson Schmidt
314 West San Marino Drive
Miami Beach, Florida 33139

IMPORTANT

The Defendant is required to serve written defenses to the Complaint on Christopher T. Beres, Esquire,
whose address is 1600 Sarno Road Ste 1, Melbourne, Florida 32935, within twenty (20) days after service of this
summons on that Defendant, exclusive of the day of service, and file the original of the defenses with the Clerk of
this Court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a
default will be entered against that Defendant for the relief demanded in the complaint.

**PLAINTIFF'S ATTORNEY**
Christopher T. Beres, Esq.
(Florida Bar No. 588261)
christopherberes8@gmail.com
1600 Sarno Road Ste. 1
Melbourne, Florida 32935
Telephone: (321) 339-9301

Dated on this 6 day of March 2023.
Clerk of Circuit Court
Rachel M Sadoff
By:
Deputy Clerk

# RETURN OF SERVICE

Court Stamp Here

| Court | IN THE CIRCUIT COURT OF THE 18TH JUDICIAL CIRCUIT IN AND FOR BREVARD COUNTY, FLORIDA | |
|---|---|---|
| Plaintiff | JOHN DOE NO. 1 AND JOHN DOE NO. 2 | Case # **05-2023-CA-018273-XXXX-XX** |
| Defendant | UPSOLVE, INC., ET AL. | Hearing Date |
| Person to be Served | Y Combinator Management, LLC c/o Corporation Service Company | Came to Hand Date/Time **3/09/2023    9:26 PM** |
| Manner of Service | Corporate | Service Date/Time **3/10/2023    9:30 AM** |
| Documents | SUMMONS;COMPLAINT | Service Fee **$135.00** |

On **3/10/2023** at:
**1201 Hays St, Suite 200, Tallahassee, FL 32301** I served **Y Combinator Management, LLC c/o Corporation Service Company** by:

Leaving **1** copy(ies) of this process with **Britany Doty**, a person authorized to accept service and informed that person of the contents thereof, with the date and hour of service endorsed thereon by me.

THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
**I delivered the documents to Britany Doty who indicated they were the person authorized to accept with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a blonde-haired white female contact 25-35 years of age, 5'8"-5'10" tall and weighing 160-180 lbs**

Notary not required pursuant to F.S. 92.525(2).

I am over 18 years of age, not a party to nor interested in this case and I have the proper authority in the jurisdiction where I effected service, pursuant to Florida Statute Chapter 48. Per U.S. Code § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.



| James Kady | 065 / 065 / 065 / 065 / 065 / 065 | 03/10/2023 |
|---|---|---|
| James Kady | Process Server ID | Date Executed |

Ref **REF-12179380**



abclegal
JOHN DOE VS UPSOLVE INC

Christopher Beres
<christopherberes8@gmail.com>

Tracking # **0102563828**



05-2023-CA-018273-XXXX-XX

IN THE CIRCUIT COURT OF THE 18TH JUDICIAL CIRCUIT
IN AND FOR BREVARD COUNTY, FLORIDA

| | | |
|---|---|---|
| **JOHN DOE NO. 1 AND JOHN DOE NO. 2** | Case No.: | **05-2023-CA-018273-XXXX-XX** |
| Plaintiff/Petitioner | | |
| vs. | | |
| **UPSOLVE, INC., ET AL.** | AFFIDAVIT OF SERVICE OF | |
| Defendant/Respondent | **SUMMONS; COMPLAINT** | |

Received by **Andrew Esposito**, on the **9th day of March, 2023 at 9:17 PM** to be served upon **Yale University** at **2 Whitney Avenue 6th floor, New Haven, New Haven County, CT 06510.**
On the **14th day of March, 2023 at 9:56 AM**, I, **Andrew Esposito**, **SERVED Yale University** at **2 Whitney Avenue 6th floor, New Haven, New Haven County, CT 06510** in the manner indicated below:

**CORPORATE SERVICE**, by personally delivering **1** copy(ies) of the above listed documents to the named Corporation, by serving **Harriet Cooper**, on behalf of said Corporation.
THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
**I delivered the documents to Harriet Cooper who indicated they were the person authorized to accept with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a blonde-haired white female contact 55-65 years of age, 5'4"-5'6" tall and weighing 120-140 lbs with glasses.**

Service Fee Total: **$135.00**

Per U.S. Code § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| NAME: | | 03/14/2023 |
| Andrew Esposito | Server ID # | Date |

REF: **REF-12179380**

Tracking #: **0102752882**



Filing # 168060762

JOHN DOE VS UPSOLVE INC

**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR BREVARD COUNTY, FLORIDA
Case No.: 05-2023-CA-018273-XXXX-XX
Assigned to the Honorable Michelle Naberhaus**

JOHN DOE NO. 1 and JOHN DOE NO 2,

      Plaintiffs,

vs.

UPSOLVE, INC., ROHAN PAVULURI,
PRESIDENT AND FELLOWS OF
HARVARD COLLEGE, YALE UNIVERSITY,
Y COMBINATOR MANAGEMENT, LLC
and ERIC EMERSON SCHMIDT,

      Defendants.

_____/

## NOTICE OF APPEARANCE AND NOTICE OF E-MAIL ADDRESS DESIGNATION PURSUANT TO FLORIDA RULE OF JUDICIAL ADMINISTRATION 2.516

      NOTICE is hereby given that LEWIS W. MURPHY, JR., ESQUIRE and ELISA C. MILLS, ESQUIRE, of the law offices of MURPHY & WALKER, P.L., file their Notice of Appearance as counsel for the Defendant, YALE UNIVERSITY, in the above-styled lawsuit, and request that all pleadings and correspondence be sent to their attention.

      Additionally, pursuant to Florida Rule of Judicial Administration 2.516, the following e-mail addresses are hereby designated for service of pleadings and documents with regard to this lawsuit as counsel for the Defendant, YALE UNIVERSITY:

          **Primary e-mails:**    wmurphy@murphywalker.com
                                      emills@murphywalker.com

          **Secondary e-mail:**    pleadings-murphy@murphywalker.com

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via the Florida Courts E-Filing Portal upon: **Christopher T. Beres, Esquire**, *counsel for the Plaintiffs*, 1600

*Case No. 05-2023-CA-018273-XXXX-XX*
*John Doe No. 1, et al. v. Upsolve, Inc., et al.*
*Page 2 of 2*

Sarno Road, Suite 1, Melbourne, Florida 32935, christopherberes8@gmail.com, this _21st_ day

of March, 2023.

> MURPHY & WALKER, P.L.
> *Attorneys for Defendant, Yale University*
> 2001 U.S. Highway 1
> Vero Beach, Florida  32960
> E-Mails: wmurphy@murphywalker.com
> emills@murphywalker.com
> pleadings-murphy@murphywalker.com
> Telephone: (772)231-1900
> Facsimile: (772)231-4387
>
> By: _____
> **Lewis W. Murphy, Jr.**
> Florida Bar No. 0909467
> **Elisa C. Mills**
> Florida Bar No. 110763

MURPHY & WALKER, VERO BEACH, FLORIDA

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR BREVARD COUNTY, FLORIDA
Case No.: 05-2023-CA-018273-XXXX-XX
Assigned to the Honorable Michelle Naberhaus

JOHN DOE NO. 1 and JOHN DOE NO. 2,

      Plaintiffs,

vs.

UPSOLVE, INC., ROHAN PAVULURI,
PRESIDENT AND FELLOWS OF
HARVARD COLLEGE, YALE UNIVERSITY,
Y COMBINATOR MANAGEMENT, LLC
and ERIC EMERSON SCHMIDT,

      Defendants.

_____/

### DEFENDANT, YALE UNIVERSITY'S MOTION TO DISMISS COMPLAINT

      Defendant, YALE UNIVERSITY, by and through its undersigned attorneys, serves this Motion to Dismiss the Complaint of Plaintiffs, JOHN DOE NO. 1 and JOHN DOE NO. 2, for the following reasons:

### BRIEF INTRODUCTION

      The twenty-five (25) page Complaint contains one (1) paragraph with a direct reference to Yale University. That single paragraph alleges only the location of Yale University's principal place of business, which is Connecticut. *See* Complaint, ¶ 15. The footnote imbedded in Paragraph 15 contains nothing more than a quotation from "crunchbase.com" stating that Yale Law School "invested in Upsolve" nearly seven (7) years ago. *Id.* at n. 2. The Complaint states that co-Defendant Upsolve, Inc. displayed a logo affiliated with Yale University on unspecified website and marketing materials. *Id.* at ¶ 20. None of the exhibits to the Complaint contain any reference to Yale University. The Complaint's isolated references to Yale University fail to establish personal jurisdiction over Yale University and further fail to state a cognizable claim against it. Accordingly, the Complaint is facially deficient, utterly devoid of merit, and should be dismissed with respect to Yale University.

MURPHY & WALKER, VERO BEACH, FLORIDA

*Case No. 05-2023-CA-018273-XXXX-XX*
*John Doe No. 1, et al. v. Upsolve, Inc., et al.*
*Page 2 of 8*

MURPHY & WALKER, VERO BEACH, FLORIDA

## LAW AND ARGUMENT

The Complaint fails to bring Yale University within the ambit of Section 48.193, Fla. Stat., and, further, fails to support any of the causes of action ostensibly pled by Plaintiffs against Yale University.   The Complaint also fails to identify the Plaintiffs and purports to allege fourteen (14) causes of action, thirteen (13) of which are apparently commingled against all six (6) of the different Defendants, including Yale University, in violation of Florida Rules of Civil Procedure 1.100 and 1.110(f).   Further, the Complaint's facially deficient pleading violates Florida Rule of Civil Procedure 1.110(b)(2) as it fails to reference Yale University in any of the counts and fails to allege any basis upon which Yale University could validly be included in this action.[1]

As such, in addition to the jurisdictional bar precluding prosecution of Plaintiffs' claims against Yale University, Plaintiffs' Complaint also should be dismissed for failure to state a claim upon which relief can be granted with respect to Yale University.

### A. The Complaint's Allegations Are Insufficient to Establish Personal Jurisdiction Over Yale

Under Florida's long-arm Statute, a person must act "personally" or "through an agent" in order to submit himself or herself to the jurisdiction of a Florida Court.   § 48.193(a)(1), Fla. Stat. Determining if personal jurisdiction exists generally requires a two-part inquiry.   *Aegis Def. Services, LLC v. Gilbert*, 222 So. 3d 656, 659 (Fla. 5th DCA 2017).   First, the Court must determine whether a complaint alleges sufficient jurisdictional facts to bring the action within the ambit of section 48.193, Fla. Stat., Florida's long-arm Statute.   *Id.*   Second, *if* the jurisdictional allegations are within the ambit of the Statute, the Court must determine whether sufficient "minimum contacts"

---

[1] The Complaint also appears to acknowledge that John Doe No. 2 is the debtor in an active Chapter 7 bankruptcy proceeding, in which event John Doe No. 2's claims are precluded absent participation by the Bankruptcy Trustee.

*Case No. 05-2023-CA-018273-XXXX-XX*
*John Doe No. 1, et al. v. Upsolve, Inc., et al.*
*Page 3 of 8*

_____

are demonstrated to satisfy due process requirements. *Id.* Under this second prong, determination of the existence of an agency relationship generally is an issue of fact and the burden is on the plaintiff to establish a prima facie case. *Enic, PLC v. F.F. S. & Co., Inc.*, 870 So. 2d 888, 891 (Fla. 5th DCA 2004). The requisite elements of an agency relationship are: 1) acknowledgment by the principal that the agent will act for it; 2) the agent's acceptance of the undertaking; and 3) control by the principal over the action of the agent. *Id.*

In this instance, the Complaint fails to pass pleading muster and Plaintiffs have not met their burden for exercising personal jurisdiction over Yale University. The Complaint's only Paragraph that directly references Yale University acknowledges that this foreign party is based in Connecticut, not Florida. Therefore, Plaintiffs must allege a factual basis for the Court to exercise jurisdiction over this foreign party under the specific, enumerated grounds contained in Section 48.193, Fla. Stat. However, the Complaint's conclusory jurisdictional allegation does not reference Yale University at all. Instead, the Complaint recites the bare Statutory language vaguely relating to the improperly commingled "<u>Defendants</u>." *See* Complaint, ¶ 8 (emphasis added). The Complaint fails to specifically reference <u>Yale University</u> in any way that would support the exercise of personal jurisdiction over it.

Even if Plaintiffs could satisfy their pleading obligations merely by reciting the language of Florida's long-arm Statute without specifically referencing Yale University, the improperly commingled and vague assertion contained in Paragraph 8 of the Complaint fails give Yale University sufficient notice of the alleged basis for jurisdiction. The Complaint does not allege that Yale University acted "personally" or even "through an agent," as required by the Statute. In fact, the Complaint does not allege any conduct by Yale University in Florida. The paucity of factual

*Case No. 05-2023-CA-018273-XXXX-XX*
*John Doe No. 1, et al. v. Upsolve, Inc., et al.*
*Page 4 of 8*

allegations in the Complaint regarding Yale University fails to provide any notice of the basis for suit in Florida, nor does the Complaint provide any indication that Yale University could reasonably anticipate being haled into this Court. Additionally, the only reference to a connection by Yale University to any of the defendants—an internet quotation that Yale Law School allegedly "invested in Upsolve" several years ago—does not allege any facts to support the exercise of jurisdiction based on an agency relationship, much less create an issue of fact. *See Enic, PLC*, 870 So. 2d at 891.

Accordingly, the Complaint fails to bring Yale University within the ambit of the long-arm Statute. Due process and fundamental fairness require that the Complaint be dismissed for lack of personal jurisdiction over Yale University.

**B.  The Complaint Violates Florida Rules of Civil Procedure 1.100 and 1.110**

Florida Rule of Civil Procedure 1.100 requires that a case's caption include "the name of all of the parties." Additionally, Rule 1.110(f) requires that "[e]ach claim founded upon a separate transaction or occurrence…shall be stated in a separate count…when a separation facilitates the clear presentation of the matter set forth." It is impermissible to commingle separate and distinct claims against multiple defendants. *Collado v. Baroukh*, 226 So. 3d 924, 927–28 (Fla. 4th DCA 2017). Improperly commingling of claims warrants dismissal of a complaint. *Id.*

In violation of Rules 1.100 and 1.110(f), the instant Complaint fails to identify the Plaintiffs and has lumped together all six (6) Defendants into the improperly commingled Counts I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, and XIV. As a result, those counts fail as a matter of law and should be dismissed.

*Case No. 05-2023-CA-018273-XXXX-XX*
*John Doe No. 1, et al. v. Upsolve, Inc., et al.*
*Page 5 of 8*

### C. The Complaint Fails to State a Claim against Yale University

Additionally, Counts I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, and XIV are further deficient because they fail to actually reference Yale University, fail to allege how Yale University caused any injury or damages, and fail to state any claim for direct or even vicarious liability against Yale University.

Florida is a fact-pleading jurisdiction. *Horowitz v. Laske*, 855 So. 2d 169, 172 (Fla. 5th DCA 2003). As recognized by the Florida Supreme Court, "Florida Rule of Civil Procedure 1.110(b)(2) requires that '[a] pleading which sets forth a claim for relief ... must state a cause of action and shall contain ... a short and plain statement of the ultimate facts showing that the pleader is entitled to relief.'" *Goldschmidt v. Holman*, 571 So. 2d 422, 423 (Fla. 1990) (alterations in original). "[G]eneral, vague and conclusory statements are insufficient to satisfy" the pleading requirements of Rule 1.110(b). *Jordan v. Nienhuis*, 203 So. 3d 974, 976 (Fla. 5th DCA 2016). The failure to allege how a defendant caused the injuries and damages alleged warrants dismissal. *Collado*, 226 So. 3d at 928 (Fla. 4th DCA 2017). "Florida's pleading rule forces counsel to recognize the elements of their cause of action and determine whether they have or can develop the facts necessary to support it, which avoids a great deal of wasted expense to the litigants and unnecessary judicial effort." *Horowitz*, 855 So. 2d at 172–73.

The instant Plaintiffs have failed to state any facially sufficient claim against Yale University. In violation of Rule 1.110(b)(2), the Complaint's formulaic recitations of generic elements of the causes of action do not contain <u>any</u> ultimate facts pertaining to any act or omission by Yale University. For instance, the Complaint does not allege, nor could it, that Yale University entered into any contract with either John Doe No. 1 or John Doe No. 2, that Yale University owed any duty

*Case No. 05-2023-CA-018273-XXXX-XX*
*John Doe No. 1, et al. v. Upsolve, Inc., et al.*
*Page 6 of 8*

to John Doe No. 1 or John Doe No. 2, that Yale University made any misrepresentations of any kind, that John Doe No. 1 or John Doe No. 2 relied on any statements or representations from Yale University, that Yale University took any action or made any omission relating to John Doe No. 1 or John Doe No. 2, or that any of such nonexistent acts or omissions proximately caused any damages to the Plaintiffs. *See Baroukh*, 226 So. 3d at 928 (noting pleading deficiencies where a complaint failed to clearly allege how each defendant caused the injury and damages alleged).

Additionally, the Complaint fails to allege any facts, nor could it, that Yale University entered into a contract with any other Defendant to create a partnership or joint venture. *See Jackson-Shaw Co. v. Jacksonville Aviation Auth.*, 8 So. 3d 1076, 1089 (Fla. 2008) (recognizing that a joint venture relationship must arise out of a contract); § 620.8202, Fla. Stat. (setting forth the requirements for formation of a partnership).

Further, the Complaint fails to allege a relationship of any kind between Yale University and any other Defendant that would impose upon Yale University vicarious liability for the purported acts or omissions of the co-Defendants. Florida Rule of Civil Procedure 1.110(b)(2) requires not only that a separate cause of action for vicarious liability be pled, but also that ultimate facts be pled to establish actual or apparent agency or any other basis for vicarious liability. *Goldschmidt*, 571 So. 2d at 423 ("Because the complaint failed to set forth any ultimate facts that establish either actual or apparent agency or any other basis for vicarious liability, the Holmans did not allege any grounds entitling them to relief."); *see also Florida State Oriental Med. Ass'n, Inc. v. Slepin*, 971 So. 2d 141, 145 (Fla. 1st DCA 2007) ("Apparent authority arises under Florida law only when the principal creates the appearance of an agency relationship.").

MURPHY & WALKER, VERO BEACH, FLORIDA

*Case No. 05-2023-CA-018273-XXXX-XX*
*John Doe No. 1, et al. v. Upsolve, Inc., et al.*
*Page 7 of 8*

---

In this instance, the Complaint fails to allege any cause of action for vicarious liability relating to Yale University and fails to include any allegations of ultimate fact to reflect any vicarious liability on the part of Yale University for any other Defendant, nor could it.   Taking the concession included in footnote 2 as true, Yale Law School made one (1) investment in Upstart, Inc. nearly seven (7) years ago.   Moreover, there are no allegations in the Complaint pertaining to any actual or apparent agency relationship by and between Yale University and any other party, nor could there be.  *See Enic, PLC*, 870 So. 2d at 891; *Slepin*, 971 So. 2d at 145.

Accordingly, the facially deficient Complaint fails to state any actionable claim against Yale University, either for direct or for vicarious liability.   Indeed, the Complaint is entirely devoid of merit with respect to Yale University and amendment of the baseless Complaint would be futile as demonstrated on the face of the pleading.

## Conclusion

WHEREFORE, for the foregoing reasons, Defendant, YALE UNIVERSITY, respectfully requests that this Court dismiss the Complaint and to grant such other and additional relief as may be just and appropriate under the circumstances, to include but not limited to an award for the recovery of attorney's fees and costs incurred.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via the Florida Courts E-Filing Portal upon: **Christopher T. Beres, Esquire**, *counsel for the Plaintiffs,*

MURPHY & WALKER, VERO BEACH, FLORIDA

*Case No. 05-2023-CA-018273-XXXX-XX*
*John Doe No. 1, et al. v. Upsolve, Inc., et al.*
*Page 8 of 8*

1600 Sarno Road, Suite 1, Melbourne, Florida 32935, christopherberes8@gmail.com, this
_____ day of April, 2023.

MURPHY & WALKER, P.L.
*Attorneys for Defendant, Yale University*
2001 U.S. Highway 1
Vero Beach, Florida   32960
E-Mails: wmurphy@murphywalker.com
emills@murphywalker.com
pleadings-murphy@murphywalker.com
Telephone: (772)231-1900
Facsimile: (772)231-4387

By: _____

**Lewis W. Murphy, Jr.**
Florida Bar No. 0909467
**Elisa C. Mills**
Florida Bar No. 110763

MURPHY & WALKER, VERO BEACH, FLORIDA

| TIME RECEIVED | REMOTE CSID | DURATION | PAGES | STATUS |
|---|---|---|---|---|
| April 5, 2023 at 1:34:26 PM EDT | 14154847068 | 89 | 4 | Received |

04/05/2023 10:32 AM     14154847068     → 13212647702     pg 1 of 4

## IN THE CIRCUIT COURT, EIGHTEENTH JUDICIAL CIRCUIT, BREVARD COUNTY, FLORIDA

**DIVISION: CIVIL**          **CASE NUMBER: 05-2023-CA-018273-XXX-XX**

**PETITIONER/PLAINTIFF**          *CLOCK IN*
JOHN DOE NO. 1 and JOHN DOE NO. 2

**RESPONDENT/DEFENDANT**
UPSOLVE, INC., ROHAN PAVULURI,
PRESIDENT AND FELLOWS OF
HARVARD COLLEGE, YALE
UNIVERSITY, Y COMBINATOR
MANAGEMENT, LCC, and ERIC
EMERSON SCHMIDT

### MOTION FOR EXTENSION OF TIME TO FILE RESPONSE

Y Combinator Management, LLC ("Defendant") hereby moves the Court for an extension of time to file its response to Plaintiffs' Complaint in the above-captioned matter. Defendant is actively seeking counsel concerning this matter, but due to time limitations, has not had sufficient opportunity to adequately consult with an attorney, and for this reason requests the extension of time to respond.

Respectfully submitted.


_____        _3/28/23_____
Signature                             Date

Gabriella Kapp
Y Combinator Management, LLC
335 Pioneer Way
Mountain View, CA 94041
(408)348-5088
gaby@ycombinator.com

Case # 05-2023-CA-018273-XXXX-XX
Document Page # 15

*36353440*

Law 1342 / Rev. 12-15-2016                            1

**MOTION FOR EXTENSION OF TIME TO FILE RESPONSE**

**CASE NUMBER: 05-2023-CA-018273-XXX-XX**

### CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on the _28_ day of _March_, 20_23_, I ☐ hand-delivered ☐ mailed ☑ e-mailed ☐ couriered the foregoing to the following parties:

Christopher T. Beres, Esq.
(Florida Bar No. 588261)
christopherberes8@gmail.com
1600 Sarno Road Ste. 1
Melbourne, Florida 32935
Telephone: (321) 339-9301

_____
Signature

## RETURN OF SERVICE

| State of Florida | County of Brevard | 18th Judicial Circuit Court |
|---|---|---|

Case Number: 05-2023-CA-018273

Plaintiff:
**John Doe NO 1 and John Doe NO. 2**

vs.

Defendant:
**Upsolve, Inc.**
**Rohan Pavuluri,**
**President and Fellows of Harvard College,**
**Yale University,**
**Y Combinator Management, LCC,**
**and**
**Eric Emerson Schmidt**

For:
Christopher Beres, Esq.
1600 Sarno Road
Suite 1
Melbourne, FL 32935

Received by D & H Professional Process Services, Inc on the 16th day of April, 2023 at 11:37 am to be served on **President & Fellows of Harvard College C/O Mark S. Peters, Esq., 5450 Village Drive, Eisenmenger, Robinson And Peters, P.A., Viera, FL 32955.**

I, Ron Ballman #410, do hereby affirm that on the **17th day of April, 2023 at 3:20 pm, I:**

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **Civil Action Summons, Complaint / Petition For Injunctive Relief** with the date and hour of service endorsed thereon by me, to: **Mark S. Peters. Esq.** at the address of: **5450 Village Drive, Viera, FL 32955**, and informed said person of the contents therein, in compliance with state statutes.

**Military Status:** Based upon inquiry of party served, Defendant is not in the military service of the United States of America.

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served.

_Ron Ballman_
_____
**Ron Ballman #410**
Process Server

**D & H Professional Process Services, Inc**
P.O. Box 372265
Satellite, FL 32937
(321) 412-3816

Our Job Serial Number: DHP-2023000076
Ref: 018273

Copyright © 1992-2023 Database Services, Inc. - Process Server's Toolbox V8.2h

**IN THE**   CIRCUIT **COURT, EIGHTEENTH JUDICIAL CIRCUIT, BREVARD COUNTY, FLORIDA**

**DIVISION: CIVIL**

**CASE NUMBER**   05 - 2023  - CA - 018273 · XXXX-XX

**PLAINTIFF**

**CLOCK IN**

JOHN DOE NO. 1 ET AL.          Melbourne, FL 32935
                                CITY / STATE / ZIP

1600 Sarno Road Ste. 1         321-339-9301
ADDRESS                        TELEPHONE NUMBER

**DEFENDANT**

Y COMBINATOR MANAGEMENT

LLC

# MOTION FOR ENTRY OF DEFAULT BY CLERK

The Petitioner/Plaintiff, JOHN DOE NO. 1 ET AL.                          , moves the Clerk to enter a

Default against the Respondent/Defendant, Y COMBINATOR MANAGEMENT          LLC                          .

(Signature of person submitting paper)

Christopher T. Beres, Esq.
Name

1600 Sarno Road Ste. 1
Address

Melbourne, FL 32935
City/State/Zip

321-339-9301
Telephone Number

I HEREBY CERTIFY that a true and correct copy of the above paper has been furnished by ☑ U. S. Mail
☐ hand delivery   ☐ telefax   ☐ courier to _____
at Melbourne, Florida _____, this 10th   day of  April          , 2023 .

_____
Signature of Petitioner/Respondent

Law 580
Rev. 12-17-2012

**BAR CODE LABEL**

## IN THE  COUNTY COURT, EIGHTEENTH JUDICIAL CIRCUIT, BREVARD COUNTY, FLORIDA

**DIVISION:  CIVIL**

**CASE NUMBER**  05 - 2023  - CA  - 018273 - XXXX-XX

**PLAINTIFF**

**CLOCK IN**

JOHN DOE NO. 1 ET AL.          Melbourne, FL 32935
                               CITY / STATE / ZIP

1600 Sarno Road Ste. 1         321-339-9301
ADDRESS                        TELEPHONE NUMBER

**DEFENDANT**

Y COMBINATOR MANAGEMENT

LLC

## MOTION FOR ENTRY OF DEFAULT BY CLERK

The Petitioner/Plaintiff, _JOHN DOE NO. 1 ET AL._____, moves the Clerk to enter a

Default against the Respondent/Defendant, _Y COMBINATOR MANAGEMENT       LLC_____.

_____Chris T. Beres_____

(Signature of person submitting paper)

Christopher T. Beres, Esq.
Name

1600 Sarno Road Ste. 1
Address

Melbourne, FL 32935
City/State/Zip

321-339-9301
Telephone Number

I HEREBY CERTIFY that a true and correct copy of the above paper has been furnished by ☑ U. S. Mail

☐ hand delivery   ☐ telefax   ☐ courier to _____

at _Melbourne, Florida_____, this _10th_ day of _April_____, 20_23_.

_____Chris T. Beres_____

Signature of Petitioner/Respondent

Law 580
Rev. 12-17-2012

**BAR CODE LABEL**

# IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT, IN AND FOR BREVARD COUNTY, FLORIDA

CASE NO: 05-2023-CA-018273

**JOHN 1 DOE**
**JOHN 2 DOE,**
   **Plaintiff,**

**-vs-**

**UPSOLVE INC**
**ROHAN PAVULURI**
**PRESIDENT FELLOWS HARVARD COLLEGE**
**YALE UNIVERSITY**
**Y COMBINATOR MANAGEMENT LLC**
**ERIC EMERSON SCHMIDT,**
   **Defendant.**

_____

## CERTIFICATE OF CLERK REGARDING ENTRY OF DEFAULT

I, RACHEL SADOFF, Clerk of Courts, do hereby certify that a Motion for Default was filed on Monday, April 10, 2023, docket no. 17,18. The Default was not entered as to the following party(ies) for the following reason(s):

[X] Answer or other response filed on Wednesday, April 05, 2023 as to Y COMBINATOR MANAGEMENT LLC.

[ ] Need Proof of Service.

[ ] Need Affidavit regarding military service.

[ ] Military Service Unknown - you must motion the Court for entry of a Default.

[ ] Default previously entered.

[ ] 5 Day Summons Posted - Certificate of Mailing required (§48.183; §82.05(2); §83.22, F.S.).

[ ] Other

DATED on Tuesday, April 25, 2023, in Brevard County, Florida.



Sheryl Payne, Clerk
05-2023-CA-018273 04/25/2023 08:42:44 AM

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Certificate of Clerk Regarding Entry of Default was furnished to:

BERES, CHRISTOPHER
christopherberes8@gmail.com
tino@tinolegal.com
christopherberes8@gmail.com

this Tuesday, April 25, 2023.



Sheryl Payne, Clerk
05-2023-CA-018273 04/25/2023 08:42:44 AM

IN THE    CIRCUIT COURT, EIGHTEENTH JUDICIAL CIRCUIT, BREVARD COUNTY, FLORIDA

DIVISION: CIVIL

CASE NUMBER    05 - 2023  - CA - 018273 · XXXX-XX

PLAINTIFF

CLOCK IN

JOHN DOE NO. 1 ET AL.            Melbourne, FL 32935
                                 CITY / STATE / ZIP

1600 Sarno Road Ste. 1          321-339-9301
ADDRESS                          TELEPHONE NUMBER

DEFENDANT

Y COMBINATOR MANAGEMENT

LLC

## MOTION FOR ENTRY OF DEFAULT BY CLERK

The Petitioner/Plaintiff, _JOHN DOE NO. 1 ET AL._____, moves the Clerk to enter a

Default against the Respondent/Defendant, _Y COMBINATOR MANAGEMENT      LLC_____.

_____
(Signature of person submitting paper)

Christopher T. Beres, Esq.
Name

1600 Sarno Road Ste. 1
Address

Melbourne, FL 32935
City/State/Zip

321-339-9301
Telephone Number

I HEREBY CERTIFY that a true and correct copy of the above paper has been furnished by ☑U. S. Mail

☐hand delivery   ☐ telefax   ☐ courier to _____

at Melbourne, Florida _____, this 10th___ day of April_____, 2023__.

_____
Signature of Petitioner/Respondent

Law 580
Rev. 12-17-2012

BAR CODE LABEL

IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL DISTRICT, IN
AND FOR BREVARD COUNTY,
FLORIDA

JOHN DOE NO. 1 and JOHN DOE NO. 2,

                Plaintiffs,

v.

UPSOLVE, INC.,
ROHAN PAVULURI,
PRESIDENT AND FELLOW OF HARVARD
COLLEGE,
YALE UNIVERSITY,
Y COMBINATOR MANAGEMENT, LLC,
and
ERIC EMERSON SCHMIDT,

                Defendants.

_____/

## OPPOSITION TO Y COMBINATOR, LLC'S MOTION FOR AN EXTENSION OF TIME

COMES NOW plaintiffs John Doe No. 1 and John Doe No. 2, by their counsel

Christopher T. Beres, Esq., and oppose Y Combinator Management, LLC's ("Y Combinator")

motion for an extension of time.  For the reasons set forth below, the motion should be denied.

    1.      Y Combinator was served on March 10, 2023.  Its answer was due by March 30,

2023.

    2.      Since no answer was filed, Y Combinator is in default.

    3.      On April 5, 2023, "Gabby Kapp", who is unidentified, faxed a motion for an

extension of time in this case that was backdated to March 28, 2023 (so that it would appear to

be before the March 30, 2023 deadline).  Thus, it was filed with the court *five days after the*

*deadline* for doing so.

1

4.      On April 10, 2023, plaintiffs filed a motion for entry of default by clerk against Y Combinator.

5.      Apart from having been filed after the deadline and being backdated, Y Combinator gives no reason for its request for an extension of time.  Y Combinator merely vaguely refers to it being due to "time limitations".  Anyone can say this.

6.      Finally, Y Combinator does not propose an extension date.  The request is completely open-ended.

7.      This open-ended after-the-fact request is an abuse and should be denied.

For the foregoing reasons, Y Combinator's motion for an extension of time should respectfully be denied.


Date:   April 17, 2023
        Melbourne, Florida

                                        _____
                                        Christopher T. Beres, Esq.
                                        *Attorney for Plaintiffs*
                                        1600 Sarno Road Ste. 1
                                        Melbourne, FL 32935
                                        (321) 339-9301
                                        christopherberes8@gmail.com

2

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of this response in opposition to Y Combinator

Management, LLC's motion for an extension of time has been furnished by mail and by email to

the person listed below on April 17, 2023.

Gabriella Kapp
Y Combinator Management, LLC
335 Pioneer Way
Mountain View, CA 94041

gaby@ycombinator.com

_____
Christopher T. Beres, Esq.

3

IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL DISTRICT, IN
AND FOR BREVARD COUNTY,
FLORIDA

JOHN DOE NO. 1 and JOHN DOE NO. 2,

                Plaintiffs,

v.

UPSOLVE, INC.,
ROHAN PAVULURI,
PRESIDENT AND FELLOW OF HARVARD
COLLEGE,
YALE UNIVERSITY,
Y COMBINATOR MANAGEMENT, LLC,
and
ERIC EMERSON SCHMIDT,

                Defendants.

_____/

## OPPOSITION TO Y COMBINATOR, LLC'S MOTION FOR AN EXTENSION OF TIME

COMES NOW plaintiffs John Doe No. 1 and John Doe No. 2, by their counsel

Christopher T. Beres, Esq., and oppose Y Combinator, LLC's("Y Combinator") motion for an

extention of time.  For the reasons set forth below, the motion should be denied.

      1.      Y Combinator was served on March 10, 2023.  Its answer was due by March 30,

2023.

      2.      Since no answer was filed, Y Combinator is in default.

      3.      On April 5, 2023, "Gabby Kapp", who is unidentified, faxed a motion for an

extension of time in this case that was backdated to March 28, 2023 (so that it would appear to

be before the March 30, 2023 deadline).  Thus, it was filed with the court *five days after the*

*deadline* for doing so.

1

4.     On April 10, 2023, plaintiffs filed a motion for entry of default by clerk against Y Combinator.

5.     Apart from having been filed after the deadline and being backdated, Y Combinator gives no reason for its request for an extension of time.  Y Combinator merely vaguely refers to it being due to "time limitations".  Anyone can say this.

6.     Finally, Y Combinator does not propose an extension date.  The request is completely open-ended.

7.     This open-ended after-the-fact request is an abuse and should be denied.

For the foregoing reasons, Y Combinator's motion for an extension of time should respectfully be denied.

Date:   April 17, 2023
        Melbourne, Florida

_____
Christopher T. Beres, Esq.
*Attorney for Plaintiffs*
1600 Sarno Road Ste. 1
Melbourne, FL 32935
(321) 339-9301
christopherberes8@gmail.com

2

IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL DISTRICT, IN
AND FOR BREVARD COUNTY,
FLORIDA

JOHN DOE NO. 1 and JOHN DOE NO. 2,

                              Plaintiffs,          CASE NO. 05-2023-CA-018273-XXXX-
                                                   XX
v.
                                                   DIVISION:  CIVIL
UPSOLVE, INC.,
ROHAN PAVULURI,                                    The Honorable Michelle Naberhaus
PRESIDENT AND FELLOW OF HARVARD
COLLEGE,
YALE UNIVERSITY,
Y COMBINATOR MANAGEMENT, LLC,
and
ERIC EMERSON SCHMIDT,

                              Defendants.
_____/

## OPPOSITION TO YALE'S MOTION TO DISMISS

Plaintiffs John Doe No. 1 and John Doe No. 2, by their attorney Christopher T. Beres,

Esq., oppose defendant Yale University's ("Yale") motion to dismiss (Docket No. 14) and state

as follows:

Yale's motion to dismiss basically makes two arguments; 1) that the complaint failed to

state a claim against Yale and 2) there is no personal jurisdiction over Yale.

          *I.      Yale fails to meet the high standard for pre-answer dismissal*

1.       The only question for the trial court in reviewing a motion to dismiss is whether

the plaintiff would be entitled to the relief requested, assuming all the allegations in the

complaint to be true.  *Malden v. Chase Home Fin., LLC* , 312 So. 3d 553, 555 (Fla. 1st DCA

2021) (citing *Newberry Square Florida Laundromat, LLC v. Jim's Coin Laundry & Dry*

*Cleaners, Inc.*, 296 So. 3d 584, 589 (Fla. 1st DCA 2020)).   It is not for the court to speculate

1

whether the allegations are true or whether the pleader has the ability to prove them. *Universal Underwriters Ins. Co. v. Body Parts of Am.*, Inc., 228 So. 3d 175, 176 (Fla. 1st DCA 2017) (citations omitted).  In ruling on a motion to dismiss, "'the trial court must confine its review to the four corners of the complaint, draw all inferences in favor of the pleader, and accept as true all well-pleaded allegations.'"  *Newberry Square Florida Laundromat, LLC* , 296 So. 3d at 589. A complaint should not be dismissed for failure to state a cause of action" 'unless the movant can establish beyond any doubt that the claimant could prove no set of facts whatever in support of his claim.'"  *Johnson v. Gulf County*, 965 So. 2d 298, 299 (Fla. 1st DCA 2007) (citations omitted).

2.      It is well established that dismissal of a complaint with prejudice is a very severe sanction, to be invoked only when the pleader has failed to state a cause of action, and it is conclusively shown the complaint cannot be amended in such a way as to state a claim. *Meyers v. City of Jacksonville*, 754 So. 2d 198, 202 (Fla. 1st DCA2000).

3.      Despite these time-tested standards, Yale's motion argues with plaintiffs' facts and tries to mischaracterize the complaint.

4.      Also, in its motion to dismiss, Yale lacks any meaningful rebuttal - particularly at this pre-answer stage, when plaintiffs' allegations must be accepted as true and afforded every possible favorable inference. *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 734-35 (Fla. 2002) (*quoting Hollywood Lakes Section Civic Ass'n, Inc. v. City of Hollywood*, 676 So. 2d 500, 501 (Fla. 4th DCA 1996)).

## II.      *Yale was properly included as a defendant in this action*

5.      Yale's motion to dismiss incorrectly asserts that there is no cause of action against Yale.

6.      The motion admits that Yale was mentioned by name several times in the complaint and is also one of the "defendants" and therefore the claims against "defendants" include it.  It was not necessary for plaintiffs to list the names of all of defendants for every allegation and it would not have been standard practice to do so.

7.      Moreover, Yale is accused of being both a partner of Upsolve, Inc. ("Upsolve") and part of a conspiracy in the State of Florida.

8.      Upsolve is a Yale company.  Yale knew about and contractually agreed that Upsolve could use Yale's logo to market its products and services in Florida.  Yale also recruited Yale students and graduates to intern for and work at Upsolve.  This is apart from their financial tie-ins.

*III.      There is personal jurisdiction over Yale under Florida law*

9.      Yale's counsel's statement that the complaint "fails to pass muster" to exercise personal jurisdiction is his own incorrect opinion and not supported by any credible evidence.

10.     Yale is subject to personal jurisdiction in Florida under the long-arm statute due to committing tortious acts in the State.  § 48.193(1)(b).

11.     Yale has sufficient notice in this regard.  It is a partner, investor, principal, and endorser of Upsolve.   Yale's name is all over Upsolve's marketing which is used to attract and create trust with clients, including that of plaintiffs who relied on Yale in agreeing to use Upsolve.

12.     The complaint clearly alleged that the only reason plaintiffs believed in and trusted Upsolve's products and services was because of its high profile and widely advertised association with Yale as one of its key partners.  (Compl. p. 5)

3

13.     Under the FDUTPA, the complaint accused defendants including Yale of unfair and deceptive conduct in this State.  (M.D. p. 20-21)

*IV.     There is personal jurisdiction over Yale as a co-conspirator in a Florida conspiracy*

14.     Moreover, the complaint plausibly alleges that Yale is and was a co-conspirator in a civil conspiracy in Florida.  (Compl. p. 21)

15.     Florida follows the conspiracy theory of jurisdiction.  Under this doctrine, defendants who are alleged to be part of an unlawful conspiracy are subject to jurisdiction in a state they have never set foot in based on acts committed in the state by co-conspirators.

*V.     Yale is plausibly alleged to be a defendant against all claims in the complaint*

16.     Yale incorrectly states that it had to be individually named in each of the claims. This is just its incorrect opinion.  There is no such requirement anywhere and no one does this in practice.  Yale is part of the "defendants".  Nowhere do plaintiffs exempt Yale from any of the claims alleged in the complaint.

17.     Yale wrongly claims that "the Complaint fails to allege a relationship of any kind between Yale and any other Defendant." (M.D. p. 6)  But footnote 2 of the complaint quotes www.crunchbase.com that "Yale Law School has invested in Upsolve on May 16, 2016."  It also stated:  "Its website and marketing materials have the logos of Harvard, Yale, and other of its partners which caused plaintiffs to trust Upsolve." (M.D. p. 5)

18.     If Yale did not want to be sued in Florida, it should not have put its name and logos behind Upsolve.  Yale is the third oldest college in the country and almost 400 years old. It is ranked #3 in the U.S. News & World Report rankings of National Universities.[1]  No one has ever heard of Upsolve or would trust it for something as important as bankruptcy but-for the fact

---

[1] https://www.usnews.com/best-colleges/yale-university-1426

4

that Yale is listed as one of its partners and investors.  Yale put its name and logo on Upsolve's products and services as its partner as if Upsolve was a Yale group company or affiliate.

19.     Yale argues that "the Complaint fails to allege any facts, nor could it, that Yale University entered into a contract with any other Defendant to create a partnership or joint venture." (M.D. p. 6)  But that *is* what plaintiffs are alleging, among other things.  Yale itself admits when it states "nor could it" that plaintiffs would have no way of knowing the details of Yale's contracts with Upsolve and the other defendants since those are private and confidential documents. That is the point of discovery.  Yale implicitly acknowledges that there is no way that plaintiffs could provide details about any contracts at this stage in the case.  The fact that such contracts have to exist however is beyond doubt.  Yale's suggestions otherwise are not credible.

20.     Since Upsolve uses the logo of "Yale" and "Yale Law School", they have a trademark licensing agreement.  Plaintiffs will call for the production of all such agreements.

21.     As an investor and partner of Upsolve, it goes without saying that there are legal contracts between Yale and Upsolve.  Yale has $44.7 billion in assets.[2]  It cannot just write checks to people with no paperwork.  This is between private parties so of course plaintiffs do not have access to it.

22.     Discovery will amplify the contractual and other relationships between the six defendants.  This case should not be dismissed without plaintiffs' having the opportunity to conduct discovery as to Yale and Upsolve.

     *VI.     Yale does not accept plaintiffs' facts as true and argues about the facts*

---

[2] https://your.yale.edu/sites/default/files/2021-2022-yale-university-annual-financial-report.pdf

23.     Yale's basic argument is that its only involvement with Upsolve was that it invested in it several years ago.  (M.D. p. 8)  But plaintiffs' complaint alleged that it was a partner and endorser of Upsolve and that Upsolve was an agent for Yale.  They have very extensive ties and business dealings.  Yale is explicitly not accepting the facts in the complaint as true.

24.     Plaintiffs further dispute Yale's argument that there was no agency relationship or apparent authority.  Yale's brand is extremely valuable and it is selective as to which of its companies can use its name and logo and list it as a partner as Upsolve does.  This is so as to avoid damage to the brand and the line extension problem.  Yale's website has a licensing agreement for the use of its name.

25.     Yale purports to assert what the complaint was required to allege against it.  That is simply its own incorrect opinion.  Plaintiffs' claims were very fact specific and not "formulaic recitations" as Yale argues.  (M.D. p. 5)

26.     The complaint's allegations are unique and well pled and do not contain boilerplate as falsely implied by Yale.  Actually, it is Yale's pedantic motion to dismiss that contains formulaic arguments without applying them to the complaint. It is just a laundry list of "plaintiff failed to do this or that" without reference to the actual complaint.

VII.     *The complaint does not have to prove its case on the merits*

27.     Yale's motion conclusorily states that "the Complaint is entirely devoid of merit with respect to Yale University and the amendment of the Complaint would be futile as demonstrated on the face of the pleading." (M.D. p. 7)  This is simply its lawyer's opinion.  He does not show why it has no merit.

6

28.     At this stage, plaintiffs do not have to prove the "merits" of their complaint, only to make plausible allegations.  This is not the trial where plaintiffs have to prove their case on the merits.  Yale is using the wrong standard for a motion to dismiss.

*VIII.   Plaintiffs did not "commingle" claims against Yale with those not against it*

29.     Yale claims that: "It is impermissible to commingle separate and distinct claims against multiple defendants." (M.D. p. 4)  Even were that true, they fail to show one example of where the complaint did this.  It is just a "glittering generality".  The claims are asserted against all of the defendants and did not exempt Yale.

*IX.     With respect to John Doe No. 2 this is a post-petition claim*

30.     This is a post-petition claim.  John Doe No. 2 has unquestionable standing to bring it.

*X.     The interests of justice favor denying the motion to dismiss*

31.     Dismissal of a key founder, partner, agent, and co-conspirator of Upsolve such as Yale will hurt plaintiffs ability to prove their conspiracy and other claims before they have had the chance to conduct any discovery into the critically important Yale-Upsolve relationship.  Respectfully, plaintiffs should have the opportunity to continue this action.

*XI.     Conclusion*

All of the arguments asserted in defendants' motion to dismiss fail as a matter of law. Therefore, the motion should be denied, and the case should proceed to discovery.

Dated:       April 20, 2023                    /s/Christopher Beres
             Melbourne, Florida               Christopher Beres, Esq.
                                              Florida Bar No. 588261
                                              *Attorney for plaintiffs*
                                              1600 Sarno Road Ste. 1
                                              Melbourne, Florida 32935
                                              (321) 339-9301
                                              christopherberes8@gmail.com

7

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was provided via

email through the e-filing system and to wmurphy@murphywalker.com and

emills@murphwalker.com and via U.S. mail to Lewis W. Murphy, Jr., Esq. and Elisa C. Mills,

Esq. at Murphy & Walker, P.L., 2001 U.S. Highway 1, Vero Beach, FL 32960.

| | | |
|---|---|---|
| Dated: | April 20, 2023 | /s/Christopher Beres |
| | Melbourne, Florida | Christopher Beres, Esq. |
| | | Florida Bar No. 588261 |
| | | *Attorney for plaintiffs* |
| | | 1600 Sarno Road Ste. 1 |
| | | Melbourne, Florida 32935 |
| | | (321) 339-9301 |
| | | christopherberes8@gmail.com |

8

**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR BREVARD COUNTY, FLORIDA**

JOHN DOE NO. 1 and JOHN DOE NO. 2

     Plaintiff,

vs.                                     CASE NO. 05-2023-CA-018273

UPSOLVE, INC., ROHAN PAVULURI,
PRESIDENT AND FELLOWS OF
HARVARD COLLEGE,
YALE UNIVERSITY,
Y COMBINATOR MANAGEMENT, LLC
and  ERIC EMERSON SCHMIDT

     Defendants.

_____

## DEFENDANT Y COMBINATOR MANAGEMENT, LLC'S MOTION TO DISMISS COMPLAINT/PETITION FOR INJUNCTIVE RELIEF

     COMES NOW the Defendant, Y COMBINATOR MANAGEMENT, LLC ("Y Combinator"), by and through undersigned counsel, and moves this Court to dismiss this action for failure to state a claim upon which relief may be granted, and shows the Court the following:

1.   On or about March 5, 2023, Plaintiffs filed their fourteen count Complaint/Petition for Injunctive Relief (hereinafter the "Complaint") wherein they named as Defendants Y Combinator and four other Parties.

2.   Plaintiffs name Y Combinator as a party in the caption, and on page 4 of the Complaint, Plaintiffs state Y Combinator is a foreign company registered with the State of Florida, and insert a footnote that cites to an article that suggests Y Combinator funded another Defendant, Upsolve, Inc.

3.   Plaintiffs make no other allegations against Y Combinator, and further fail to allege how or if their allegations on page 4 of the Complaint caused damage to the Plaintiffs.

4. For each of their fourteen claims, Plaintiffs fail to allege factual allegations that support Y Combinator's involvement in same.

5. As such, Plaintiffs have failed to state a claim against Y Combinator for which relief may be granted.

<u>LEGAL ARGUMENT</u>

In Florida, a pleading that sets forth a claim for relief must state a cause of action, and include a "short and plain statement of the ultimate facts" showing the pleader is entitled to a form of relief. Fla. R. Civ. P. 1.110(b). "General, vague and conclusory statements" are not sufficient to meet the pleading requirements in Florida. *Jordan v. Nienhuis*, 203 So.3d 974, 976 (Fla. 5th DCA 2016). Dismissal of an action is appropriate where a complaint fails to allege how a defendant caused the pleader's damages. *Collado v. Baroukh*, 226 S0.3d 924, 928 (Fla. 4th DCA 2017). In the present case, as to Y Combinator, Plaintiffs allege, in a footnote no doubt, only that Y Combinator funded Defendant Upsolve. Plaintiffs fail to allege how or if such conduct caused their claimed damages, or how such allegation relates at all to the claims brought. For example, Count III is a claim for "legal malpractice." Plaintiffs fail to make any factual allegations how Y Combinator engaged in legal malpractice by funding Defendant Upsolve. The same can be said of the remaining thirteen counts. As such, Plaintiffs have failed to plead a claim against Y Combinator for which relief may be granted to Plaintiffs, and the Complaint/Petition for Injunctive Relief must be dismissed.

WHEREFORE, Defendant Y Combinator respectfully requests that this Court dismiss the Plaintiffs' Complaint/Petition for Injunctive Relief, and that this Court grant any further relief deemed just and equitable.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on April 24, 2023 this document was electronically transmitted to the Clerk of Court via the Florida Courts E-Filing Portal ("FCEP") for filing and transmittal of electronic mailing to the FCEP registrant(s):

> */s/ Jack C. Morgan III*
> Jack C. Morgan III, Esq.
> Florida Bar No. 0126527
> **ALOIA ROLAND LUBELL & MORGAN PLLC**
> 2222 Second Street
> Fort Myers, Florida 33901
> Telephone: (239) 791-7950
> Facsimile: (239) 791-7951
> JMorgan@lawdefined.com
> KTurner@lawdefined.com
> JCMService@lawdefined.com
> *Counsel for Defendant Y Combinator Management*

3

Filing # 171654573 E-Filed 04/24/2023 03:16:38 PM

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
## IN AND FOR BREVARD COUNTY, FLORIDA

JOHN DOE NO. 1 and JOHN DOE NO. 2

     Plaintiff,

vs.                                CASE NO. 05-2023-CA-018273

UPSOLVE, INC., ROHAN PAVULURI,
PRESIDENT AND FELLOWS OF
HARVARD COLLEGE,
YALE UNIVERSITY,
Y COMBINATOR MANAGEMENT, LLC
and ERIC EMERSON SCHMIDT

     Defendants.

---

## NOTICE OF APPEARANCE AS COUNSEL AND
## DESIGNATION OF E-MAIL ADDRESSES FOR DEFENDANT,
## Y COMBINATOR MANAGEMENT, LLC.

COMES NOW the undersigned attorneys and gives notice of their representation as counsel for Defendant, Y COMBINATOR MANAGEMENT, LLC ("Y Combinator"), and hereby requests that copies of all future pleadings and documents filed in this cause be served upon them. Pursuant to Florida Rule of Judicial Administration 2.516(b)(1)(A), the undersigned designates the following e-mail addresses upon which service in this proceeding must be directed:

        Primary E-Mail Address:     JMorgan@lawdefined.com
        Secondary E-Mail Address:   JCMService@lawdefined.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 24, 2023 this document was electronically transmitted to the Clerk of Court via the Florida Courts E-Filing Portal ("FCEP") for filing and transmittal of electronic mailing to the FCEP registrant(s):

/s/ Jack C. Morgan III
Jack C. Morgan III, Esq.
Florida Bar No. 0126527
**ALOIA ROLAND LUBELL & MORGAN PLLC**
2222 Second Street
Fort Myers, Florida 33901
Telephone: (239) 791-7950
Facsimile:  (239) 791-7951
JMorgan@lawdefined.com
KTurner@lawdefined.com
JCMService@lawdefined.com
*Counsel for Defendant Y Combinator Management*

2

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
## IN AND FOR BREVARD COUNTY, FLORIDA
## CIVIL ACTION

JOHN DOE NO. 1 and
JOHN DOE NO. 2,

    Plaintiffs,

v.                                      CASE NO. 05-2023-CA-018273
                                           JUDGE MICHELLE L. NABERHAUS

UPSOLVE, INC., ROHAN
PAVULURI, PRESIDENT
AND FELLOWS OF HARVARD
COLLEGE, YALE UNIVERSITY,
Y COMBINATOR MANAGEMENT,
LLC and ERIC EMERSON SCHMIDT,

    Defendants.

_____

### NOTICE OF REMOTE HEARING
*(JACS Conf. #621631)*

**YOU ARE HEREBY NOTIFIED** that the following hearing has been set in the above-styled action:

| | |
|---|---|
| SUBJECT: | Defendant Y Combinator's Motion to Dismiss *(filed 4/24/23)* |
| | Defendant Yale University's Motion to Dismiss *(filed 4/3/23)* |
| JUDGE: | Hon. Michelle L. Naberhaus |
| DATE/TIME: | Friday, July 7, 2023 at 10:30 am *(1 Hour Reserved)* |
| LOCATION: | Via Microsoft TEAMS: https://fl18.org/mn |
| | Meeting ID: 255 735 458 299  -  Passcode: eZkbp4 |
| | Audio Only: (386) 310-1754  -  Conference ID: 224 304 402# |



If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. If you require assistance please contact the ADA Coordinator at Brevard Court Administration, 2825 Judge Fran Jamieson Way, 3rd Floor, Viera, FL 32940.  Telephone: (321) 633-2171, Ext. 3. **NOTE**: You must contact coordinator at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired in Brevard County, call 711.

*Page 2 of 2*                                                    *John Doe v. Upsolve, et al.*
                                                                      *23-CA-18273*

## <u>CERTIFICATE OF SERVICE</u>

      **I HEREBY CERTIFY** that on May 9, 2023 this document was electronically transmitted to the Clerk of Court via the Florida Courts e-Filing Portal ("FCEP") for filing and transmittal of electronic mailing to the following FCEP registrant(s):

Christopher T. Beres, Esq.
Florida Bar No. 588261
1600 Sarno Road, Suite 1
Melbourne, FL 32935
Telephone: (321) 751-9675
Christopherberes8@gmail.com
*Counsel for Plaintiffs*

Lewis W. Murphy, Jr., Esq.
Florida Bar No. 909467
Elisa C. Mills, Esq.
Florida Bar No. 110763
**MURPHY & WALKER, P.L.**
2001 US Highway 1
Vero Beach, FL 32960
Telephone: (772) 231-1900
wmurphy@murphywalker.com
emills@murphywalker.com
pleadings-murphy@murphywalker.com
*Counsel for Defendant Yale University*

Mark S. Peters, Esq.
Florida Bar No. 321631
**EISENMENGER, ROBINSON,
BLAUE & PETERS, P.A.**
5450 Village Drive
Viera, FL 32955
Telephone: (321) 504-0321
markpeters@cbplaw.com
*Counsel for Defendant Harvard University*

/s/   *Jack C. Morgan*
Jack C. Morgan III, Esq.
Florida Bar No. 0126527
**ALOIA ROLAND LUBELL
& MORGAN PLLC**
2222 Second Street
Fort Myers, FL 33901
Telephone: (239) 791-7950
JMorgan@lawdefined.com
KTurner@lawdefined.com
JCMService@lawdefined.com
*Counsel for Defendant Y Combinator*

*cc: Ft. Myers Court Reporting*

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT,
IN AND FOR BREVARD COUNTY, FLORIDA

CASE NO.  05-2023-CA-018273-XXXX-XX

JOHN DOE NO. 1 and JOHN DOE NO. 2,

        Plaintiffs,

vs.

UPSOLVE, INC., ROHAN PAVULURI,
PRESIDENT AND FELLOWS OF
HARVARD COLLEGE, YALE UNIVERSITY,
Y COMBINATOR MANAGEMENT, LLC
and ERIC EMERSON SCHMIDT,

        Defendants.

_____/

## CROSS NOTICE OF HEARING
## VIA MICROSOFT "TEAMS"
## JACS Confirmation Numbers 621631 and 621817
### (Time Reserved:  1 Hour and 15 Minutes)

**PLEASE TAKE NOTICE** that the undersigned will call up for hearing on the **7th** day of **July, 2023** at **10:30 a.m.**, or as soon thereafter as the same may be heard, Defendant, President and Fellows of Harvard College Motion to Dismiss, filed on May 5, 2023, before the Honorable Michelle Naberhaus via Microsoft "Teams".  Judge Naberhaus' Judicial Assistant will provide "Teams" link.

**PLEASE GOVERN YOURSELF ACCORDINGLY.**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was sent via the Florida Courts E-Filing Portal and electronically served to: Christopher T. Beres, Esquire (christopherberes8@gmail.com) and Lewis W. Murphy, Esquire (wmurphy@murphywalker.com emills@murphywalker.com; pleadings-murphy@murphywalker.com) Jack W. Morgan, Esquire (jmorgan@lawdefmed.com; kturner@lawdefmed.com; jcmservice@lawdefined.com), on this 11th day of May, 2023.

**EISENMENGER, ROBINSON & PETERS, P.A.**

*/s/ Mark S. Peters*
**MARK S. PETERS, ESQUIRE**
**Florida Bar No. 321631**
5450 Village Drive
Viera, FL  32955
Telephone:  (321) 504-0321
Email:  markpeters@ebplaw.com
Attorney for Defendant, Harvard

cc: Honorable Michelle Naberhaus

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT,
IN AND FOR BREVARD COUNTY, FLORIDA

CASE NO.  05-2023-CA-018273-XXXX-XX

JOHN DOE NO. 1 and JOHN DOE NO. 2,

              Plaintiffs,

vs.

UPSOLVE, INC., ROHAN PAVULURI,
PRESIDENT AND FELLOWS OF
HARVARD COLLEGE, YALE UNIVERSITY,
Y COMBINATOR MANAGEMENT, LLC
and ERIC EMERSON SCHMIDT,

              Defendants.

_____/

## AMENDED CROSS NOTICE OF REMOTE HEARING
## VIA MICROSOFT "TEAMS" – JUDGE NABERHAUS' VIRTUAL COURTROOM
### JACS Confirmation Numbers 621631 and 621817
### (Time Reserved:  1 Hour and 15 Minutes)
### Amended to include "Teams" Link

      **PLEASE TAKE NOTICE** that the undersigned will call up for hearing on the **7th** day of **July, 2023** at **10:30 a.m.**, or as soon thereafter as the same may be heard, Defendant, President and Fellows of Harvard College Motion to Dismiss, filed on May 5, 2023, before the Honorable Michelle Naberhaus via Microsoft "Teams" – Judge Naberhaus' Virtual Courtroom .

      Microsoft Teams Information:      https://fl18.org/mn

      Meeting ID:  255 735 458 299 – Passcode:  eZkbp4

      Audio Only: 386-310-1754 – Conference ID:  224 304 402#

           **PLEASE GOVERN YOURSELF ACCORDINGLY.**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was sent via the

Florida Courts E-Filing Portal and electronically served to: Christopher T. Beres, Esquire

(christopherberes8@gmail.com) and Lewis W. Murphy, Esquire (wmurphy@murphywalker.com

emills@murphywalker.com; pleadings-murphy@murphywalker.com) Jack W. Morgan, Esquire

(jmorgan@lawdefmed.com; kturner@lawdefmed.com; jcmservice@lawdefined.com), on this

11th day of May, 2023.


                                         **EISENMENGER, ROBINSON & PETERS, P.A.**



                                         */s/ Mark S. Peters*_____
                                         **MARK S. PETERS, ESQUIRE**
                                         **Florida Bar No. 321631**
                                         5450 Village Drive
                                         Viera, FL  32955
                                         Telephone:  (321) 504-0321
                                         Email:  markpeters@ebplaw.com
                                         Attorney for Defendant, Harvard

cc: Honorable Michelle Naberhaus
    Ryan Reporting

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR BREVARD COUNTY, FLORIDA

CASE NO.: 05-2023-CA-018273-XXXX-XX

JOHN DOE NO. 1 and JOHN DOE NO. 2,

       Plaintiffs,

vs.

UPSOLVE, INC., ROHAN PAVULURI,
PRESIDENT AND FELLOWS OF
HARVARD COLLEGE, YALE UNIVERSITY,
Y COMBINATOR MANAGEMENT, LLC,
and ERIC EMERSON SCHMIDT,

       Defendants.

_____/

<u>NOTICE OF APPEARANCE AND DESIGNATION OF EMAIL ADDRESS</u>

    MARK S. PETERS, ESQUIRE, hereby files this Notice of Appearance and Designation of Email Address for the purpose of representing the Defendant, HARVARD, as its attorney in the above-referenced matter.

    Undersigned counsel hereby designates the following as his primary email address for service of pleadings in the above-captioned matter, pursuant to Florida Rule of Judicial Administration 2.516(b)(1)(A): markpeters@ebplaw.com.

<u>CERTIFICATE OF SERVICE</u>

    I HEREBY CERTIFY that a true and correct copy of the foregoing was provided via the Florida Courts E-Filing Portal to Christopher T. Beres, Esquire, at christopherberes8@gmail.com, and Lewis W. Murphey, Jr., at wmurphy@murphywalker.com, emils@murphywalker.com, and pleadings-murphy@murphywalker.com, this _2nd_ day of May, 2023.

                        EISENMENGER, ROBINSON & PETERS, P.A.

                        MARK S. PETERS, ESQUIRE
                        Florida Bar No. 0321631
                        5450 Village Drive
                        Viera, FL  32955-6569
                        Telephone: (321) 504-0321
                        Facsimile: (321) 504-0320
                        Email:  markpeters@ebplaw.com
                        Attorney for Defendant Harvard

IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL DISTRICT, IN
AND FOR BREVARD COUNTY,
FLORIDA

JOHN DOE NO. 1 and JOHN DOE NO. 2,

                Plaintiffs,

v.

UPSOLVE, INC.,
ROHAN PAVULURI,
PRESIDENT AND FELLOW OF HARVARD
COLLEGE,
YALE UNIVERSITY,
Y COMBINATOR MANAGEMENT, LLC,
and
ERIC EMERSON SCHMIDT,

                Defendants.
_____/

***Motion to strike defendant Y Combinator Management, LLC's motion to dismiss***

    Plaintiffs John Doe No. 1 and John Doe No. 2, by and through their attorney Christopher T. Beres, Esq., move to strike Y Combinator Management, LLC's motion to dismiss and state as follows:

    1.    On February 5, 2023, plaintiffs filed this case.

    2.    On March 10, 2023, plaintiffs personally served Y Combinator Management, LLC ("YC").

    3.    March 31, 2023 was YC's deadline to answer the complaint in this case.

    4.    On April 5, 2023 – five days after the deadline, YC filed a motion to extend the time.  They gave no deadline for the extension just completely open-ended.

1

5.     In a fraud on the court, YC deliberately backdated the signature on the letter to be March 28, 2023 so that it would appear that YC filed the motion to extend the time before the deadline for answering.  See ECF No. 15 attached hereto.

6.     The fax line at the top clearly shows that YC faxed the motion to the clerk on April 5, 2023.

7.     The court never ordered an extension of time for YC to answer.

8.     On April 10, 2023, plaintiffs filed a notice of motion of entry of default by clerk against YC.

9.     Weeks later on April 24, YC purported to file a motion to dismiss.  (ECF No. 24)

10.     Plaintiffs move to strike YC's motion to dismiss as filed out of time because:

1)     The motion needed to be filed by March 31, 2023.  Instead, it was filed 25 days later on April 24, 2023.

2)     YC did not file a motion to extend the time on time either.

3)     YC dishonestly tried to backdate the motion for an extension of time.

4)     YC did not have permission from the court to file a motion to dismiss out of time.

11)     YC should be required to follow the rules like every other litigant.

12)     Unless the court orders otherwise, plaintiffs do not intend to respond to YC's motion to dismiss which was filed out of time by 25 days – more than three weeks late.

2

*Conclusion*

WHEREFORE, plaintiffs respectfully request that the court grant plaintiffs' motion to strike YC's motion to dismiss.

Date:   May 3, 2023
        Melbourne, Florida            /s/Christopher T. Beres
                                      Christopher T. Beres, Esq.
                                      *Attorney for Plaintiffs*
                                      1600 Sarno Road Ste. 1
                                      Melbourne, FL 32935
                                      (321) 339-9301
                                      christopherberes8@gmail.com

3

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 3, 2023, a copy of this motion to strike ECF No. 24

was served via the court's e-filing portal on <u>jmorgan@lawdefined.com</u>,

<u>kturner@lawdefined.com</u>, <u>wmurphy@murphywalker.com</u>, <u>emills@murphywalker.com</u>, and

<u>markpeters@ebplaw.com</u>.


<u>/s/Christopher T. Beres</u>
Christopher T. Beres, Esq.

4

| TIME RECEIVED | REMOTE CSID | DURATION | PAGES | STATUS |
|---|---|---|---|---|
| April 5, 2023 at 1:34:26 PM EDT | 14154847068 | 89 | 4 | Received |

04/05/2023 10:32 AM          14154847068          → 13212647702          pg 1 of 4

IN THE CIRCUIT COURT, EIGHTEENTH JUDICIAL CIRCUIT,
BREVARD COUNTY, FLORIDA

**DIVISION: CIVIL**          **CASE NUMBER: 05-2023-CA-018273-XXX-XX**

**PETITIONER/PLAINTIFF**          *CLOCK IN*
JOHN DOE NO. 1 and JOHN DOE NO. 2

**RESPONDENT/DEFENDANT**
UPSOLVE, INC., ROHAN PAVULURI,
PRESIDENT AND FELLOWS OF
HARVARD COLLEGE, YALE
UNIVERSITY, Y COMBINATOR
MANAGEMENT, LCC, and ERIC
EMERSON SCHMIDT

## MOTION FOR EXTENSION OF TIME TO FILE RESPONSE

Y Combinator Management, LLC ("Defendant") hereby moves the Court for an extension of time to file its response to Plaintiffs' Complaint in the above-captioned matter. Defendant is actively seeking counsel concerning this matter, but due to time limitations, has not had sufficient opportunity to adequately consult with an attorney, and for this reason requests the extension of time to respond.

Respectfully submitted.

_____          3/28/23
Signature          Date

Gabriella Kapp
Y Combinator Management, LLC
335 Pioneer Way
Mountain View, CA 94041
(408)348-5088
gaby@ycombinator.com

Case # 05-2023-CA-018273-XXXX-XX
Document Page # 15

*36353440*

Law 1342 / Rev. 12-15-2016          1

**MOTION FOR EXTENSION OF TIME TO FILE RESPONSE**

**CASE NUMBER: 05-2023-CA-018273-XXX-XX**

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on the ___28___ day of ___March___, 20_23_, I ☐ hand-delivered ☐ mailed ☑ e-mailed ☐ couriered the foregoing to the following parties:

Christopher T. Beres, Esq.
(Florida Bar No. 588261)
christopherberes8@gmail.com
1600 Sarno Road Ste. 1
Melbourne, Florida 32935
Telephone: (321) 339-9301

_____
Signature

Filing # 172399489 E-Filed 05/03/2023 10:01:16 PM

IN THE  CIRCUI▾ COURT, EIGHTEENTH JUDICIAL CIRCUIT, BREVARD COUNTY, FLORIDA

**DIVISION:  CIVIL**

**CASE NUMBER**     05 - 2023  - CA  - 018273 · XXXX-XX

**PLAINTIFF**

**CLOCK IN**

JOHN DOE NO. 1 and 2

Melbourne, FL 32935

CITY / STATE / ZIP

1600 Sarno Road Ste. 1

321-339-9301

ADDRESS

TELEPHONE NUMBER

**DEFENDANT**

Y COMBINATOR MANAGEMENT,

LLC

## MOTION FOR ENTRY OF DEFAULT BY CLERK

The Petitioner/Plaintiff,  JOHN DOE NO. 1 and 2                           , moves the Clerk to enter a

Default against the Respondent/Defendant,  Y COMBINATOR MANAGEMENT,        LLC                                    .

*Chris T. Beres*

(Signature of person submitting paper)

Christopher T. Beres, Esq,

Name

1600 Sarno Road Ste. 1

Address

Melbourne, FL 32935

City/State/Zip

321-339-9301

Telephone Number

I HEREBY CERTIFY that a true and correct copy of the above paper has been furnished by ☑ U. S. Mail

☐ hand delivery    ☐ telefax    ☐ courier to Aloia, Roland, Lubell & Morgan, PLLC

at 2222 Second St, Fort Myers, FL 33901                           , this 3rd      day of  May           , 2023   .

*Chris T. Beres*

Signature of Petitioner/Respondent

Law 580
Rev. 12-17-2012

**BAR CODE LABEL**

IN THE CIRCUIT COURT OF THE _____ EIGHTEENTH _____ JUDICIAL CIRCUIT,
IN AND FOR _____ BREVARD _____ COUNTY, FLORIDA

Case No.: _____ 05-2023-CA-018273-XXXX-XX _____

Division: _____

_____ JOHN DOE NO, and JOHN DOE NO. 2 _____,
                Petitioner,

and

_____ Y COMBINATOR MANAGEMENT, LLC _____,
                Respondent,

# MOTION FOR DEFAULT

TO THE CLERK OF THE CIRCUIT COURT:

**PLEASE ENTER A DEFAULT AGAINST RESPONDENT WHO HAS FAILED TO RESPOND TO THE PETITION.**

I certify that a copy of this document was ☑ mailed ☐ faxed and mailed ☐ e-mailed ☐ hand-delivered to the person(s) listed below on *{date}* May 3, 2023 _____.

**Other party or his/her attorney:**
Name: ___ Aloia, Roland, Lubell & Morgan, PLLC ___
Address: ___ 2222 Second Street ___
City, State, Zip: ___ Fort Myers, FL 33901 ___
Fax Number: _____
Designated E-mail Address(es): _____
  jmorgan@lawdefined.com _____

_(signature)_

Signature of Party _____
Printed Name: ___ Christopher T. Beres, Esq. ___
Address: ___ 1600 Sarno Road Ste. 1 ___
City, State, Zip: ___ Melbourne, FL 32935 ___
Telephone Number: (321) 339-9301 ___
Fax Number: _____
Designated E-mail Address(es): ___ christopherberes8@gmail.com ___

_____

IN THE CIRCUIT COURT OF THE _____ EIGHTEENTH _____ JUDICIAL CIRCUIT,
IN AND FOR _____ BREVARD _____ COUNTY, FLORIDA

Case No.: _____ 05-2023-CA-018273-XXXX-XX _____
Division: _____

_____ JOHN DOE NO. 1 and JOHN DOE NO. 2 _____,
Petitioner,

and

_____ Y COMBINATOR MANAGEMENT, LLC, _____,
Respondent,

# DEFAULT

A default is entered in this action against Respondent for failure to serve or file a response or any
paper as is required by law.

Dated: _____

(SEAL)

CLERK OF THE CIRCUIT COURT

By: _____
Deputy Clerk

I certify that a copy of this document was [✓] mailed [ ] faxed and mailed [ ] e-mailed [ ] hand-
delivered to the person(s) listed below on *{date}* _____.

**Other party or his/her attorney:**
Name: Aloia, Roland, Lubell & Morgan, PLLC
Address: 2222 Second Street
City, State, Zip: Fort Myers, FL 33901
Fax Number: _____
Designated E-mail Address(es): _____
jmorgan@lawdefined.com

*Chris T. Beres*

Signature of Party
Printed Name: Christopher T. Beres, Esq.
Address: 1600 Sarno Road Ste. 1
City, State, Zip: Melbourne, FL 32935
Telephone Number: 321-339-9301
Fax Number: _____
Designated E-mail Address(es): _____
christopherberes8@gmail.com

IN THE  CIRCUIT COURT, EIGHTEENTH JUDICIAL CIRCUIT, BREVARD COUNTY, FLORIDA

**DIVISION:  CIVIL**

**PLAINTIFF**

JOHN DOE NO. 1 et al.

1600 Sarno Road Ste. 1
ADDRESS

**DEFENDANT**


PRESIDENT AND FELLOWS OF

HARVARD COLLEGE

**CASE NUMBER**     05 - 2023  - CA  - 018273 - XXXX-XX

**CLOCK IN**

Melbourne, FL 32935
CITY / STATE / ZIP

321-339-9301
TELEPHONE NUMBER

## MOTION FOR ENTRY OF DEFAULT BY CLERK

The Petitioner/Plaintiff,  JOHN DOE NO. 1 et al.                              , moves the Clerk to enter a

Default against the Respondent/Defendant,  PRESIDENT AND FELLOWS OF      HARVARD COLLEGE        .

_Chris T. Beres_

(Signature of person submitting paper)

  Christopher T. Beres, Esq.
Name

  1600 Sarno Road Ste. 1
Address

  Melbourne, FL 32935
City/State/Zip

  321-339-9301
Telephone Number

I HEREBY CERTIFY that a true and correct copy of the above paper has been furnished by ☑ U. S. Mail

☐ hand delivery     ☐ telefax     ☐ courier to Eisenmenger, Robinson & Peters, P.A.

at 5450 Village Dr, Rockledge, FL 32955                         , this 3rd      day of  May            , 2023   .

_Chris T. Beres_
_____
          Signature of Petitioner/Respondent

Law 580
Rev. 12-17-2012

**BAR CODE LABEL**

IN THE CIRCUIT COURT OF THE _____EIGHTEENTH_____ JUDICIAL CIRCUIT,

IN AND FOR _____BREVARD_____ COUNTY, FLORIDA

Case No.: _____05-2023-CA-018273-XXXX-XX_____

Division: _____

_____JOHN DOE NO. 1 and JOHN DOE NO. 2_____,

Petitioner,

and

_____PRESIDENT AND FELLOWS OF HARVARD COLLEGE_____,

Respondent,

# MOTION FOR DEFAULT

TO THE CLERK OF THE CIRCUIT COURT:

**PLEASE ENTER A DEFAULT AGAINST RESPONDENT WHO HAS FAILED TO RESPOND TO THE PETITION.**

I certify that a copy of this document was [✔] mailed [ ] faxed and mailed [ ] e-mailed [ ] hand-delivered to the person(s) listed below on *{date}* _____.

**Other party or his/her attorney:**
Name: ___Mark S. Peters, Esq.___
Address: ___Eisenmenger, Robinson & Peters, P.A., 5450 Village Drive___
City, State, Zip: ___Viera, FL 32955___
Fax Number: _____
Designated E-mail Address(es): _____
___markpeters@ebplaw.com___

_Chris T Beres_

_____
Signature of Party
Printed Name: ___Christopher T. Beres, Esq.___
Address: ___1600 Sarno Road Ste. 1___
City, State, Zip: ___Melbourne, FL 32935___
Telephone Number: ___(321) 339-9301___
Fax Number: _____
Designated E-mail Address(es): _____
___christopherberes8@gmail.com___

IN THE CIRCUIT COURT OF THE _____ EIGHTEENTH _____ JUDICIAL CIRCUIT,
IN AND FOR _____ BREVARD _____ COUNTY, FLORIDA

Case No.: _____ 05-2023-CA-018273-XXXX-XX _____
Division: _____

_____ JOHN DOE NO. 1 and JOHN DOE NO. 2 _____,
Petitioner,

and

_____ PRESIDENT AND FELLOWS OF HARVARD COLLEGE _____,
Respondent,

# DEFAULT

A default is entered in this action against Respondent for failure to serve or file a response or any paper as is required by law.

Dated:_____

CLERK OF THE CIRCUIT COURT

(SEAL)

By: _____
Deputy Clerk

I certify that a copy of this document was [✓] mailed [ ] faxed and mailed [ ] e-mailed [ ] hand-delivered to the person(s) listed below on *{date}* _____.

**Other party or his/her attorney:**
Name: ___Mark S. Peters, Esq.___
Address: ___Eisenmenger, Robinson & Peters, P.A., 5450 Village Drive___
City, State, Zip: ___Viera, FL 32955___
Fax Number: _____
Designated E-mail Address(es):_____
___markpeters@ebplaw.com___

*(signature)*

_____
Signature of Party
Printed Name: ___Christopher T. Beres, Esq.___
Address: ___1600 Sarno Road, Ste. 1___
City, State, Zip: ___Melbourne, FL 32935___
Telephone Number: ___(321) 339-9301___
Fax Number: _____
Designated E-mail Address(es):_____
___christopherberes8@gmail.com___

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR BREVARD COUNTY, FLORIDA

CASE NO.:  05-2023-CA-018273-XXXX-XX

JOHN DOE NO. 1 and JOHN DOE NO. 2,

      Plaintiffs,

vs.

UPSOLVE, INC., ROHAN PAVULURI,
PRESIDENT AND FELLOWS OF
HARVARD COLLEGE, YALE UNIVERSITY,
Y COMBINATOR MANAGEMENT, LLC
and ERIC EMERSON SCHMIDT,

      Defendants.

_____/

## **MOTION TO DISMISS**

Defendant, PRESIDENT AND FELLOWS OF HARVARD COLLEGE ("Harvard"), by and

through its undersigned counsel, respectfully moves the Court to dismiss the Complaint of JOHN DOE NO.

1 and JOHN DOE NO. 2, and as grounds states as follows:

## **INTRODUCTION**

The Complaint contains only the sparsest of allegations concerning Harvard.  Even accepting as

true, for purposes of this motion, the allegations that Harvard provided grants to Upsolve and Harvard's

logo appeared on unspecified Upsolve websites, Complaint, ¶¶ 14, 15 n.3, 20 and Exhibit 6, the Complaint

fails to establish personal jurisdiction over Harvard—a non-profit educational corporation that Plaintiffs

acknowledge is headquartered in Cambridge, Massachusetts, Complaint ¶ 14.  Further, the Complaint

improperly commingles allegations against the undifferentiated group of Defendants, and it fails to state a

claim against Harvard.  For these reasons, the Complaint should be dismissed with respect to Harvard.

## LAW AND ARGUMENT

The Complaint fails in at least three distinct ways in its claims against Harvard: (1) the Complaint alleges no basis for the Court to exercise personal jurisdiction over Harvard; (2) the Complaint fails to identify the Plaintiffs and improperly commingles its allegations against all of the different Defendants, in violation of Florida Rules of Civil Procedure 1.100 and 1.110(f); and (3) the Complaint fails to state a claim against Harvard.[1]

### A.   The Court Lacks Personal Jurisdiction Over Harvard

Before the Court may exercise jurisdiction over Harvard, Plaintiffs must satisfy the "two-part test to determine whether a Florida state court has long-arm jurisdiction over a nonresident." *Yarger v. Convergence Aviation Ltd.*, 310 So. 3d 1276, 1279 (Fla. 5th DCA 2021).  First, Plaintiffs must allege "sufficient jurisdictional facts" for this Court to exercise jurisdiction over a foreign defendant under one of the specific grounds described in Section 48.193, Fla. Stat.  *Id.*  Under this part of the test, a complaint may establish personal jurisdiction through allegations demonstrating either general long-arm jurisdiction, pursuant to Section 48.193(2), or specific long-arm jurisdiction, pursuant to Section 48.193(1).  *Id.*  Second, Plaintiffs must demonstrate sufficient minimum contacts to show that the Court's exercise of jurisdiction over Harvard would not offend its rights to due process under the U.S. Constitution. *Id.* The constitutional minimum contacts prong "is controlled by United States Supreme Court precedent interpreting the Due Process Clause and imposes a more restrictive requirement" than the state long-arm statute. *Execu-Tech Bus. Sys. v. New Oji Paper Co.*, 752 So. 2d 582, 584 (Fla. 2000). "Both prongs must be satisfied in order to exercise personal jurisdiction over a non-resident defendant." *Estes v. Rodin*, 259 So. 3d 183, 190 (Fla. 3d DCA 2018).  If the complaint fails to meet the first part of the test, the inquiry ends.  *See Parisi v. Kingston*, 314 So. 3d 656, 664 (Fla. 3d DCA 2021).

---

[1] The Complaint seems to admit that John Doe No. 2 is a debtor engaged in a Chapter 7 bankruptcy proceeding.  As such, John Doe No. 2's claims belong to the Bankruptcy Trustee and may not proceed without the Trustee's participation.

2

Whether an agency relationship exists between two parties is evaluated under the minimum contacts prong of the test. Under that analysis, it is the Plaintiff's burden to establish a prima facie case, which requires the Plaintiff to demonstrate: "1) acknowledgment by the principal that the agent will act for it; 2) the agent's acceptance of the undertaking; and 3) control by the principal over the action of the agent." *Enic, PLC v. F.F. South & Co.*, 870 So. 2d 888, 891 (Fla. DCA 5th 2004).

**1.   The Complaint Fails to Establish General Jurisdiction Over Harvard**

Florida's long-arm statute permits general jurisdiction over a foreign defendant that "is engaged in substantial and not isolated activity within" the state. § 48.193(2), Fla. Stat. "The reach of this provision extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment" and, therefore, to determine general jurisdiction, a court "need only determine whether the district court's exercise of jurisdiction over [the defendant] would exceed constitutional bounds." *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010). The U.S. Supreme Court has made clear that a non-resident corporation may be subject to general jurisdiction only when "affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Absent exceptional circumstances, a corporation may be subject to general jurisdiction only in its place of incorporation and principal place of business. *Id.* at 137.

In this case, it is undisputed that Harvard is not incorporated in Florida, and it does not it have its principal place of business in Florida. Complaint, ¶ 14 ("Defendant Harvard is a non-profit corporation organized and existing under the laws of Massachusetts that maintains its principal place of business at Massachusetts Hall, Cambridge, Massachusetts 02138."). And Plaintiffs do not allege—nor could they allege—that this is one of the exceptional circumstances in which an entity's contacts in Florida are so "continuous and systematic" as to render it essentially at home in Florida. There are no allegations in the Complaint from which to make such a determination. Accordingly, this Court lacks general jurisdiction over Harvard.

3

### 2.   The Complaint Fails to Establish Specific Personal Jurisdiction Over Harvard

The Complaint also fails to adequately plead specific jurisdiction under the Florida long-arm statute, Section 48.193(1). The Complaint's unelaborated jurisdictional allegation does not even reference Harvard by name, instead merely alleging that the "Defendants are subject to personal jurisdiction in this Court under Fla. Stat. §§ 48.193(1)(a), 48.193(1)(b), and 48.193(2) because they (i) operate, conduct, engage in, or carry on businesses or business ventures within the State of Florida; (2) have committed tortious acts within the State of Florida as alleged herein; and/or (iii) engage in substantial and not isolated activity within the State of Florida." Complaint, ¶ 8. This bare recitation is insufficient to adequately plead specific jurisdiction. *See Parisi*, 314 So. 3d at 664.

Even if the Complaint's allegations satisfied the statutory requirements—which they plainly do not—they would fail to meet the constitutional prerequisites, distinct requirements "not built into the long-arm statute." *Enic, PLC*, 870 So. 2d at 890. The Due Process Clause forbids a state court from exercising specific personal jurisdiction unless the defendant undertakes "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1025 (2021). The contacts must be the defendant's own choice and not "random, isolated, or fortuitous." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984). "Yet even then—because the defendant is not 'at home'—the forum State may exercise jurisdiction in only certain cases." *Ford Motor Co.*, 141 S. Ct. at 1025. "[T]he plaintiff's claim must 'arise out of or relate to' the defendant's forum conduct." *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 582 U.S. 255, 272 (2017). Accordingly, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (quoting *Goodyear*, 564 U.S. at 919).

The allegations in the Complaint utterly fail to show that the claims arise out of any contacts with Harvard. Notably, the only references to Harvard in the Complaint do not describe contact with Florida at all. Complaint, ¶¶ 14, 15 n.3, 20 and Exhibit 6. Plaintiffs' failure to identify any conduct by Harvard in Florida precludes a court from determining that Harvard "purposely availed [it]self of the privilege of

4

acting" in Florida.   In short, haling Harvard into Florida state court on the basis of this Complaint would be entirely inconsistent with the due process guarantee.

To the extent that the Complaint makes vague, speculative gestures regarding the relationship between Harvard and Upsolve, those allegations also are insufficient to establish specific personal jurisdiction premised upon any theory of agency.   The Complaint does not allege that Harvard acted "through an agent," nor does it allege that a partnership exists between Harvard and Upsolve.   The allegations that Harvard gave grants to Upsolve years ago and that its logo appeared on an unspecified portion of Upsolve's website are woefully inadequate to allege an agency relationship. *See Enic, PLC*, 870 So. 2d at 891.

For the foregoing reasons, the Court should dismiss the complaint against Harvard for lack of personal jurisdiction.

**B.   The Complaint Fails to Comply With The Minimum Pleading Requirement Florida Rules of Civil Procedure 1.100 and 1.110**

In violation of Florida Rule of Civil Procedure 1.100(c), the Complaint fails to identify the Plaintiffs in the case's caption. Additionally, in violation of Rule 1.110(f), the Complaint fails to "state[] in a separate count" each "claim founded upon a separate transaction or occurrence." Instead, the Complaint lumps together claims founded on separate transactions into a single count.   Such impermissible commingling of claims warrants dismissal of the Complaint against Harvard.  *See Aspsoft, Inc. v. Web-Clay*, 983 So. 2d 761, 768 (Fla. 5th DCA 2008) (holding that plaintiff's complaint set forth defective claims by "impermissibly comingling separate and distinct claims" in a single count); *K.R. Exch. Servs., Inc. v. Fuerst*, 48 So. 3d 889, 893 (Fla. 3d DCA 2010) (holding that the failure to "plead each distinct claim in a separate count, rather than plead the various claims against all of the defendants together" warranted dismissal of the complaint); *Collado v. Baroukh*, 226 So. 3d 924 , 927 (Fla. 4th DCA 2017) (same).

The failure to comply with these minimum pleading standards renders the Complaint incoherent and deprives Harvard of the ability to adequately respond to the allegations and claims stated in the complaint.  *See Arky, Freed v. Bowmar Instrument*, 537 So. 2d 561, 563 (Fla. 1988) (concluding that

5

"litigants at the outset of a suit must be compelled to state their pleadings with sufficient particularity for a defense to be prepared").  Dismissal is warranted on this ground.

### C.   The Complaint Fails to State a Claim Against Harvard

"Florida is a fact-pleading jurisdiction, not a notice-pleading jurisdiction."  *Graulau Maldonado v. Orange Cnty. Pub. Library Sys.*, 273 So. 3d 278, 279 (Fla. 5th DCA 2019) (citation omitted).  Florida Rule of Civil Procedure 1.110(b) requires that "[i]n order to state a cause of action, a complaint must allege sufficient ultimate facts to show that the pleader is entitled to relief."  *Louie's Oyster, Inc. v. Villaggio Di Las Olas, Inc.*, 915 So. 2d 220, 222 (Fla. 4th DCA 2005) (citation omitted)).  This requirement "forces counsel to recognize the elements of their cause of action and determine whether they have or can develop the facts necessary to support it, which avoids a great deal of wasted expense to the litigants and unnecessary judicial effort."  *Horowitz v. Laske*, 855 So. 2d 169, 172 (Fla. 5th DCA 2003).  Though Florida courts "take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the pleader," it is black-letter law that "general, vague and conclusory statements" do not satisfy Florida's pleading requirements. *Jordan v. Nienhuis*, 203 So. 3d 974, 976 (Fla. 5th DCA 2016) (citation omitted); *see also Turnberry Vill. N. Tower Condo. Ass'n, Inc. v. Turnberry Vill. S. Tower Condo. Ass'n, Inc.*, 224 So. 3d 266, 267 (Fla. 3d DCA 2017) ("Appellant's amended complaint contained a mechanical recitation of the elements of the cause of action, and, in particular, only conclusory allegations. . . . This is insufficient to withstand a motion to dismiss.").

In this case, Plaintiffs do not sufficiently allege facts relating to how Harvard's conduct gives rise to the claims asserted against it.  The Complaint states no ultimate factual allegations that show Harvard owes any statutory, contractual, fiduciary, or other duty to either Plaintiff.  Nor does it allege how Harvard caused the injury and damages alleged.  *See Baroukh*, 226 So. 3d at 928.  Indeed, the Complaint is void of a single factual allegation that Harvard knew of or interfered with any relationship Plaintiffs may have had, provided or agreed to provide any legal services to either of Plaintiffs, contracted with Plaintiffs, was negligent towards Plaintiffs, defrauded Plaintiffs, made any misrepresentation to Plaintiffs, was in any way

6

enriched at the expense of Plaintiffs, made any advertisement, conspired with any party, or made any agreement not to compete, to monopolize or otherwise commit an antitrust violation.

Further, Plaintiffs fail to allege any facts that would impose upon Harvard vicarious liability for the alleged actions of co-Defendants. Though Plaintiffs allege, Complaint ¶ 14, that Harvard is vicariously liable for Upsolve under the doctrine of respondeat superior, that claim is a legal conclusion; it is not a factual assertion and, therefore, is insufficient to state a claim. *See Snyder v. City of Delray Beach*, 736 So. 2d 1243, 1247 (Fla. 4th DCA 1999) (disregarding "allegations of agency and respondeat superior … because they are legal conclusions"); *Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, No. 05-60080-CIV-MARRA/JOHNSON, 2011 BL 83285, at *8 (S.D. Fla. Mar. 30, 2011*)* (dismissing a claim that defendant was "liable under the doctrine of respondeat superior" because that assertion "is a mere legal conclusion"). The remaining factual allegations against Harvard—that it gave grants to Upsolve and its logo appeared on an unspecified Upsolve website—are insufficient to establish a claim of vicarious liability. Moreover, Plaintiffs failed to plead a separate cause of action for vicarious liability, as required by Rule 1.110(b)(2).

For the foregoing reasons, the Complaint fails to state a claim against Harvard and warrants dismissal on that basis.

## **CONCLUSION**

WHEREFORE, Defendant, Harvard, respectfully requests this Court to dismiss the Complaint as to Harvard with prejudice and to grant such other and additional relief as may be just and appropriate under the circumstances, to include but not be limited to an award for the recovery of attorneys' fees and costs.

7

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was provided via the Florida Courts E-Filing Portal to Christopher T. Beres, Esquire, at christopherberes8@gmail.com, and Lewis W. Murphey, Jr., at wmurphy@murphywalker.com, emils@murphywalker.com, pleadings-murphy@murphywalker.com, JMorgan@lawdefined.com, KTurner@lawdefined.com, and JCMService@lawdefined.com,  this 5th day of May, 2023.

EISENMENGER, ROBINSON & PETERS, P.A.

S/ Mark S. Peters
MARK S. PETERS, ESQUIRE
Florida Bar No. 0321631
5450 Village Drive
Viera, FL  32955-6569
Telephone: (321) 504-0321
Email:  markpeters@ebplaw.com
Attorney for Defendant Harvard

8

IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL DISTRICT, IN
AND FOR BREVARD COUNTY,
FLORIDA

JOHN DOE NO. 1 and JOHN DOE NO. 2,

                Plaintiffs,

v.

UPSOLVE, INC.,
ROHAN PAVULURI,
PRESIDENT AND FELLOWS OF HARVARD
COLLEGE,
YALE UNIVERSITY,
Y COMBINATOR MANAGEMENT, LLC,
and
ERIC EMERSON SCHMIDT,

                Defendants.
_____/

TO:    THE CLERK OF THE COURT

## NOTICE OF WITHDRAWAL OF MOTION FOR CLERK'S DEFAULT AND MOTION FOR DEFAULT AGAINST THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE

        Plaintiffs hereby withdraw their Motion for Entry for Default by Clerk and the Motion for

Default, both against the President and Fellows of Harvard College, dated May 3, 2023.

        President and Fellows of Harvard College has timely filed a Motion to Dismiss on this

May 5, 2023 and is thus not in default.  Thus, entry of default would not be warranted.

Date:  May 5, 2023
       Melbourne, Florida          /s/Christopher Beres
                           Christopher T. Beres, Esq.
                           *Attorney for Plaintiffs*
                           1600 Sarno Road Ste. 1
                           Melbourne, FL 32935
                           (321) 339-9301
                           christopherberes8@gmail.com

1

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was provided via email through the e-filing system and to jmorgan@lawdefined.com, kturner@lawdefined.com, wmurphy@murphywalker.com, emills@murphywalker.com, and markpeters@ebplaw.com.

Dated: May 5, 2023                           /s/Christopher Beres
                                             Christopher T. Beres, Esq.

2

# IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT, IN AND FOR BREVARD COUNTY, FLORIDA

CASE NO: 05-2023-CA-018273-XXXX-XX

**JOHN 1 DOE**
**JOHN 2 DOE,**
  **Plaintiff,**

**-vs-**

**UPSOLVE INC**
**ROHAN  PAVULURI**
**PRESIDENT FELLOWS HARVARD COLLEGE**
**YALE UNIVERSITY**
**Y COMBINATOR MANAGEMENT LLC**
**ERIC EMERSON SCHMIDT,**
  **Defendant.**

-------------------------------------------------------------

## CERTIFICATE OF CLERK REGARDING ENTRY OF DEFAULT

   I, RACHEL SADOFF, Clerk of Courts, do hereby certify that a Motion for Default was filed on Wednesday, May 03, 2023, docket no. #33.  The Default was not entered as to the following party(ies) for the following reason(s):

[X]  Answer or other response filed on Tuesday, May 02, 2023 as to PRESIDENT FELLOWS HARVARD COLLEGE.

[ ]  Need Proof of Service.

[ ]  Need Affidavit regarding military service.

[ ]  Military Service Unknown - you must motion the Court for entry of a Default.

[ ]  Default previously entered.

[ ]  5 Day Summons Posted - Certificate of Mailing required (§48.183; §82.05(2); §83.22, F.S.).

[ ]  Other

DATED on Tuesday, May 16, 2023, in Brevard County, Florida.



05-2023-CA-018273-XXXX-XX 05/16/2023 02:52:04 PM

Vicki Beach, Clerk
05-2023-CA-018273-XXXX-XX 05/16/2023 02:52:04 PM

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Certificate of Clerk Regarding Entry of Default was furnished to:

BERES, CHRISTOPHER
christopherberes8@gmail.com
beresct@proton.me
christopherberes8@gmail.com

this Tuesday, May 16, 2023.



05-2023-CA-018273-XXXX-XX 05/16/2023 02:52:04 PM

Vicki Beach, Clerk
05-2023-CA-018273-XXXX-XX 05/16/2023 02:52:04 PM

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT, IN AND FOR BREVARD COUNTY, FLORIDA

CASE NO: 05-2023-CA-018273-XXXX-XX

**JOHN 1 DOE**
**JOHN 2 DOE,**
   **Plaintiff,**

**-vs-**

**UPSOLVE INC**
**ROHAN  PAVULURI**
**PRESIDENT FELLOWS HARVARD COLLEGE**
**YALE UNIVERSITY**
**Y COMBINATOR MANAGEMENT LLC**
**ERIC EMERSON SCHMIDT,**
   **Defendant.**

_____

### CERTIFICATE OF CLERK REGARDING ENTRY OF DEFAULT

   I, RACHEL SADOFF, Clerk of Courts, do hereby certify that a Motion for Default was filed on Wednesday, May 03, 2023, docket no. #31.  The Default was not entered as to the following party(ies) for the following reason(s):

[X]  Answer or other response filed on Monday, April 24, 2023 as to Y COMBINATOR MANAGEMENT LLC.

[ ]  Need Proof of Service.

[ ]  Need Affidavit regarding military service.

[ ]  Military Service Unknown - you must motion the Court for entry of a Default.

[ ]  Default previously entered.

[ ]  5 Day Summons Posted - Certificate of Mailing required (§48.183; §82.05(2); §83.22, F.S.).

[ ]  Other

DATED on Tuesday, May 16, 2023, in Brevard County, Florida.



Vicki Beach, Clerk
05-2023-CA-018273-XXXX-XX 05/16/2023 03:04:30 PM

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Certificate of Clerk Regarding Entry of Default was furnished to:

BERES, CHRISTOPHER
christopherberes8@gmail.com
beresct@proton.me
christopherberes8@gmail.com


this Tuesday, May 16, 2023.



Vicki Beach, Clerk
05-2023-CA-018273-XXXX-XX 05/16/2023 03:04:30 PM

IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL DISTRICT, IN
AND FOR BREVARD COUNTY,
FLORIDA

JOHN DOE NO. 1 and JOHN DOE NO. 2,

      Plaintiffs,

v.

UPSOLVE, INC.,
ROHAN PAVULURI,
PRESIDENT AND FELLOWS OF HARVARD
COLLEGE,
YALE UNIVERSITY,
Y COMBINATOR MANAGEMENT, LLC,
and
ERIC EMERSON SCHMIDT,

      Defendants.

_____/

CASE NO. 05-2023-CA-018273-XXXX-
XX

DIVISION:  CIVIL

The Honorable Michelle Naberhaus

## OPPOSITION TO PRESIDENT AND FELLOWS OF HARVARD COLLEGE MOTION TO DISMISS

Plaintiffs John Doe No. 1 and John Doe No. 2, by their attorney Christopher T. Beres,

Esq., oppose defendant the President and Fellows of Harvard College's ("Harvard") motion to

dismiss and state as follows:

## I.  HARVARD FAILS TO MEET THE HIGH STANDARD FOR PRE-ANSWER DISMISSAL

1.  The only question for the trial court in reviewing a motion to dismiss is whether

the plaintiff would be entitled to the relief requested, assuming all the allegations in the

complaint to be true. *Malden v. Chase Home Fin., LLC* , 312 So. 3d 553, 555 (Fla. 1st DCA

2021) (citing *Newberry Square Florida Laundromat, LLC v. Jim's Coin Laundry & Dry*

*Cleaners, Inc.*, 296 So. 3d 584, 589 (Fla. 1st DCA 2020)).   It is not for the court to speculate

whether the allegations are true or whether the pleader has the ability to prove them.  *Universal*

1

*Underwriters Ins. Co. v. Body Parts of Am.*, Inc., 228 So. 3d 175, 176 (Fla. 1st DCA 2017) (citations omitted).  In ruling on a motion to dismiss, "'the trial court must confine its review to the four corners of the complaint, draw all inferences in favor of the pleader, and accept as true all well-pleaded allegations.'" *Newberry Square Florida Laundromat, LLC* , 296 So. 3d at 589. A complaint should not be dismissed for failure to state a cause of action" 'unless the movant can establish beyond any doubt that the claimant could prove no set of facts whatever in support of his claim.'" *Johnson v. Gulf County*, 965 So. 2d 298, 299 (Fla. 1st DCA 2007) (citations omitted).

2.      It is well established that dismissal of a complaint with prejudice is a very severe sanction, to be invoked only when the pleader has failed to state a cause of action, and it is conclusively shown the complaint cannot be amended in such a way as to state a claim.  *Meyers v. City of Jacksonville*, 754 So. 2d 198, 202 (Fla. 1st DCA2000).

3.      Also, in its motion to dismiss, Harvard lacks any meaningful rebuttal - particularly at this pre-answer stage, when plaintiffs' allegations must be accepted as true and afforded every possible favorable inference. *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 734-35 (Fla. 2002) (*quoting Hollywood Lakes Section Civic Ass'n, Inc. v. City of Hollywood*, 676 So. 2d 500, 501 (Fla. 4th DCA 1996)).

## II. THERE IS JURISDICTION OVER HARVARD

4.      There is personal jurisdiction over Harvard pursuant to Florida's long-arm statute § 48.193 because Harvard has committed tortious acts in this State.

5.      Additionally, under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Harvard committed unfair and deceptive conduct in this State.

6.      Moreover, Harvard is and was a co-conspirator in a civil conspiracy in Florida.

2

7.      Florida follows the conspiracy theory of jurisdiction.  Under this doctrine, defendants who are alleged to be part of an unlawful conspiracy are subject to jurisdiction in a state they have never set foot in based on acts committed in the state by co-conspirators.

8.      Harvard is not correct that "the Complaint makes vague, speculative gestures regarding the relationship between Harvard and Upsolve."  (H.M.D. p. 5)  Upsolve is a *Harvard incubator company* that is run and funded by Harvard and that uses the Harvard logo – its trademark.  Harvard would not allow a non-Harvard company to use its logo.

9.      Upsolve is a Harvard Law School project and is Harvard's intellectual property.

10.     On April 17, 2021, as cited in the complaint, The Harvard Crimson newspaper published an article "How To Change the World and Have Harvard Pay For It."[1]  It calls Upsolve "a social impact organization at Harvard."

11.     In fact, Upsolve has recently shifted their entire team and operations to 1 Broadway, Cambridge, Massachusetts, since Upsolve is a Harvard incubator company.  It would not exist were it not for Harvard, Harvard's name, Harvard's logo, Harvard's IP, Harvard's offices, Harvard's staff, and Harvard's funding.

12.     Also, there are legal contracts between Harvard and Upsolve.  Plaintiffs will be seeking copies of these private contracts through discovery.

---

[1] "Upsolve, the nonprofit I work at, like a number of other organizations founded at Harvard, got its start when our cofounder Rohan Pavuluri '18 found this path.... Along Rohan's journey, he encountered a remarkable array of the University's people and resources that joined him to make Upsolve possible....This doesn't include the multiple independent studies Rohan did, each with faculty advisors, on various aspects of how to start Upsolve. Additionally, faculty and fellows at Harvard Business School and HKS gave their time to discuss Upsolve's development, and **HLS Professor James Greiner and HKS lecturer Nick Sinai even joined as advisors....The Harvard iLab provided space and Harvard awarded Upsolve grants in rapid succession totaling over $200,000 of seed funding,**...Today, **Harvard's initial investment in Upsolve has seen a massive return with $350 million** of debt relieved for low-income Americans and recognition of Harvard's critical role in Upsolve's founding covered in numerous major news outlets. Upsolve is certainly not the only organization to incubate at and receive funding from Harvard. In fact, **Upsolve isn't even the only Harvard-funded nonprofit**...."
https://www.thecrimson.com/column/be-the-change/article/2021/4/17/brown-change-the-world-and-have-harvard-pay-for-it/

3

13.     Discovery will amplify the contractual and other relationships between the six defendants.  This case should not be dismissed without plaintiffs' having the opportunity to conduct discovery as to Harvard and Upsolve.

### III. PLAINTIFFS' CLAIMS ARE WELL PLED

14.     Plaintiffs' complaint is well pled and is consistent with the Florida Rules of Civil Procedure.

15.     Plaintiffs' counsel has been an attorney in this Circuit for more than 20 years.

16.     Harvard's counsel's criticism of plaintiffs' counsel's writing style is very inconsiderate and not well-founded.

17.     The complaint contains 14 separate and distinct claims for tortious interference, negligence, legal malpractice, common law fraud, negligent misrepresentation, breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, misleading advertising, violations of the FDUTPA, civil conspiracy, antitrust, declaratory relief, and injunction.

18.     Harvard is one of the defendants, is a co-conspirator in a Florida conspiracy, and is implicated in all of the claims.  Its name does not have to be repeated every time defendants are referred to.

### IV. PLAINTIFFS STATED PLAUSIBLE CLAIMS AGAINST HARVARD

19.     In arguing that plaintiffs failed to state a claim against Harvard, Harvard's motion to dismiss expressly does not accept plaintiffs' facts as true.

20.     Upsolve is alleged to be a Harvard company.  Alternatively, Upsolve is either Harvard's agent or alter ego under vicarious liability theory.

4

21.     By Upsolve's own admission, Upsolve is a 501(c)(3) organization that is under the umbrella of Harvard's charitable activities.

22.     It is undisputed that Upsolve, under Harvard's name and logo and with Harvard's funding and partnership, does substantial and continuous business in the Sunshine State.

23.     Plaintiffs alleged that the only reason why they did business with Upsolve, which is otherwise unknown, is because of its affiliation with Harvard.

24.     John Doe No. 2 is a graduate of Harvard and would never have become a client of Upsolve's but-for it being part of Harvard.

25.     He does not take suing his alma mater lightly.

26.     Harvard has also endorsed and recommended to plaintiffs and other consumers in Florida Upsolve's fraudulent products and services.

## V.  THE INTERESTS OF JUSTICE FAVOR DENYING HARVARD'S MOTION

27.     Dismissal of Harvard as the incubator, real owner, and co-conspirator of Upsolve will irreparably damage plaintiffs' ability to prove their conspiracy and other claims before they have had the chance to even conduct any discovery into the central Harvard-Upsolve relationship.

28.     Of all the defendants and co-conspirators, Harvard is by far the most responsible and clearly implicated in plaintiffs' claims.

29.     Respectfully, plaintiffs should have the opportunity to continue this action.

## VI. CONCLUSION

All of the arguments asserted in defendant's motion to dismiss fail as a matter of law. Therefore, the motion should be denied, and the case should proceed to discovery.

Dated:          May 9, 2023                          /s/Christopher Beres
                Melbourne, Florida                   Christopher Beres, Esq.

5

Florida Bar No. 588261
*Attorney for plaintiffs*
1600 Sarno Road Ste. 1
Melbourne, Florida 32935
(321) 339-9301
christopherberes8@gmail.com

6

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was provided via

email through the e-filing system and to jmorgan@lawdefined.com, kturner@lawdefined.com,

wmurphy@murphywalker.com, emills@murphywalker.com, and markpeters@ebplaw.com.

| | | |
|---|---|---|
| Dated: | May 9, 2023<br>Melbourne, Florida | /s/Christopher Beres<br>Christopher Beres, Esq.<br>Florida Bar No. 588261<br>*Attorney for plaintiffs*<br>1600 Sarno Road Ste. 1<br>Melbourne, Florida 32935<br>(321) 339-9301<br>christopherberes8@gmail.com |

7

IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL DISTRICT, IN
AND FOR BREVARD COUNTY,
FLORIDA

JOHN DOE NO. 1 and JOHN DOE NO. 2,

                    Plaintiffs,

v.

UPSOLVE, INC.,
ROHAN PAVULURI,
PRESIDENT AND FELLOWS OF HARVARD
COLLEGE,
YALE UNIVERSITY,
Y COMBINATOR MANAGEMENT, LLC,
and
ERIC EMERSON SCHMIDT,

                    Defendants.

_____/

CASE NO. 05-2023-CA-018273-XXXX-XX

DIVISION: CIVIL

The Honorable Michelle Naberhaus

## NOTICE OF FILING

COMES NOW, John Doe No. 1 and John Doe No. 2, hereby notices the filing of the

attached Affidavit of Service on Upsolve, Inc. in the above-captioned action.

| | | |
|---|---|---|
| Dated: | May 18, 2023 | /s/Christopher Beres |
| | Melbourne, Florida | Christopher Beres, Esq. |
| | | Florida Bar No. 588261 |
| | | *Attorney for plaintiffs* |
| | | 1600 Sarno Road Ste. 1 |
| | | Melbourne, Florida 32935 |
| | | (321) 339-9301 |
| | | christopherberes8@gmail.com |

1

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was provided via

email through the e-filing system and to jmorgan@lawdefined.com, kturner@lawdefined.com,

wmurphy@murphywalker.com, emills@murphywalker.com, and markpeters@ebplaw.com.

Dated:          May 18, 2023                    /s/Christopher Beres
                Melbourne, Florida              Christopher Beres, Esq.
                                                Florida Bar No. 588261
                                                *Attorney for plaintiffs*
                                                1600 Sarno Road Ste. 1
                                                Melbourne, Florida 32935
                                                (321) 339-9301
                                                christopherberes8@gmail.com

2

AD-CIV05072023-1aos

# AFFIDAVIT OF SERVICE

MIDDLESEX, SS                    Cambridge, MA                    May 8, 2023

I, Derrick Hughes, a licensed Constable in the City of Boston, Process Server (A Disinterested Party) outside the City of Boston, Notary Public in the State of Massachusetts hereby affirm on May 8, 2023, at approximately 2:03pm **Jonathan Petts, CEO Upsolve Inc 1 Broadway Cambridge, MA 02142,** was served PERSONALLY - IN HAND a **CIVIL ACTION SUMMONS (CASE NO. 05-2023-CA-018273-XXXX-XX**); **PROPOSED CASE MANAGEMENT PLAN (GENERAL)**; **PROPOSED CASE MANAGEMENT ORDER**; and **COMPLAINT / PETITION FOR INJUNCTIVE RELIEF; along with exhibits 1 through 17**.

Date of Service: 05/08/2023                    Under the pains and penalties of perjury,

Date of Signature: 05/09/2023

Derrick Hughes, A Disinterested Party
Hughes & Associates
PO Box 256109
Dorchester, MA 02125
857-312-9791(Cell)
const.dhughes@gmail.com
Facebook: Hughes & Associates
Member of NAPPS(National Association
of Professional Process Servers)
Member of Boston Constable
Association